# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TEXAS

### SHERMAN DIVISION

| | |
|---|---|
| STATES OF NEVADA; STATE OF TEXAS; ALABAMA; ARIZONA; ARKANSAS; GEORGIA; INDIANA; KANSAS; LOUISIANA; NEBRASKA; OHIO; OKLAHOMA; SOUTH CAROLINA; UTAH; WISCONSIN; COMMONWEALTH OF KENTUCKY, BY AND THROUGH GOVERNOR MATTHEW G. BEVIN; TERRY E. BRANSTAD, GOVERNOR OF THE STATE OF IOWA; PAUL LePAGE, GOVERNOR OF THE STATE OF MAINE; SUSANA MARTINEZ, GOVERNOR OF THE STATE OF NEW MEXICO; GOVERNOR PHIL BRYANT OF THE STATE OF MISSISSIPPI; and ATTORNEY GENERAL BILL SCHUETTE ON BEHALF OF THE PEOPLE OF MICHIGAN, | CIVIL ACTION NO. _____ |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF LABOR; THOMAS E. PEREZ, in his Official Capacity as United States Secretary of Labor, THE WAGE AND HOUR DIVISION OF THE DEPARTMENT OF LABOR; DR. DAVID WEIL, in his Official Capacity as Administrator of the Wage and Hour Division; MARY ZIEGLER, in her Official Capacity as Assistant Administrator for Policy of the Wage and Hour Division, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION AND NATURE OF THE ACTION

On March 13, 2014, President Obama ordered the Department of Labor ("DOL") to "revise" the Fair Labor Standards Act's ("FLSA") overtime exemption for "bona fide executive, administrative, or professional" employees—the so-called "white collar" or "EAP" exemption. According to the President, new overtime regulations were necessary to "ke[ep] up with our modern economy." DOL, rather than analyze (and allow for notice and comment about) the duties that employees actually perform in our modern economy, simply doubled the current "salary basis test" that must be satisfied before an EAP employee is ineligible for overtime, and rendered virtually irrelevant any inquiry into whether an employee is actually working in an executive, administrative, or professional capacity. To DOL, salary level—not the type of work actually performed—"is the best single test of exempt status for white collar employees." 81 Fed. Reg. 32391, 32392 (May 23, 2016). Thus, under the premise of updating regulations related to the FLSA, DOL has disregarded the actual requirements of the statute and imposed a much-increased minimum salary threshold that applies without regard to whether an employee is *actually* performing "bona fide executive, administrative, or professional" duties.

DOL's use of, and conclusive emphasis on, the salary test defies the statutory text of 29 U.S.C. 213(a)(1), Congressional intent, and common sense. One would think—as the statute indicates—that actually performing white collar duties (*i.e.* being "employed in a [white collar] *capacity*") would be the best indicator of white collar exempt status. Instead, DOL relegates the type of work actually performed to a secondary consideration while dangerously using the "salary basis test," unencumbered by limiting principles, as the exclusive test for determining overtime eligibility for EAP employees.

*Worse still*, under the guise of interpretation, DOL included in their final rule an automatic indexing mechanism to ratchet-up the salary level every three years without regard for current economic conditions or the effect on public and private resources. Indexing not only evades the statutory command to delimit the exception from "time to time," as well as the notice and comment requirements of the Administrative Procedure Act ("APA"), it also ignores DOL's prior admissions that "nothing in the legislative or regulatory history … would support indexing or automatic increases …. The Department believes that adopting such approaches in this rulemaking is both contrary to congressional intent and inappropriate."  69 Fed. Reg. 22122, 22171–72 (Apr. 23, 2004).

The new rule exceeds Constitutional authorization too. Under the new overtime rule, *States* must pay overtime to *State* employees that are performing executive, administrative, or professional functions if the *State* employees earn a salary less than an amount determined by the Executive Branch of the *Federal*

3

Government. And there is apparently no ceiling over which DOL cannot set the salary level. The threat to the States' budgets and, consequently, the system of federalism, is palpable. By committing an ever-increasing amount of *State* funds to paying State employee salaries or overtime, the Federal Executive can unilaterally deplete State resources, forcing the States to adopt or acquiesce to federal policies, instead of implementing State policies and priorities. Without a limiting principle (and DOL has recognized none) the Federal Executive could deliberately exhaust State budgets simply through the enforcement of the overtime rule. But even aside from that possibility, there is no question that the new rule, by forcing many State and local governments to shift resources from other important priorities to increased payroll for certain employees, will effectively impose the Federal Executive's policy wishes on State and local governments. The Constitution is designed to prohibit the Federal Executive's ability to dragoon and, ultimately, reduce the States to mere vassals of federal prerogative. Therefore, the new overtime rule must be set aside as violative of the Constitution, the authority given by Congress in 29 U.S.C § 213(a)(1), and the APA.

## I. PARTIES

1.    Plaintiff State of Nevada is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

2.    Plaintiff State of Texas is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees

working in a bona fide EAP capacity.

3.      Plaintiff State of Alabama is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

4.      Plaintiff State of Arizona is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

5.      Plaintiff State of Arkansas is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

6.      Plaintiff State of Georgia is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

7.      Plaintiff State of Indiana is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

8.      Plaintiff State of Kansas is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

9.      Plaintiff State of Louisiana is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

10.     Plaintiff State of Nebraska is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

11.     Plaintiff State of Ohio is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

12.     Plaintiff State of Oklahoma is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity

13.     Plaintiff State of South Carolina is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

14.     Plaintiff State of Utah is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

15.     Plaintiff State of Wisconsin is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity

16.     Plaintiff Commonwealth of Kentucky, by and through Governor Matthew G. Bevin, is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity

17.     Plaintiff Terry E. Branstad is the Governor of the State of Iowa, which is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

18.     Plaintiff Paul LePage is the Governor of the State of Maine, which is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

19.     Plaintiff Susana Martinez is the Governor of the State of New Mexico, which is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

20.     Plaintiff Phil Bryant is the Governor of the State of Mississippi, which is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

21.     Plaintiff Bill Schuette is the Attorney General of the State of Michigan, which is subject to the new overtime rule because it is an employer that pays a salary less than $913 per week to certain of its employees working in a bona fide EAP capacity.

22.     Defendant United States Department of Labor is the federal agency responsible for supervising the formulation, issuance, and enforcement of rules, regulations, policies, and forms by the Wage and Hour Division ("WHD"). *See* 29 U.S.C § 204(a).

23.     Defendant Thomas E. Perez is the United States Secretary of Labor ("Secretary"). He is authorized to issue, amend, and rescind the rules, regulations, policies, and forms of DOL and WHD. He is sued in his official capacity.

24.     Defendant Wage and Hour Division is the Division within DOL that is responsible for formulating, issuing, and enforcing the new overtime rule. *See* U.S.C. § 204(a); 29 C.F.R. § 541.1; 81 Fed. Reg. 32391, 32549.

25.     Defendant Dr. David Weil is the Administrator of the WHD and he is responsible for the rules and regulations formulated, issued, and enforced by the WHD, including the new overtime rule. He is sued in his official capacity.

26.     Mary Ziegler is the Assistant Administrator for Policy of the WHD and she is responsible for the rules and regulations formulated, issued, and enforced by the WHD, including the new overtime rule. She was also the designated recipient of comments for the new overtime rule. She is sued in her official capacity.

## II.  JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this suit concerns authority under the Constitution of the United States and the Fair Labor Standards Act. This Court also has jurisdiction to compel an officer of the United States or any federal agency to perform his or her duty pursuant to 28 U.S.C. § 1361.

28.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(e) because the United States, several of its agencies, and several of its officers in their official capacity are Defendants; a substantial part of the events or

omissions giving rise to Plaintiffs' claims occurred in this District; and the Plaintiff State of Texas is an employer of workers in this District.

29.     The Court is authorized to award the requested declaratory relief under the APA, 5 U.S.C. § 706, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202. The Court is authorized to award injunctive relief under 28 U.S.C. § 1361.

## III.  FACTUAL BACKGROUND

### A. Legislative History

30.     The FLSA became law on June 25, 1938.   It generally requires, amongst other things, that employees "engaged in commerce" receive not less than the Federal minimum wage for all hours worked and also receive overtime (at one-and-half times the regular rate of pay) for all hours worked in excess of a forty-hour workweek. 52 Stat. 1060 (June 25, 1938).

31.     FLSA contained a number of exceptions to the overtime requirement. Section 13(a)(1) set forth the "white collar" exemption which excludes from both minimum wage and overtime "any employee employed in a bona fide executive, administrative, or professional capacity …." 52 Stat. at 1067. The white collar exemption is now codified at 29 U.S.C. § 213(a)(1) ("The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—any employee employed in a bona fide executive, administrative, or professional capacity … (as such terms are defined and delimited from time to time by regulations of the Secretary …).").

32.    Congress, through FLSA, did not define the terms "executive," "administrative," or "professional." Nor did it provide any intelligible principles by which the Secretary was to define or apply those terms. 52 Stat. at 1067 ("[A]s such terms are defined and delimited by regulations of the Administrator ….").

33.    Pursuant to that complete delegation of Congress's legislative authority, DOL issued its first regulation concerning the white collar exemption approximately four months later, in October 1938. 3 Fed. Reg. 2518 (Oct. 20, 1938). The regulations are embodied in 29 C.F.R. § 541 *et seq.*

34.    The first regulations promulgated to interpret the white collar exemption did not contain a salary test for all three categories; "professional" employees were only assessed by the work "customarily and regularly" performed. 3 Fed. Reg. 2518; *see also* 81 Fed. Reg. at 32395, 32400, 32423.

35.    DOL did not add a salary test for all three categories until two years later. 5 Fed. Reg. 4077. The salary test has been steadily raised and modified ever since. *See, e.g.,* 14 Fed. Reg. 7705 (Dec. 24, 1949); 14 Fed. Reg. 7730 (Dec. 28, 1949); 19 Fed. Reg. 4405 (July 17, 1954); 23 Fed. Reg. 8962 (Nov. 18, 1958); 26 Fed. Reg. 8635 (Sept. 16, 1961); 28 Fed. Reg. 9505 (Aug. 30, 1963); 32 Fed. Reg. 7823 (May 30, 1967); 35 Fed. Reg. 883 (Jan 22, 1970); 38 Fed. Reg. 11390 (May 7, 1973); 40 Fed. Reg. 7091 (Feb. 19, 1975).

36.    To satisfy today's salary basis test, "an employee must be compensated on a salary basis at a rate of not less than $455 per week …." 29 C.F.R § 541.600. Similarly, so-called "Highly Compensated Employees" ("HCEs") must have a "total

annual compensation of at least $100,000 [to be] deemed exempt under section 13(a)(1) ….” 29 C.F.R. § 541.601.

**B. Supreme Court Precedent**

37.    Originally, FLSA did not apply to employees of the States or political subdivisions. 52 Stat. at 1060 § 3(d) (“‘Employer’ … shall not include the United States or any State or political subdivision of a State ….”).

38.    Congress extended FLSA coverage to certain State and public entities in the 1960s, 75 Stat. 65 (May 5, 1961); 80 Stat. 830, 831 (Sept. 23, 1966), and attempted to extend coverage to all public sector employees in 1974. 88 Stat. 55, 58–59 (Apr. 8, 1974). The 1974 amendments imposed upon almost all public employers the minimum wage and maximum hour requirements that were previously limited to employees engaged in interstate commerce.

39.    In 1976, the Supreme Court held in *National League of Cities v. Usery*, 426 U.S. 833 (1976), that the Tenth Amendment limited Congress's power under the Commerce Clause to apply FLSA's minimum wage and overtime protections to the States. The Court recognized that “[o]ne undoubted attribute of state sovereignty is the States' power to determine the wages which shall be paid to those whom they employ in order to carry out their governmental functions, what hours those persons will work, and what compensation will be provided where these employees may be called upon to work overtime.” *Id*. at 845.

40.    The overtime requirements' coercive effect and impact on the States' ability to perform integral governmental functions were particularly troubling to

11

the Court. *Id.* at 849–51. It held that the Federal Government does not have the authority to usurp the policy choices of the States as to how they structure the pay of State employees or how States allocate their budgets. *Id.* at 846–48. The Federal Government cannot dictate the terms on which States hire employees. *Id.* at 849. And it cannot force States to cut services and programs to pay for the Federal Government's policy choices related to wages. *Id.* at 855. To permit the Federal Government to manage State employment relationships would be to trample upon the principles of federalism by regulating the States as States. *Id.* at 842, 845. "If Congress may withdraw from the States the authority to make those fundamental employment decisions upon which their systems for performance of these functions must rest, we think there would be little left of the States' 'separate and independent existence.'" *Id.* at 851 (quotations omitted).

41.     Almost a decade later, however, the Supreme Court backed away from its decision in *Usery*, overruling it in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985). "The political process," the Court said in *Garcia*, "ensures that laws that unduly burden the States will not be promulgated." *Id.* at 556.  DOL's incorporation of "automatic indexing" in the final rule demonstrates that the political process provides states with no protection from administrative and executive overreach where the rule-makers nefariously use the rules to shield themselves from the political process.

42.     Over three decades of experience since *Garcia* has cast serious doubt on the Court's optimistic reliance on mere politics to protect our federalist system

from Federal dominance. Subsequent Commerce Clause, Tenth Amendment, and Eleventh Amendment decisions call the continuing validity of *Garcia* into question. *See*, *e.g.*, *West v. Anne Arundel Cnty., Md.*, 137 F.3d 752, 757–58 (4th Cir. 1998) (Wilkerson, J.), *superseded on other grounds as stated in Morrison v. Cnty. of Fairfax, Va.*, No. 14-2308, --- F. 3d ---, 2016 WL 3409651 (4th Cir. June 21, 2016).

43.     After *Garcia*, the Supreme Court next addressed the applicability of FLSA's white collar exemption and salary basis test to public employees in *Auer v. Robbins*, 519 U.S. 452 (1997). The Court acknowledged that "FLSA did not apply to state and local employees when the salary-basis test was adopted in 1940." *Id.* at 457. Nonetheless, because the government Respondents in *Auer* "concede[d] that the FLSA may validly be applied to the public sector, and they also d[id] not raise any general challenge to the Secretary's reliance on the salary-basis test," the Court did not address those issues in *Auer*. *Id.*

## C. The New Overtime Rule

44.     On March 13, 2014, the President sent to the Secretary a Presidential Memorandum "directing him to modernize and streamline the existing overtime regulations for executive, administrative, and professional employees." 79 Fed. Reg. 18737.

45.     The President opined that, despite being updated in 2004, "regulations regarding overtime exemptions from the [FLSA]s overtime requirement, particularly for executive, administrative, and professional employees (often

referred to as "white collar" exemptions) have not kept up with our modern economy." *Id.*

46.    The President improperly equated the white collar exemption with the federal minimum wage (which, in any event, only Congress can change): "Because these regulations are outdated, millions of Americans lack the protections of overtime *and even the right to the minimum wage.*" *Id.* (emphasis added).

47.    With the President's instruction, DOL and WHD published a Notice of Proposed Rulemaking to propose revisions to 29 C.F.R. Part 541 on July 6, 2015. 80 Fed. Reg. 38516 (July 6, 2015).

48.    In the proposed regulations, DOL proposed a salary level "at the 40th percentile of all full-time salaried employees [nationally] ($921 per week, or $47,892 for a full-year worker, in 2013) …." *Id.* at 38517. The proposed nationwide standard failed to account for regional and State variations in salaries and economic vibrancy.  Yet DOL nonetheless stated that such a level would "accomplish the goal of setting a salary threshold that adequately distinguishes between employees *who may meet the duties requirements of the EAP exemption* and those who likely do not …." *Id.*

49.    DOL also proposed "to set the HCE total compensation level at the annualized value of the 90th percentile of weekly wages of all full-time salaried employees ($122,148 per year) …." *Id.*

50.    "Finally, [DOL] propose[d] to automatically update the standard salary and compensation levels annually … either by maintaining the levels at a fixed

percentile of earnings or by updating the amounts based on changes in the CPI-U." *Id*. at 38518.

51.    DOL considered automatic updates to the salary level—not, for instance, regular updates to the duties component—"the best method to ensure that these tests continue to provide an effective means of distinguishing between overtime-eligible white collar employees and those who may be bona fide EAP employees." *Id*.

52.    Despite the President's instruction to "address the changing *nature of the workplace*," 79 Fed. Reg. at 18737, DOL did not propose any revisions to the standards duties test that has been in place since 2004. 81 Fed. Reg. at 32444. Changes to the duties test were considered "more difficult," so increasing the salary level test was DOL's only answer to the problems and concerns that motivated the Notice of Proposed Rulemaking. *Id*.

53.    The final rule was published on May 23, 2016. 81 Fed. Reg. 32391. It set the new salary level based upon the 40th percentile of weekly earnings of full-time salaried workers in the lowest-wage census region, which is currently the South. *Id*. at 32404. Utilizing only data from the fourth quarter of 2015, DOL "determined that the required standard salary level will be $913 per week, or $47,476 annually…." *Id*. at 32405.

54.    The revised rule nearly doubles the previous salary test level of $455 per week.

55.   DOL openly acknowledges that the revisions effectively create a minimum overtime-exempt salary level for white collar employees. "White collar employees subject to the salary level test earning less than $913 per week will not qualify for the EAP exemption, and therefore will be eligible for overtime, *irrespective of their job duties and responsibilities*." *Id.* at 32405 (emphasis added). DOL "has concluded that white collar employees earning a salary of less than $913 per weeks are not bona fide EAP workers." *Id.* at 32419.

56.   DOL agreed with commenters, such as AFL-CIO, that the new salary level test should be set relative to the minimum wage. 81 Fed. Reg. at 32405.

57.   DOL disregarded concerns expressed by local governments that they do not have the same ability as private employers to increase prices or reduce profits. *Id.* at 32421. In its opinion, basing the new salary level on the lowest wage census region sufficiently addressed the concern of those governments. *Id.* Even so, DOL perpetuated the special salary level historically applied to American Samoa. *Id.* at 32422–23.

58.   Additionally, the new rule increases the total annual compensation requirement for HCEs "to the annualized weekly earnings of the 90th percentile of full-time salaried workers nationally, which based on fourth quarter of 2015 data is $134,004." *Id.* at 32429. Unlike the standard salary level test, DOL did not make a regional adjustment to the HCE compensation level. *Id.*

59.   The revised salary level test and HCE compensation level will take effect on December 1, 2016. *Id.* at 32391.

16

60.     Lastly, the new rule establishes an indexing mechanism to automatically update the standard salary level test and the HCE compensation requirement every three years on the first of the year. *Id*. at 32430. The indexing provisions are set forth in the new § 541.607. *Id*. The first automatic ratcheting will occur on January 1, 2020. *Id*.

61.     DOL admits that the Section 13(a)(1) exemption does not reference automatic updating, a salary level, or the salary level test. *Id*. at 32431. While simultaneously claiming authority to enact these regulations, DOL bluntly states these regulations "were all made without specific Congressional authorization." *Id*.

## D. The Impact on State Governments and Businesses

62.     The Plaintiff States estimate that the new overtime rule will increase their employment costs significantly based, in part, upon the number of salaried EAP employees that will no longer be overtime exempt.

63.     Because the Plaintiff States cannot reasonably rely upon a corresponding increase in revenue, they will have to reduce or eliminate some essential government services and functions. For example, certain infrastructure and social programs may be reduced or cut. The Plaintiff States' budgets will have less discretionary funds available because, as result of the new federal overtime rule, a greater percentage of their funds will be devoted to employment costs against the States' will. These changes will have a substantial impact on the lives and well-being of the Citizens of the Plaintiff States.

64.    The Plaintiff States will be irreparably harmed by the application of the new overtime rule because the new rule "displaces state policies regarding the manner in which they will structure delivery of those governmental services which their citizens require." *See Nat'l League of Cities*, 426 U.S. at 847.

65.    The Plaintiff States will be forced to reclassify some salaried EAP employees as hourly employees and reduce their hours to avoid the payment of overtime. The Plaintiff States may also have to increase the workload of EAP employees that will remain overtime exempt to accommodate the reduced workload of reclassified workers. And the Plaintiff States may have to eliminate some employment positions due to the new budgetary constraints.

66.    The State of Iowa is an example of the effect on the Plaintiff States. It estimates that the new rule will add approximately $19.1 million of additional costs on the State of Iowa government and its public universities in the first year.

67.    The State of Arkansas is another illustration. Under the new overtime rule, the State of Arkansas estimates that approximately 3,995 employees reporting through the Arkansas Administrative Statewide Information System (AASIS) will no longer be overtime exempt. The resulting financial burden to the State in additional annual employment costs and overtime/compensatory time accruals would far exceed $1,000,000 if the State maintained its current level of overtime usage and payouts.

68.    The State of Arkansas will likely be required to reclassify many salaried EAP employees as hourly employees and limit those employees' hours to

avoid the payment of overtime.  Limiting and shifting workloads to avoid additional overtime liability is likely to result in the reduction of services or delays in the provision of those services.

69.     The State of Arkansas agencies that employ large numbers of specialized job classifications, such as nurses or law enforcement officers, are inherently restricted in the ability to shift or limit workloads, and will therefore necessarily suffer increased overtime payouts that could cripple budgets.

70.     The adverse impacts of the overtime rule are most noticeable on the state level, as the State of Arkansas employs roughly 14% of the State's workforce.  However, the drastic expansion of the salary threshold also directly impacts all other public and private FLSA-covered employers, including small businesses, low-profit margin businesses, and rural communities.  The County Quorum Courts of Baxter, Pope, Benton, White, and Marion Counties have passed resolutions citing the undue hardship (financial and otherwise) that the new overtime rule will impose upon employers and employees in the State of Arkansas and requesting that the Arkansas Attorney General take legal action to protect the interests and well-being of all Arkansas citizens.

71.     Similarly, the State of Kansas has approximately 550 exempt Executive and Judicial Branch employees—which is approximately 20% of all such employees in Kansas—who would be affected by the new overtime rule. These numbers do not include employees of the Kansas Board of Regents.

72.    Private employers in Kansas will also suffer. DOL estimates that approximately 40,000 employees in Kansas will be affected by the new overtime rule.

73.    The State of Maine provides another example of the effect on the Plaintiff States.  Under the new overtime rule, the State of Maine estimates that approximately 450 employees could be no longer overtime exempt.  The State of Maine's biennial budget does not include funding to offset the resulting financial burden to the State in additional annual employment costs and overtime/compensatory time accruals, if the State maintained its current level of overtime usage and payouts.

74.    The State of Maine will likely be required to reclassify many salaried EAP employees as hourly employees and limit those employees' hours to avoid the payment of overtime.  This will likely result in the loss of flex schedules over Maine's two-week pay period and the elimination of telecommuting for affected employees, as well as other strategies to manage hours to conform with the State's biennial budget.  Limiting and shifting workloads and eliminating workplace flexibility to avoid additional overtime liability is likely to result in the reduction of services or delays in the provision of those services.

75.    Likewise, the Commonwealth of Kentucky estimates that, by December 1, 2016, it will have approximately 1,600 state employees who will move into the category of employees covered by the new rule, i.e. into non-exempt status.

76.     The State of Arizona also has about 1,437 employees that are currently classified as "exempt" that are earning an annual salary less than the new threshold. If there were no other changes to FLSA designation, and the only thing that changed was an increase to the employees' base salary to ensure they are at least equal to the new threshold, the budgetary impact would be nearly $10,000,000.

77.     Private employers in the Plaintiff States will suffer the same ill-effects. The harm to the Plaintiff States' private employers will impact the Plaintiff States' tax revenue—the same source from which they will now have to pay the Federal Executive's increased overtime pay requirement.

## IV.  CLAIMS FOR RELIEF

### COUNT ONE

### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 (DJA) and 5 U.S.C. § 706 (APA) that the new Rules at Issue Are Unlawful by Violating the Tenth Amendment

78.     The allegations in paragraphs 1 through 77 are reincorporated herein.

79.     The DJA empowers the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Similarly, the APA requires this Court to hold unlawful and set aside any agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

80.     The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to

the states respectively, or the people." U.S. Const. amend X.

81.    The Tenth Amendment is a barrier to Congress's power under the Commerce Clause to apply FLSA to the States and the 29 C.F.R. Part 541 salary basis test and compensation levels.

82.    As set forth herein, enforcing FLSA and the new overtime rule against the States infringes upon state sovereignty and federalism by dictating the wages that States must pay to those whom they employ in order to carry out their governmental functions, what hours those persons will work, and what compensation will be provided where these employees may be called upon to work overtime.

83.    FLSA and the new overtime rule commandeer, coerce, and subvert the States by mandating how they structure the pay of State employees and, thus, they dictate how States allocate a substantial portion of their budgets. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2605 (2012) ("The threatened loss of over 10 percent of a State's overall budget, in contrast, is economic dragooning that leaves the States with no real option but to acquiesce in the Medicaid expansion.").

84.    Further, as a result of the new overtime rules and the accompanying damage to State budgets, States will be forced to eliminate or alter employment relationships and cut or reduce services and programs. Left unchecked, DOL's salary basis test and compensation levels will wreck State budgets.

85.    The new overtime rule regulates the States as States and addresses matters that are indisputable attributes of State sovereignty (employment

22

relationships, services, functions, and budgets). Compliance with the overtime rule directly impairs the States' ability to structure integral operations in areas of traditional governmental functions and there is no federal interest that justifies State submission. *See Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 288 & n.29 (1981).

86.     To the extent *Garcia* can be read to hold otherwise, it should be overruled.

87.     Because the new rules and regulations are not in accordance with the law as articulated above, they are unlawful, should be declared invalid, and should be set aside.

## COUNT TWO

### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 (DJA) and 5 U.S.C. § 706 (APA) that the new Rules at Issue Are Unlawful by Exceeding Congressional Authorization – Salary Basis Test, HCE Compensation Level, and Indexing

88.     The allegations in paragraphs 1 through 87 are reincorporated herein.

89.     The DJA empowers the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Similarly, the APA requires this Court to hold unlawful and set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

90.    29 U.S.C. § 213(a)(1)'s plain terms address "employees employed in a bona fide executive, administrative, or professional *capacity* …." (Emphasis added.) It speaks in terms of "*activities*," not salary. *Id*. Accordingly, the applicability of the exemption must be determined based upon the duties and activities actually performed by the employee, not merely with respect to the salary paid to the employee. Salary may be one factor to be considered, but it cannot be a litmus test.

91.    There is no indication that Congress intended an employee's salary level to be a proxy (or substitute) "for distinguishing between overtime-eligible employees and overtime exempt white collar workers." *Cf.* 81 Fed. Reg. 32404. And Congress had no intention of effectively establishing a federal minimum overtime-exempt salary for white collar workers through 29 U.S.C. § 213(a)(1).

92.    The new rule also violates Congressional authorization by failing to exempt "bona fide executive, administrative, or professional" employees whose salaries fall below the new threshold.

93.    Moreover, there is no specific Congressional authorization in 29 U.S.C. § 213(a)(1), or FLSA generally, for the new indexing mechanism related to the salary basis test and HCE compensation level.

94.    DOL has acknowledged that its historical use of a salary level and salary basis test, as well as its future attempted use of indexing, are "without specific Congressional authorization." 81 Fed. Reg. at 32431. Invalid action does not become valid through the passage of time.

95.    Therefore, the new rules and regulations described herein go so far beyond any reasonable reading of the relevant statutory text that the new salary level, salary basis test, HCE compensation level, and indexing mechanism are in excess of Congressional authorization and must be declared invalid and set aside.

## COUNT THREE

### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 (DJA) and 5 U.S.C. § 706 (APA) that the new Rules at Issue Are Being Imposed Without Observance of Procedure Required by Law – Indexing

96.    The allegations in paragraphs 1 through 95 are reincorporated herein.

97.    The DJA empowers the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Similarly, the APA requires this Court to hold unlawful and set aside any agency action that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

98.    29 U.S.C. § 213(a)(1) mandates that the white collar exemption be "defined and delimited from time to time by regulations of the Secretary …."

99.    With exceptions that are not applicable here, agency rules must go through notice-and-comment rulemaking. 5 U.S.C. § 553.

100.    The Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), and the new rules and described herein are "rules" under the APA. 5 U.S.C. § 551(4).

101.    By purporting to implement automatic updates of the salary basis test and HCE compensation level every three years, the indexing mechanism that will be set forth in new 29 C.F.R. § 541.607 violates the statutory command to "define

and delimit from time to time," as well as the APA's notice-and-comment rulemaking process.

102.   DOL concedes that indexing will dispense with "the need for frequent rulemaking" in violation of the statutory language and APA. 81 Fed. Reg. 32400.

103.   Therefore, the new rules and regulations described herein do not observe the procedures required by law, are in excess of Congressional authorization, and must be declared invalid and set aside.

## COUNT FOUR

### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 (DJA) and 5 U.S.C. § 706 (APA) that the new Rules at Issue Are Arbitrary and Capricious

104.   The allegations in paragraphs 1 through 103 are reincorporated herein.

105.   The APA requires this Court to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

106.   As set forth herein, Defendants' actions are arbitrary and capricious, are not otherwise in accordance with the law, and must be declared invalid and set aside.

## COUNT FIVE – IN THE ALTERNATIVE

### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 (DJA) and 5 U.S.C. § 706 (APA) that the new Rules at Issue Are Unlawful by Improperly Delegating Congressional Legislative Power

107.   The allegations in paragraphs 1 through 106 are reincorporated herein.

108.   The DJA empowers the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Similarly, the APA requires this Court to hold unlawful and set aside any agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

109.   Article 1, § 1 of the Constitution vests "[a]ll legislative Powers herein granted … in a Congress of the United States." The text does not permit the delegation of those powers so the Supreme Court has "repeatedly said that when Congress confers decisionmaking authority upon agencies Congress must lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (quotations omitted).

110.   29 U.S.C. § 213(a)(1) fails to lay down any intelligible principle by which DOL was to establish the qualifications of the white collar exemption. On the contrary, Congress impermissibly conferred unlimited legislative authority on DOL.

111.   As a result of Congress's failure to provide an intelligible principle to guide DOL's rulemaking under 29 U.S.C. § 213(a)(1), DOL asserts:

> While it is true that section 13(a)(1) does not reference automatic updating, it also does not reference a salary level or salary basis test, a duties test, or other longstanding regulatory requirements. Rather than set precise criteria for defining EAP exemptions, Congress delegated that task to the Secretary by giving the Department the broad authority to define and delimit who is bona fide executive, administrative, or professional employee … These changes were all made without specific Congressional authorization.

81 Fed. Reg. 32431.

27

112.    Therefore, DOL is unconstitutionally exercising Congress's legislative power to establish a Federal minimum salary level for white collar workers through the new overtime rules.

113.    Because the new rules and regulations are not in accordance with the law as articulated above, they are unlawful, should be declared invalid, and should be set aside.

## V.  DEMAND FOR JUDGMENT

Plaintiffs respectfully request the following relief from the Court:

114    A declaratory judgment that the new overtime rules and regulations are substantively unlawful under the Constitution;

115.    A declaratory judgment that the new overtime rules and regulations are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under the APA;

116.    A declaratory judgment that the new overtime rules and regulations must be set aside actions taken "without observance of procedure required by law" under the APA;

117.    A declaratory judgment that the new overtime rules and regulations, are arbitrary and capricious under the APA;

118.    A declaratory judgment that the new overtime rules are unlawful as applied to the States;

119.    Temporary or preliminary relief enjoining the new overtime rules and regulations from having any legal effect;

120.   A final, permanent injunction preventing the Defendants from implementing, applying, or enforcing the new overtime rules and regulations; and

121.   All other relief to which the Plaintiffs may show themselves to be entitled, including attorney's fees and costs of court.

Respectfully submitted,

Dated:  September 20, 2016.

By:  /s/  Lawrence VanDyke
ADAM PAUL LAXALT
  *Attorney General of Nevada*
LAWRENCE VANDYKE (TX Bar. 24063044)
  *Solicitor General*
JORDAN T. SMITH
  *Assistant Solicitor General*
STEVEN G. SHEVORSKI
  *Head of Complex Litigation*
OFFICE OF THE ATTORNEY GENERAL
100 North Carson Street
Carson City, NV 89701
(775) 684-1100
LVanDyke@ag.nv.gov


*Counsel for Plaintiffs*

By:  /s/  Prerak Shah
KEN PAXTON
  *Attorney General of Texas*
JEFFREY C. MATEER
  *First Assistant Attorney General*
BRANTLEY STARR
  *Deputy First Assistant Attorney General*
PRERAK SHAH (TX Bar. 24075053)
  *Senior Counsel to the Attorney General*
OFFICE OF THE ATTORNEY GENERAL
P.O Box 12548, Mail Code 001
Austin, TX 78711-2548
(512) 936-1700
Prerak.Shah@texasattorneygeneral.gov

*Counsel for Plaintiffs*


[Additional counsel and Governors listed on next page]

LUTHER STRANGE
Attorney General
State of Alabama

MARK BRNOVICH
Attorney General
State of Arizona

LESLIE RUTLEDGE
Attorney General
State of Arkansas

SAM OLENS
Attorney General
State of Georgia

GREG ZOELLER
Attorney General
State of Indiana

TERRY E. BRANSTAD
Governor
State of Iowa

DEREK SCHMIDT
Attorney General
State of Kansas

MATTHEW G. BEVIN
Governor
Commonwealth of Kentucky

JEFF LANDRY
Attorney General
State of Louisiana

PAUL LEPAGE
Governor
State of Maine

BILL SCHUETTE
Attorney General
State of Michigan

PHIL BRYANT
Governor
State of Mississippi

DOUG PETERSON
Attorney General
State of Nebraska

SUSANA MARTINEZ
Governor
State of New Mexico

MIKE DEWINE
Attorney General
State of Ohio

SCOTT PRUITT
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

SEAN REYES
Attorney General
State of Utah

BRAD SCHIMEL
Attorney General
State of Wisconsin