IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

PLANO CHAMBER OF COMMERCE, et al.,

PLAINTIFFS,

v.

THOMAS E. PEREZ, et al.,

DEFENDANTS.

Civil Action No. 4:16-cv-732-ALM

**PLAINTIFFS' MOTION FOR EXPEDITED SUMMARY
JUDGMENT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

MOTION FOR EXPEDITED SUMMARY JUDGMENT (ORAL ARGUMENT REQUESTED) .................................................................................................. 1

BRIEF IN SUPPORT OF MOTION FOR EXPEDITED SUMMARY JUDGMENT ................. 4

STATEMENT OF ISSUES .......................................................................................... 4

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 4

STANDING ................................................................................................................ 8

ARGUMENT ........................................................................................................... 10

I.      THE NEW OVERTIME RULE'S MINIMUM SALARY THRESHOLD EXCEEDS DOL'S STATUTORY AUTHORITY UNDER THE FLSA .......... 11

        A.      The Text Of The FLSA Requires That The White Collar Exemptions Turn On Job Functions ....................................... 13

        B.      Decades Of Administrative Practice And Judicial Decisions Confirm That The White-Collar Exemptions Turn On Job Functions .......................................................................... 14

        C.      The New Overtime Rule Exceeds DOL's Statutory Authority By Adopting A Salary Test That Is Not A Plausible Proxy For Exempt Job Functions ..................................................... 19

II.     THE NEW OVERTIME RULE'S AUTOMATIC INDEXING PROVISION EXCEEDS THE DEPARTMENT'S AUTHORITY UNDER THE FLSA ........................................................................... 21

        A.      The Department Lacks Authority To Index The New Overtime Rule's Minimum Salary Threshold Under The FLSA........................................................................................... 22

        B.      The Department May Not Automatically Index Its Overtime Regulations Without Complying With The Requirements Of the APA.............................................................................. 24

CONCLUSION........................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*10 Ring Precision, Inc. v. Jones,*
    722 F.3d 711 (5th Cir. 2013) ..................................................................26

*Ass'n v. Nat'l Mediation Bd.,*
    29 F.3d 655 (D.C. Cir. 1994) ..................................................................23

*Buckner v. Armour & Co.,*
    53 F. Supp. 1022 (N.D. Tex. 1942) ..................................................16, 17

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984)..........................................................................11, 21, 23

*Commodity Futures Trading Comm'n v. Schor,*
    478 U.S. 833 (1986) ..................................................................................18

*Devoe v. Atlanta Paper Co.,*
    40 F. Supp. 284 (N.D. Ga. 1941) .....................................................17, 18

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) ...................................................................... passim

*FDA v. Brown & Williams Co.,*
    529 U.S. 120 (2000).............................................................................18, 23

*Girling Health Care, Inc. v. Shalala,*
    85 F.3d 211 (5th Cir. 1996) .....................................................................10

*Global Van Lines, Inc. v. ICC,*
    714 F.2d 1290 (5th Cir. 1983) .................................................................24

*Krill v. Arma Corp.,*
    76 F. Supp. 14 (E.D.N.Y. 1948) ............................................................18

*La. Pub. Serv. Comm'n v. FCC,*
    476 U.S. 355 (1986)..................................................................................23

*Lion Health Servs., Inc. v. Sebelius,*
    635 F.3d 693 (5th Cir. 2011) ...................................................................10

*Lorillard v. Pons,*
    434 U.S. 575 (1978)..................................................................................19

*Luminant Generation Co. v. EPA,*
    675 F.3d 917 (5th Cir. 2012) ...................................................................26

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

**Cases**

*Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.,*
463 U.S. 29 (1983) ........................................................................................................ 26

*Nat'l Fed'n of Indep. Bus. v. Perez,*
No. 16-cv-66, 2016 U.S. Dist. LEXIS 89694 (N.D. Tex. June 27, 2016), appeal pending (5th Cir.) ....................................................................................................... 27

*National Pork Producers Council v. EPA,*
635 F.3d 738 (5th Cir. 2011) ........................................................................................ 12

*Nevada v. Dep't of Labor,*
No. 16-cv-731 (E.D. Tex.) pending ............................................................................... 4

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.,*
416 U.S. 267 (1974) ...................................................................................................... 18

*Ragsdale v. Wolverine World Wide, Inc.,*
535 U.S. 81 (2002) ........................................................................................................ 12

*Sebelius v. Auburn Regional Med. Ctr.,*
133 S. Ct. 817 (2013) .................................................................................................... 18

*Shell Offshore Inc. v. Babbitt,*
238 F.3d 622 (5th Cir. 2001) ........................................................................................ 10

*Supreme Beef Processors, Inc. v. USDA,*
275 F.3d 432 (5th Cir. 2001) ........................................................................................ 20

*Talbert v. Am. Risk Ins. Co.,*
405 Fed. Appx. 848 (5th Cir. 2010) .............................................................................. 20

*Tex. Power & Light Co. v. FCC,*
784 F.2d 1265 (5th Cir. 1986) ...................................................................................... 12

*Texas v. United States,*
497 F.3d 491 (5th Cir. 2007) .................................................................................. 11, 23

*U.S. Steel Corp. v. EPA,*
595 F.2d 207 (5th Cir. 1979) ........................................................................................ 25

*Util. Air Reg. Grp. v. EPA,*
134 S. Ct. 2427 (2014) .................................................................................................. 25

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

**Cases**

*Wirtz v. Mississippi Publishers Corp.*,
  364 F.2d 603 (1966) (Burger, J., sitting by designation) .......................................................18

**STATUTES**

52 Stat. 1060 .........................................................................................................................4

5 U.S.C. § 553(b)(B) ..........................................................................................................25

5 U.S.C. § 553(b), (c) ........................................................................................................24

5 U.S.C. § 705 .......................................................................................................................4

5 U.S.C. § 706 .....................................................................................................................30

5 U.S.C. § 706(2)(A) ..........................................................................................................26

5 U.S.C. § 706(2)(C) ..........................................................................................................11

16 U.S.C. § 497c(b)(3) .......................................................................................................23

29 U.S.C. §§ 206 ..............................................................................................................5, 24

29 U.S.C. § 213(a)(1) ................................................................................................... passim

29 U.S.C. § 213(a)(17) .....................................................................................................5, 24

29 U.S.C. § 213(b)(24) .......................................................................................................24

29 U.S.C. § 1083(c)(7)(D)(vii) ..........................................................................................23

43 U.S.C. § 1337(a)(3)(C)(vii) ..........................................................................................24

Fair Labor Standards Act ............................................................................................. passim

Pub. L. No. 101-583, Sec. 2, 104 Stat. 2871 (1990) .........................................................18

**OTHER AUTHORITIES**

29 C.F.R. § 541.100 ..............................................................................................................5

29 C.F.R. § 541.200 ..............................................................................................................5

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

**Cases**

29 C.F.R. § 541.300 ............................................................................................5

29 C.F.R. § 541.303(d) .......................................................................................5

29 C.F.R. § 541.304(d) .......................................................................................5

29 C.F.R. § 541.400 ............................................................................................5

29 C.F.R. § 541.500 ............................................................................................5

29 C.F.R. § 541.500(c) ........................................................................................5

29 C.F.R. § 541.600 ............................................................................................6

29 C.F.R. § 541.601 ............................................................................................6

29 C.F.R. § 541.607 .......................................................................................8, 21

541.29 C.F.R. § 541.400(b) .................................................................................5

3 Fed. Reg. 2,518 (Oct. 20, 1938) ..............................................................14, 15

3 Fed. Reg. 2,518 (Oct. 20, 1938) ......................................................................5

5 Fed. Reg. 4,077 (1940) ............................................................................15, 16

5 Fed. Reg. 4,077 (Oct. 10, 1940) .......................................................................6

14 Fed. Reg. 7,705 (Dec. 24, 1949) .....................................................................6

23 Fed. Reg. 8,962 (Nov. 18, 1958) .....................................................................6

29 Fed. Reg. 9,505 (Aug. 30, 1963) .....................................................................6

35 Fed. Reg. 883 (Jan. 22, 1970) .........................................................................6

40 Fed. Reg. 7,091 (Feb. 19, 1975) ......................................................................6

69 Fed. Reg. at 22,171 .......................................................................................25

69 Fed. Reg. at 22,171–72 .................................................................................22

69 Fed. Reg. at 22,165 .......................................................................................16

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

**Cases**

69 Fed. Reg. at 22,173 ............................................................................................................14, 19

69 Fed. Reg. at 22,167 ..................................................................................................................6

79 Fed. Reg. at 18,737 ................................................................................................................22

79 Fed. Reg. 18,737 ......................................................................................................................7

81 Fed. Reg. at 32,419-20 ...........................................................................................................27

81 Fed. Reg. at 32,400 ................................................................................................................25

81 Fed. Reg. at 32,431 ....................................................................................................21, 22, 23

81 Fed. Reg. at 32,404 ................................................................................................................20

81 Fed. Reg. at 32,439 ................................................................................................................14

81 Fed. Reg. at 32,405 ......................................................................................................8, 9, 19

81 Fed. Reg. at 32,430 ....................................................................................................8, 21, 22

81 Fed. Reg. at 32,393 ..................................................................................................................8

29 C.F.R. Part 541 ...............................................................................................................5, 6, 7

## MOTION FOR EXPEDITED SUMMARY JUDGMENT
## (ORAL ARGUMENT REQUESTED)

Plaintiffs, a broad and diverse coalition of more than fifty-five Texas and national business groups (collectively "the Business Plaintiffs"), hereby move for summary judgment on all counts of their Complaint challenging the U.S. Department of Labor's (DOL's) rule *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees*, 81 Fed. Reg. 32,391 (May 23, 2016) (hereafter the "new Overtime Rule" or simply "the Rule") (attached as Ex. 1). The new Overtime Rule more than doubles the DOL's longstanding "minimum salary threshold" that employers must pay before an employee is eligible for an exemption from the statutory requirement to pay overtime, even if that employee unquestionably performs exempt executive, administrative, or professional duties. Moreover, under the Rule this salary threshold will be automatically adjusted every three years, even though the Department lacks any authority to increase overtime obligations in the future without providing notice and an opportunity for public comment.

These changes are not merely a matter of degree. Rather, they fundamentally alter the focus of the exemption analysis, shifting the test from one focused primarily on the *functions* identified by Congress in the FLSA to one that turns almost entirely on a salary threshold that is not a plausible proxy for those statutorily defined job functions. And by automatically adjusting the salary threshold every three years in perpetuity, the Rule ensures that this disconnect will only grow greater over time. As a result, the Rule is unlawful for three independent reasons and should be set aside.

*First*, the Rule's revision to the minimum salary threshold exceeds the authority of the DOL under the Fair Labor Standards Act ("FLSA" or "Act"). The FLSA—both on its face and as interpreted by DOL and courts for over 75 years—directs DOL to issue regulations that clarify

1

the *job functions* encompassed in the statutory terms "executive, administrative, or professional."

Yet, the Department's new Overtime Rule raises the longstanding minimum salary threshold for

exemption so high that it no longer serves as a plausible proxy for the particular categories of

employees that Congress intended to exempt. Indeed, the Rule's minimum salary threshold

would deny the exemption to millions of employees that DOL itself concedes perform

"executive, administrative, or professional" duties. Similarly, the new salary threshold is higher

than the *median* salary for some job categories that DOL itself classifies as managerial. Thus,

the Rule untethers the salary threshold from its historical use as a proxy to be considered in

defining job functions and elevates the threshold to the predominant factor defining the

exemption, regardless of job function. Such an approach exceeds the authority given to DOL by

the FLSA. It would effectively deny the overtime exemption for entire categories of salaried

executive, administrative, professional, and computer employees whose job duties qualify them

to be treated as exempt, and is inconsistent with the statute as well as more than 75 years of

congressionally accepted regulation by the Department.

*Second*, the new Overtime Rule also exceeds DOL's regulatory authority under the FLSA

by establishing an unprecedented "escalator" provision that will dramatically increase the

minimum salary over time. This provision not only departs from the terms of the FLSA, it

would make these changes to the salary threshold without additional notice and comment

required by the APA as specified by the FLSA.

*Third*, the Rule is also arbitrary, capricious, contrary to procedures required by law, and

otherwise contrary to law in several respects. Although the Rule reversed the regulatory

approach taken by DOL for more than 75 years, DOL failed to acknowledge, explain, and justify

that reversal. Nor did DOL address or take into account the strong reliance interests of the

regulated community concerning the prior regulatory approach. In addition, the Rule permits employers to count nondiscretionary bonuses, incentives, and commissions toward up to 10 percent of the minimum salary level for exemption. Yet the Rule arbitrarily excludes nondiscretionary bonuses, incentives and commissions paid less frequently than quarterly as well as other types of compensation (e.g., discretionary bonuses, profit-sharing, stock options, employer-funded retirement benefit, and deferred compensation). Such distinctions bear no rational relationship to the statutory task of defining exempt job functions. For all of these reasons, the Rule is arbitrary, capricious, and otherwise contrary to law.

These unlawful features of the new Overtime Rule will injure members of the Business Plaintiffs and their previously exempt employees across many industries, job categories, and geographic areas. The costs of compliance, combined with inevitable litigation costs, will force many smaller employers and non-profits operating on fixed budgets to cut programming, staffing, and services. Many employers will lose the ability to effectively and flexibly manage their workforces upon losing the exemption for frontline executives, administrators, and professionals. Millions of employees across the country will have to be reclassified from salaried to hourly workers, resulting in restrictions on their work hours that will deny them opportunities for advancement and reduce their ability to perform their jobs—to the detriment of their employers, their customers, and their own careers. Thus, many employees will not actually be paid any more; they will simply work less, and have fewer opportunities to be promoted—all to the ultimate detriment of economic growth.

The new Overtime Rule is scheduled to take effect on December 1, 2016. The Business Plaintiffs, including Plaintiff National Federation of Independent Business ("NFIB"), have asked DOL to extend the effective date of the Rule, but to date DOL has refused to do so. The Plaintiff

3

States have filed a Motion for Preliminary Injunction in the parallel case of *Nevada v. Dep't of Labor*, No. 16-cv-731 (E.D. Tex.) pending before this Court. The Business Plaintiffs support the States' Motion requesting that the Rule be preliminarily enjoined on a nationwide basis. The Business Plaintiffs' statutory arguments overlap with those arguments in the States' motion, and this motion is subject to the same briefing schedule as the Plaintiff States' motion under the Local Rules of this Court. In the absence of DOL's agreement to extend the effective date of the Rule, *see* 5 U.S.C. § 705, to provide this Court with additional time to resolve this motion, the Business Plaintiffs respectfully request that the Court hold oral argument at the Court's earliest convenience after briefing on this motion is complete, and that the Court expedite its ruling on this motion and adjudicate it on the same timetable as the Plaintiff States' Motion for Preliminary Injunction

## BRIEF IN SUPPORT OF MOTION FOR EXPEDITED SUMMARY JUDGMENT
### STATEMENT OF ISSUES

I.      Whether the new Overtime Rule's minimum salary threshold exceeds the Department of Labor's authority under the FLSA.

II.     Whether the new Overtime Rule's automatic indexing provision exceeds the Department's authority under the FLSA.

III.    Whether the new Overtime Rule is arbitrary, capricious, or otherwise contrary to law in violation of the Administrative Procedure Act ("APA").

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The Fair Labor Standards Act, enacted by Congress in 1938 during the Great Depression, 52 Stat. 1060, generally requires covered employers to pay their employees at least the federal minimum wage (currently, $7.25 per hour) for all hours worked and overtime pay at one and one-half an employee's regular rate of pay for all hours worked over 40 in a single

4

workweek. *See* 29 U.S.C. §§ 206 (minimum wage), 207 (overtime).

2.      The FLSA's minimum wage and overtime requirements "shall not apply" to "any employee employed in a bona fide executive, administrative, or professional [("EAP")], … capacity, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary), subject to the provisions of [the APA]." 29 U.S.C. § 213(a)(1).  This provision is known as the "white-collar" or EAP exemption.

3.      Since 1940, DOL's Part 541 regulations (29 C.F.R. Part 541) have included three tests that employees must meet before qualifying for the white-collar exemption.  First, employees must be paid on a "salary basis," meaning that they must be paid a regular, predetermined amount of compensation, which is not subject to reduction because of variations in the quality or quantity of the work performed.[1]  Second, employees must be paid at least the minimum salary level for exemption established in the regulations, currently $455 per week ($23,660 annually).  Third, the employees must have a primary duty of performing the exempt executive, administrative, professional, computer or outside sales job duties.[2]

4.      When the Department first issued regulations to define and delimit the white-collar exemptions on October 20, 1938, DOL set a minimum salary level for exemption at $30 per week ($1,560 annually) and established the job duties employees must perform to qualify for the exemptions.  3 Fed. Reg. 2,518 (Oct. 20, 1938).

5.      Between 1940 and 1975, administrations of both political parties raised the minimum salary level for exemption six times—in 1940 (Franklin D. Roosevelt), 1949

---

[1] Teacher, doctors, lawyers and outside sales employees are not subject to the salary level and salary basis tests.  29 C.F.R. § 541.303(d) (teachers); 29 C.F.R. § 541.304(d) (doctors and lawyers); 29 C.F.R. § 541.500(c) (outside sales).  In addition, exempt computer employees may be paid by the hour.  29 U.S.C. § 213(a)(17); 541.29 C.F.R. § 541.400(b).

[2] 29 C.F.R. § 541.100 (executives); 29 C.F.R. § 541.200 (administrative employees); 29 C.F.R. § 541.300 (professionals); 29 C.F.R. § 541.400 (computer); 29 C.F.R. § 541.500 (outside sales).

(Truman), 1958 (Eisenhower), 1963 (Kennedy), 1970 (Nixon), and 1975 (Ford).[3] The Reagan Administration, the George H.W. Bush Administration, and the Clinton Administration did not promulgate final rules adjusting the minimum salary threshold.

6.      Twenty-nine years after the previous increases to the salary level tests, the George W. Bush Administration increased the salary threshold and made other revisions to update the Part 541 regulations. *Defining and Delimiting the Exemptions for Executive, Administrative, and Professional Employees, Outside Sales and Computer Employees*, 69 Fed. Reg. 22,122 (Apr. 23, 2004). At that time, DOL established a new standard minimum salary for exempt status at $455 per week ($23,660 annually). 29 C.F.R. § 541.600. DOL also established a new "highly compensated" salary test applicable to employees currently defined as employees with total annual compensation of at least $100,000, who are exempt if they customarily and regularly perform at least one of the exempt duties of an executive, administrative or professional employee. 29 C.F.R. § 541.601. In setting the minimum salary level in 2004, DOL "considered the data . . . showing the salary levels of the bottom 10 percent, 15 percent and 20 percent of all salaried employees, and salaried employees in the lower wage south and retail sectors." 69 Fed. Reg. at 22,167 & Table 2. The Department set the minimum salary level at $455 per week ($23,660 annually), the 20th percentile for salaried employees in the South region and retail industry, rather than at the 10th percentile as in 1958, to account for changes in the structure of the Department's duties test and because the data included nonexempt salaried employees. *Id.* at 22,168-69 & Table 3.

7.      On March 23, 2014, the President issued a memorandum directing the Secretary

---

[3] 5 Fed. Reg. 4,077 (Oct. 10, 1940); 14 Fed. Reg. 7,705 (Dec. 24, 1949); 23 Fed. Reg. 8,962 (Nov. 18, 1958); 29 Fed. Reg. 9,505 (Aug. 30, 1963); 35 Fed. Reg. 883 (Jan. 22, 1970); 40 Fed. Reg. 7,091 (Feb. 19, 1975).

of Labor "to modernize and streamline the existing overtime regulations for executive, administrative, and professional employees." 79 Fed. Reg. 18,737. Although those regulations had been revised in 2004, the President stated, "regulations regarding overtime exemptions … for executive, administrative, and professional employees … have not kept up with our modern economy." *Id.*

8.      In response to the President's direction, DOL published a notice of proposed rulemaking regarding potential revisions to DOL's Part 541 regulations.  *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 80 Fed. Reg. 38,516 (July 6, 2015).  The Department proposed to increase the minimum salary threshold to $921 per week ($47,892 annually), which was the 40th percentile of all full-time salaried employees nationally in 2013. *Id.* at 38,517. The Department further proposed to automatically adjust that minimum salary threshold so that it would not "becom[e] outdated with the often lengthy passage of time between rulemakings." *Id.* at 38,516.

9.      The Department received more than 293,000 comments on the proposed rule, including (but not limited to) comments in opposition from Plaintiffs Chamber of Commerce of the United States of America ("Chamber"), National Automobile Dealers Association ("NADA"), National Association of Manufacturers ("NAM"), National Association of Wholesaler-Distributors ("NAW"), NFIB, National Retail Federation ("NRF"), American Hotel & Lodging Association ("AH&LA"), American Society of Association Executives ("ASAE"), Associated Builders and Contractors ("ABC"), Independent Insurance Agents and Brokers of America ("IIABA"), International Franchise Association ("IFA"), National Association of Home Builders ("NAHB"), and the National Federation of Independent Business ("NFIB"). *See* Exhibits 2-13.

10.    On May 23, 2016, DOL published its new Overtime Rule. Under the Rule, effective December 1, 2016, the minimum salary for exempt employees will more than double, from $455 per week to $913 per week ($23,660 to $47,476, annualized). 81 Fed. Reg. at 32,393. That new salary level is based upon the 40th percentile of weekly earnings of full-time salaried workers in the lowest-wage census region (the South). *Id.* at 32,404-5.

11.    The new Overtime Rule also establishes an "index" provision, which automatically sets in motion an update to the minimum salary requirements every three years, without conducting any additional rulemaking to ascertain whether such increases will be justified, or taking input from affected parties. 81 Fed. Reg. at 32,430. That indexing regulation, 29 C.F.R. § 541.607, will automatically adjust the salary threshold on January 1, 2020 by determining the 40th percentile of full time salaried employees in the lowest wage region of the country (the South).

12.    As a result of doubling the salary threshold to $913 per week, DOL projects that when the Rule takes effect 4.2 million employees all over the country who otherwise may reasonably be classified as bona fide executive, administrative, or professional employees "will no longer fall within" the white-collar exemption "and therefore will be overtime protected." 81 Fed. Reg. at 32,405. DOL further estimates that an additional 3.9 million employees will no longer be covered by the white-collar exemption in the second year. *Id.* at 32,393 & 32,394, Table ES1. By the tenth year, because of the automatic increases to the minimum salary level, DOL predicts that an additional 5 million employees will lose their exempt status. *Id.* at 32,393.

## STANDING

The Business Plaintiffs are local, state, or national trade associations representing millions of employers in Texas and throughout the country. The Plaintiffs themselves are direct

objects of the new Overtime Rule because they employ executive, administrative, professional, or computer employees whose previously exempt status will be adversely affected by the new Overtime Rule. Exhibits 2-14. Likewise, the millions of employers that the Business Plaintiffs represent are also direct objects of the new Overtime Rule. *Id.* As a result of the new Overtime Rule, both Plaintiffs and their members will be harmed in their ability to maintain the overtime exemption for executive, administrative, professional, and computer employees who otherwise would be exempt from payment of overtime under the FLSA. *Id.* Plaintiffs and their members will incur payroll, accounting, and legal costs in order to comply with the Rule, both before and after its effective date. *Id.* They will also suffer harm to their ability to manage their businesses due to the loss of flexibility in the hours worked by previously exempt executive, administrative, professional, and computer employees and the forced reclassification of millions of previously exempt salaried employees to an hourly basis. *Id.* Accordingly, Plaintiffs have both direct and associational standing to challenge the new Overtime Rule on behalf of themselves and their millions of employer members throughout the country. See, e.g., *Contender Farms, LLP v. USDA,* 779 F.3d 258, 264 (5th Cir. 2015) ("If a plaintiff is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and a judgment preventing or requiring the action will redress it."); *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.,* 627 F.3d 547, 550 (5th Cir. 2010) (finding associational standing where plaintiff's members would have standing to sue in their own right; the interests sought to be protected are germane to the plaintiff associations purpose; and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit). *Sierra Club v. EPA,* 292 F.3d 895, 899-900 (D.C. Cir. 2002) ("In many if not most cases the petitioner's standing to seek review of administrative action is self-evident; no evidence outside the

administrative record is necessary for the court to be sure of it.").

## ARGUMENT

This case presents three purely legal questions of statutory authority and administrative law that may be resolved at the summary judgment stage based upon the administrative record before the agency.[4] The Business Plaintiffs' arguments that the Department's new Overtime Rule has strayed beyond the bounds of the agency's statutory authority and that the Department acted arbitrarily and capriciously present only legal issues that require no discovery or factual development beyond the administrative record. It is well established in this circuit that summary judgment is the way to resolve these purely legal issues. *See, e.g.*, *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214 (5th Cir. 1996) ("We have consistently upheld, without comment, the use of summary judgment as a mechanism for review of agency decisions."); *accord Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 695 (5th Cir. 2011) (affirming summary judgment invalidating HHS regulation capping annual Medicare reimbursements); *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 623-24 (5th Cir. 2001) (upholding summary judgment in part and granting summary judgment in full to plaintiffs in APA challenge against Department of the Interior decision regarding calculation of royalty payments ).

*First*, the Rule's revision to the minimum salary threshold exceeds DOL's authority. Although DOL has authority to establish a workable test for identifying employees who perform "executive, administrative, or professional" functions, it does not have authority to exclude from the statutory exemption employees who clearly perform those functions. However, the Rule

---

[4] The Department of Labor has not yet certified the administrative record of the new Overtime Rule to the Court. However, the documents that comprise the administrative record are all publicly available on line at www.regulations.gov. Excerpts from the administrative record consisting of comments on the proposed rule previously filed by certain of the Business Group Plaintiffs, referred to in this Motion, are attached hereto for the convenience of the Court. (Ex.'s 2-14).

raises the minimum salary threshold so high that the new salary threshold is no longer a plausible proxy for the categories of employees that Congress intended to exempt. As a result, the exemption is lost for entire categories of salaried executive, administrative, professional, and computer employees whose job duties unambiguously qualify them to be treated as exempt, in a manner that is inconsistent with the FLSA and departs from more than 75 years of regulation by the Department and judicial decisions that have been accepted by Congress.

*Second*, the new Overtime Rule also exceeds DOL's regulatory authority under the FLSA by establishing an unprecedented "escalator" provision that will dramatically increase the minimum salary over time. This provision not only departs from the terms of the FLSA, it would make these changes to the salary threshold without additional notice and comment required by the APA as specified by the FLSA.

*Third*, the Rule is also arbitrary, capricious, and otherwise contrary to law because it fails the basic requirements of reasoned decision making imposed by the APA.

## I.   THE NEW OVERTIME RULE'S MINIMUM SALARY THRESHOLD EXCEEDS DOL'S STATUTORY AUTHORITY UNDER THE FLSA

The APA directs a reviewing court to "hold unlawful and set aside agency action . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Where "Congress has directly spoken to the precise question at issue," courts must "give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). Even where there is some room for deference to an agency's interpretation of a statute susceptible of more than one reading, the agency's proffered interpretation must be "reasonable" and consistent with Congress's "intent." *Texas v. United States*, 497 F.3d 491, 506 (5th Cir. 2007). "Although *Chevron* makes clear that we must give deference to the agency's interpretation of a

statute, 'courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions they deem inconsistent with the statutory mandate or that frustrate the congressional policy underlying a statute.'" *National Pork Producers Council v. EPA*, 635 F.3d 738, 753 (5th Cir. 2011) (quoting *Tex. Power & Light Co. v. FCC*, 784 F.2d 1265, 1269 (5th Cir. 1986)); *see Contender Farms*, 779 F.3d at 269 (Although "deference [is] given to agency interpretations of ambiguous statutes, the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). *See also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002) (overturning DOL's exercise of rulemaking authority, where the agency "exercise[d] its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law"); *Contender Farms*, 779 F.3d at 273 (even a "broad grant of general rulemaking authority does not allow [the] agency to make amendments to statutory provisions").

Since its enactment in 1938, the FLSA has decreed that the statutory requirement to pay overtime "shall not apply" to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The FLSA authorizes the Secretary of Labor to "define[] and delimit[]" those terms "from time to time by regulations ... subject to the provisions of [the Administrative Procedure Act]." *Id.* However, in promulgating a rule that makes overtime status turn solely on a salary threshold that is not a plausible proxy for the job duties of an executive, administrative, or professional employee, DOL disregarded the clear mandate of the FLSA and exceeded its statutory authority. This conclusion is compelled by the plain text of the statute and is further confirmed by over 70 years of administrative practice and judicial decisions left untouched by Congress.

12

**A.    The Text Of The FLSA Requires That The White Collar Exemptions Turn On Job Functions.**

The FLSA states that its overtime requirement "shall not apply" to "any employee employed in a bona fide executive, administrative, or professional capacity."    29 U.S.C. § 213(a)(1) (emphasis added).    To ascertain how the Congress that enacted the FLSA in 1938 understood these terms, a court must look to their commonly understood meanings at the time. *Contender Farms,* 779 F.3d at 269, 271–72.

As one might expect, dictionary definitions from that era describe the words "executive," "administrative," and "professional" in functional terms—not by how much each category earns in salary.    *See, e.g.,* 3 THE OXFORD ENGLISH DICTIONARY 395 (1933) (executive); 1 THE OXFORD ENGLISH DICTIONARY 118 (1933) (administrative); 8 THE OXFORD ENGLISH DICTIONARY 1428 (1933) (professional).    In directing the Department to promulgate standards identifying those employed in an "executive, administrative, or professional capacity," the assignment from Congress is to identify those employees who perform executive, administrative, or professional *functions.*

Congress did *not* authorize DOL to define the EAP exemptions based solely on salary thresholds that are not reasonably related to the job functions described by the statute.    Thus, DOL clearly could not issue a rule stating that these exemptions shall not apply to employees with over $100,000 in college debt if it thought that doing so would ease the financial burden on recent college students.    Nor could DOL, in an effort to assist the elderly, issue a rule that refused to apply these exemptions to employees over the age of 65.    Because individuals can obviously be employed in executive, administrative, or professional jobs regardless of their student debt or age, such rules would disregard the statutory mandate to DOL to set standards that exempt these job functions.    Likewise, DOL could not impose a salary threshold of $1

13

million on the theory that the white-collar exemptions reflect a policy mistake and should be effectively eliminated. That approach, too, would abandon the FLSA's statutory mandate to exclude employees with certain job functions.

**B.     Decades Of Administrative Practice And Judicial Decisions Confirm That The White-Collar Exemptions Turn On Job Functions.**

Since it first interpreted the FLSA, DOL has consistently recognized that its authority "to define and delimit" the exemptions for "executive, administrative or professional" employees requires it to define these exemptions by reference to the job functions of employees and that, rather than merely adopting a "salary only" test, DOL may only use salary as a proxy for those job functions. 81 Fed. Reg. at 32,432-3; *see id.* at 32,446 n.84 (stating that a salary only approach is "precluded by the FLSA"); 69 Fed. Reg. at 22,173 (agreeing that the "Secretary does not have authority under the FLSA to adopt a 'salary only' test …. The Department has always maintained that the use of the phrase 'bona fide executive, administrative or professional capacity' in the statute requires the performance of specific duties.").

When DOL first issued regulations to define and delimit the white-collar exemptions in 1938, DOL focused on the job duties employees must perform to qualify for the exemptions. 3 Fed. Reg. 2,518 (Oct. 20, 1938). "Executive" and "administrative" employees were jointly defined primarily based upon the duties that they performed. *Id.* For those employees, the regulations did contain a $30 per week ($1,560 annual) compensation element. *Id.* ("[A]nd who is compensated for his services at not less than $30 (exclusive of board, lodging, or other facilities) for a workweek."). Yet, as explained below, that threshold was a plausible proxy for executive and administrative functions and was consistently viewed by DOL as simply one evidentiary factor informing the classification of employees by job functions. The definition of

14

"employee[s] employed in a bona fide ... professional ... capacity" did not have a compensation component at all; that term was described solely in terms of duties. *Id.*

Two years later, the DOL required EAP employees be paid on a salary basis at a certain specified amount. *Id.* "Professional" and "administrative" employees were defined as those "compensated for ... services on a salary or fee basis at a rate of not less than $200 per month." 5 Fed. Reg. 4,077 (1940). "Executive" employees were considered those "who [are] compensated for ... services on a salary basis at not less than $30 per week." *Id.* In describing DOL's hearings on the scope of the exemptions, however, the 1940 Stein Report[5] underscored that the duties performed by employees should be the overriding determinant of their status, stating that the minimum salary test should impact only "a few" otherwise exempt employees, since it would be contrary to the mandate of Congress if it set the minimum salary level for exemption at a level that excluded from the exemption many employees who would meet the duties requirements. *Id.* at 6.

Again in its 1949 Weiss Report, DOL reaffirmed that exempt status should be determined by job function and the minimum salaries for exempt status should not be set at a level that would result "in defeating the exemption for any substantial number of individuals who could reasonably be classified for purposes of the Act as bona fide executive, administrative, or professional employees." 1949 Weiss Report at 9. Weiss also observed, "[I]mproving the conditions of such employees is not the objective of the regulations." *Id.* at 11. That is, once it was determined that an employee was employed in an administrative, executive, or professional capacity, DOL could not deny the exemption because it believed an overtime requirement would

---

[5] Executive, Administrative, Professional . . . Outside Salesman Redefined, Wage and Hour Division, U.S. Department of Labor, Report and Recommendations of the Presiding Officer (Harold Stein) at Hearings Preliminary to Redefinition (Oct.10, 1940) ("Stein Report").

increase his or her pay.  Instead, as the Weiss Report explained, the *sole* purpose of the salary level test is "screening out the obviously nonexempt employees." *Id.* at 8; *see also, e.g., id.* at 11-12 ("Any new figure recommended should also be somewhere near the lower end of the range of prevailing salaries for these employees."); *id.* at 14 ("Consideration must also be given to the fact that executives in many of the smaller establishments are not as well paid as executives employed by larger enterprises."); *id.* at 15 ("The salary test for bona fide executives must not be so high as to exclude large numbers of the executives of small establishments from the exemption.").  The Report added, moreover, that DOL could not adopt a test "based on salary alone." *Id.* at 23.

The 1958 Kantor Report reiterated the same principle, stating that the salary tests for the EAP exemption "furnish a practical guide to the investigator as well as to employers and employees in borderline cases, and simplify enforcement by providing a ready method of *screening out the obviously non-exempt employee.*"  1958 Kantor Report at 2-3 (emphasis added).  In its 2004 rulemaking, DOL again recognized that Congress had expressly limited the Department's power to use a salary basis for defining and delimiting who is a bona fide EAP employee.  "[T]he law," DOL acknowledged, "does not give the Department authority to set minimum wages for executive, administrative, and professional employees."  69 Fed. Reg. at 22,165.  And DOL again stated that it lacked authority to use a "salary only" test. *Id.* at 22,173.  Rather, any changes in the salary threshold part of the EAP rule "ha[d] to have as its primary objective the drawing of a line separating exempt from nonexempt employees." *Id.* at 22,165.

A number of federal court decisions, dating back to shortly after the FLSA's enactment, have similarly concluded that the EAP exemptions must be defined by reference to job functions.  In *Buckner v. Armour & Co.*, 53 F. Supp. 1022, 1024 (N.D. Tex. 1942), the Northern District of

Texas addressed an assistant fire chief who met all of the duties requirements of an "executive" under 29 U.S.C. § 213(a)(1) except he was not paid the requisite salary. The court held the minimum salary requirement to be in excess of the DOL's statutory jurisdiction because "[o]nly Congress had the arbitrary power to make the exception that an executive who received a salary less than $30 per week should not be exempt. It declared that *all* serving in executive and administrative capacities were exempt." *Id.* (emphasis added). The court concluded that imposing a salary threshold "was purely an attempted law making function, while the power delegated to [the DOL] was only to define those terms." *Id.*

*Buckner* is in accord with *Devoe v. Atlanta Paper Co.*, 40 F. Supp. 284, 286 (N.D. Ga. 1941). In *Devoe*, the court rightly noted that the DOL's ability to define the EAP exemption is restricted to the limits set forth by Congress. "These limits are marked out by the fair and natural meaning of the words 'bona fide executive ... capacity." *Id.* "Although the Administrator may legally define the term administrative employee with wide discretion within the meaning of such term," the court explained, "he cannot go beyond that and add elements which form no part of such conception. In other words, he cannot add an element which is not a real incident to executive work." *Id.* The court held that the salary level of an executive is not "a natural and admissible attribute of the term 'bona fide executive and administrative ... capacity.'" *Id.* The court continued:

> It might have been wiser for Congress to have classified employees to be covered by the Act upon the basis of their earnings, or to have added with respect to administrative officers the additional requirement of a minimum salary, but it did not do so, and in my opinion, the Administrator cannot, by adding such requirement, which has no relation to the character of the work performed, bring within the scope of the Act a class of employees not intended. The fact that an executive may work for less than $30 per week or even $1 a year does not alter the fact that he is an executive.

17

*Id.* at 286–87; *see also Krill v. Arma Corp.*, 76 F. Supp. 14, 17 (E.D.N.Y. 1948) ("[A] wage prerequisite is an arbitrary and fanciful classification of professional status.").[6]

These agency and judicial interpretations take on special force because they have been left undisturbed by Congress over the course of many decades even when Congress has amended the FLSA repeatedly since 1938, and has specifically amended Section 13(a)(1) without altering the relevant textual provision. *See, e.g.,* Pub. L. No. 101-583, Sec. 2, 104 Stat. 2871 (1990) (adding computer employees to the list of exempt employees under Section 13(a)(1)). It is well established that congressional acceptance of a longstanding agency or judicial position, combined with reenactment of the governing statute, constitutes "persuasive evidence" of Congress's original intent in the statute itself. *See NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 274-75 (1974) ("[A] court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration. This is especially so where Congress has re-enacted the statute without pertinent change. In these circumstances, congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."); *Sebelius v. Auburn Regional Med. Ctr.,* 133 S. Ct. 817, 827 (2013) ([W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."); *quoting Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833 (1986); *see also FDA v. Brown & Williams Co.*, 529 U.S. 120, 156-58 (2000) (decades-long

---

[6] The Fifth Circuit's decision in *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (1966) (Burger, J., sitting by designation), is not to the contrary. *Wirtz* involved a challenge on arbitrary and capricious grounds to the DOL's salary level test in the 1963 regulation. That case did not present the particular statutory question at issue here, which is whether the Department may double its previous minimum salary threshold to a level so high it can no longer serve as a plausible proxy for the statutory categories set forth by Congress.

congressional silence over interpretation by FDA constitutes ratification of rule); *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

These consistent agency and judicial interpretations confirm that the text of the FLSA means what it says—white-collar employees are exempt from the FLSA's overtime requirements when they perform the duties described in the Act, and DOL's regulatory authority extends only to setting standards that help resolve cases in which the classification of an employee's job functions is unclear.

### C. The New Overtime Rule Exceeds DOL's Statutory Authority By Adopting A Salary Test That Is Not A Plausible Proxy For Exempt Job Functions.

Although the salary threshold adopted by the new Overtime Rule do not eliminate the white-collar exemptions as surely as a $1 million threshold would, they similarly lack a plausible tether to the job functions enumerated in the FLSA and therefore abandon the statutory task assigned to the Secretary by Congress.

Under the Rule, "[w]hite collar employees subject to the salary level test earning less than $913 per week [$47,476 per year] will not qualify for the EAP exemption, and therefore will be eligible for overtime, *irrespective of their job duties and responsibilities*." 81 Fed. Reg. at 32,405 (emphasis added). In other words, an employee's duties, functions, tasks, and activities will not matter *at all* below the new salary threshold. Thus, the Rule creates a *de facto* salary-*only* test for any employee earning less than $913 per week—a non-functional litmus test that the DOL has repeatedly acknowledged Congress did not authorize. *See* 69 Fed. Reg. at 22,173; Weiss Report at 23.

The DOL attempts to justify its disregard for the duties performed by employees earning less than $913 weekly by asserting that its salary test "serves as an appropriate proxy for distinguishing between overtime eligible and overtime exempt white collar workers." 81 Fed. Reg. at 32,404. But that claim cannot be squared with DOL's own projection that, as a result of the new salary level, at least "*4.2 million* employees who meet the standard duties test will be denied the EAP exemption within the first year after the Rule. *Id.* at 32,404, 32,393 & 32,394 (emphasis added).   Nor can it be squared with DOL's own estimates of the median incomes for various jobs that it deems to be "Management Occupations."   For example, DOL estimates that the median income for "Preschool and Childcare Center Director" is $45,670 per year,[7] the median income for "Lodging Manager" is $49,720 per year,[8] and the median income for "Food Service Manager" $48,690 per year.[9]   These jobs clearly involve the duties associated with an "Administrative" position.  *See e.g.*, *Talbert v. Am. Risk Ins. Co.*, 405 Fed. Appx. 848, 852 (5th Cir. 2010) (assistant claims adjuster earning $32,000 per year deemed exempt).   DOL cannot plausibly defend its salary test as an "appropriate proxy" for exempt job duties where its test departs so widely from the actual salaries tied to the duties in question.  *Cf. Supreme Beef Processors, Inc. v. USDA*, 275 F.3d 432, 438–40, 441–43 (5th Cir. 2001) (holding that the Food Safety and Inspection Service lacked authority to issue a regulation governing salmonella levels in meat on the products when the statute in question regulated the conditions in which the

---

[7] Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, 2016-17 Edition, Preschool and Childcare Directors, *available at* http://www.bls.gov/ooh/management/preschool-and-childcare-center-directors.htm#tab-5

[8] Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, 2016-17 Edition, Lodging Managers, *available at* http://www.bls.gov/ooh/management/lodging-managers.htm#tab-5.

[9] Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, 2016-17 Edition, Food Service Managers, *available at* http://www.bls.gov/ooh/management/food-service-managers.htm#tab-5

products were "prepared, packaged or held," because the presence of salmonella is not an adequate proxy for unsanitary conditions).

In sum, the clear statutory language of the FLSA directs DOL to exempt from overtime employees performing "bona fide executive, administrative, or professional" duties. Because the DOL's salary test would exclude so many employees who perform these functions, it fails to perform the task required by the statute and therefore conflicts with the clear mandate of the statute. Likewise, because the salary test excludes millions of exempt employees when a lower standard coupled with a duties test would more accurately fit the job functions described by the statute, DOL's Rule is not a reasonable interpretation of the FLSA and is not entitled to deference under *Chevron*.

## II. THE NEW OVERTIME RULE'S AUTOMATIC INDEXING PROVISION EXCEEDS THE DEPARTMENT'S AUTHORITY UNDER THE FLSA.

The DOL's automatic indexing provision exceeds the Department's authority under the Act for two reasons. First, the Department has no authority under the FLSA to put adjustments to the minimum salary threshold on automatic pilot. Second, the Department may not adjust the minimum salary thresholds without comporting with the notice-and-comment requirements of the Administrative Procedure Act as specified in the FLSA.[10]

---

[10] Even setting aside these two legal defects, if the new Overtime Rule's minimum salary threshold is unlawful in its failure to define the EAP exemptions based on job functions, then the automatic indexing mechanism in 29 C.F.R. § 541.607, which likewise ignores actual job functions and merely increases that unlawful threshold, is necessarily invalid, too. The indexing provision requires a triennial update to the minimum salary threshold, which is pegged at the 40th percentile of weekly earnings of full-time salaried workers in the lowest-wage census. *See* 81 Fed. Reg. at 32,430. If the Department lacks authority to peg the current minimum salary threshold at the 40th percentile, then it necessarily cannot create an automatic, periodic adjustment to that level. Nor is there any basis to believe that the indexing provision would be severable from the salary threshold. The Department's justification for the indexing provision is inextricably intertwined with its rationale for the minimum salary threshold: "The Department concludes that just as we have authority under [29 U.S.C. § 213(a)(1)] to establish the salary level test, we likewise have authority to adopt a methodology ... for automatically updating the salary level." 81 Fed. Reg. at 32,431. Hence, if the Department lacks authority to impose the new minimum salary threshold as established above in Part I, then the indexing provision must fall as well.

### A. The Department Lacks Authority To Index The New Overtime Rule's Minimum Salary Threshold Under The FLSA.

The plain terms of 29 U.S.C. § 213(a)(1) authorize the Secretary of Labor to "define[] and delimit[]" the meaning of the "executive, administrative, or professional" categories *"from time to time* by regulations." (Emphasis added). To be sure, this authorizes the Secretary to revise the regulations setting forth the functions that may legitimately be encompassed within a "bona fide executive, administrative, or professional capacity," which indeed might—in the words of the President—vary from "time to time" in our "modern economy." 79 Fed. Reg. at 18,737. But even if the doubling of the Department's longstanding salary threshold bears some plausible connection to changes in duties performed by exempt employees today—and it does not—there is no reasoned basis to conclude that the automatic revision to the threshold triggered only three years from now will have anything to do with changes in duties. To the contrary, the indexing provision in the Rule is tied exclusively to a percentile of average salary levels for salaried employees, in a specific part the country, regardless of duties. *See* 81 Fed. Reg. at 32,430. Thus, the indexing provision in the Rule is simply unmoored from the functions specified in the FLSA that Congress intended to serve as the lodestar for the Secretary to use in updating his regulations.

Indeed, the Department previously disclaimed that it has the authority to use indexing when setting the salary level under the FLSA's overtime provisions. In 2004, the DOL stated that adopting a method of automatic increases is "contrary to congressional intent." 69 Fed. Reg. at 22,171–72. "Further, the Department [found] nothing in the legislative or regulatory history that would support indexing or automatic increases." *Id.* at 22,171. And in the new Overtime Rule, the Department concedes that 29 U.S.C. § 213(a)(1) "does not reference automatic updating." 81 Fed. Reg. at 32,431.

22

Undeterred by the absence of affirmative statutory authority, the Department now asserts that its prior considered view was wrong and that, after all, it may set adjustments to the salary threshold on auto pilot because Congress has failed to expressly *prohibit* the use of indexing in 29 U.S.C. § 213(a)(1). Construing the lack of an express prohibition as implicit authorization, the DOL thus argues that Congress has implicitly left a "gap" for the DOL to fill. *See* 81 Fed. Reg. at 32,431.

But this has it exactly backwards. As the Fifth Circuit has repeatedly stated, the courts "do not merely presume that a power is delegated if Congress does not expressly withhold it, as then agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Contender Farms*, 779 F.3d at 269 (quoting *Texas v. U.S. Department of the Interior*, 497 F.3d at 502); *accord La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it."). Thus, the Department's construction of the FLSA is not entitled to any form of interpretive deference "merely by demonstrating that 'a statute does not expressly *negate* the existence of a claimed administrative power (*i.e.*, when the statute is not written in 'thou shalt not' terms).'" *Id.* (quoting *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (*en banc*; emphasis in the original)). Surely, "Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000).

Indeed, Congress clearly knows how to expressly authorize indexing when that is what it wants, including in the labor context. *See, e.g.*, 29 U.S.C. § 1083(c)(7)(D)(vii) (indexing amount of excess employee compensation related to "Minimum funding standards for single-employer defined benefit pension plans"); *see also* 16 U.S.C. § 497c(b)(3) (indexing ski area permit rental

charges); 43 U.S.C. § 1337(a)(3)(C)(vii) (indexing oil and gas leases). But neither 29 U.S.C. § 213(a)(1) specifically, nor the FLSA generally, provide indexing for wage rates. Tellingly, Congress has not indexed the minimum wage, 29 U.S.C. § 206, the hourly wage for computer employees, 29 U.S.C. § 213(a)(17), or the annual compensation for "nonprofit parents," 29 U.S.C. § 213(b)(24). Therefore, far from leaving a gap for the Department to fill, the absence of express statutory language authorizing indexing in Section 213(a)(1), especially in light of other provisions elsewhere in the United States Code, firmly establishes that Congress never authorized indexing to evade the requirement to define and delimit the EAP exemption "from time to time by regulation."

### B. The Department May Not Automatically Index Its Overtime Regulations Without Complying With The Requirements Of the APA.

With certain exceptions that are not relevant here, the APA mandates that agency rules having the force and effect of law must go through the notice and comment process. 5 U.S.C. § 553(b), (c). The "notice-and-comment provisions of the APA enable the agency promulgating a rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated." *Global Van Lines, Inc. v. ICC*, 714 F.2d 1290, 1299 n.9 (5th Cir. 1983). The new Overtime Rule's indexing provision fails to comply with the FLSA because it does not follow the requirements of the APA expressly incorporated by reference into 29 U.S.C. § 213(a)(1). Under that provision, the only power granted by Congress is the authority to define and delimit the exemption "by *regulations*" promulgated "subject to" the requirements of the APA. (Emphasis added.)

By design, the new Overtime Rule's indexing provision forces the salary level test to automatically adjust every three years, while evading notice and comment on the change. The DOL has not hidden its desire to dispense with "the need for frequent rulemaking" by indexing

24

the salary level test.  81 Fed. Reg. at 32,400.  Even though the salary level test is itself a short cut around the statutorily required examination of the duties actually performed in the workplace, the DOL has decided that setting the salary level through notice and comment and rulemaking is still too arduous and "time-intensive." *Id.* at 32,435.

But the APA's notice and comment provisions must be followed regardless whether an agency finds them inconvenient.  *See U.S. Steel Corp. v. EPA*, 595 F.2d 207, 214 (5th Cir. 1979) (discussing 5 U.S.C. § 553(b)(B)).  Any increase in the salary level must be based upon the comments submitted and the actual facts and information existent at the time of the increase.  *Id.* The DOL cannot lawfully put the salary level test on autopilot and effectively immunize itself, in the absence of any authorization from the FLSA, from the procedural obligations of the APA.

Indeed, in prior rulemaking efforts, the DOL took a position consistent with the APA that changes to the salary level test should be data dependent.  "The salary levels should be adjusted when wage survey data and other policy concerns support such a change."  69 Fed. Reg. at 22,171.  Now, the salary level will mechanically adjust every three years without any rulemaking under the APA and without examination of the necessity or justification for an increase, and without any input from the public, the regulated community, or any other affected parties. Where, as here, an agency has reversed longstanding regulatory policy, the Supreme Court has recently reaffirmed that the agency is required to acknowledge, explain and justify its reversal, and such explanation must take into account the strong reliance interests of the regulated community concerning the original regulation.  *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) (vacating DOL's reversal of policy with regard to the "service advisors" exemption from the FLSA's overtime requirements); *see also Util. Air Reg. Grp. v. EPA*, 134 S. Ct. 2427, 2446 (2014).  "[A]n agency may not rewrite clear statutory terms to suit its own sense

of how the statute should operate."). For these reasons, the Department lacks authority to impose the automatic indexing provision of the new Overtime Rule.

## III. THE NEW OVERTIME RULE IS ARBITRARY, CAPRICIOUS, OR OTHERWISE CONTRARY TO LAW IN VIOLATION OF THE APA

Under the APA, a court shall hold unlawful and set aside agency action that is "arbitrary, capricious ... or otherwise contrary to law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012). "[S]ignificant and viable alternatives" to a proposed regulatory action must be considered, *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 724 (5th Cir. 2013) (quotation marks omitted), and the agency must articulate a "satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted). If it fails to "cogently explain why it has exercised its discretion in a given manner," its action will be invalidated. *Id.* at 48.

The Rule is arbitrary and capricious here for three related reasons.

*First*, where an agency has reversed longstanding regulatory policy, the Supreme Court has recently reaffirmed that the agency is required to acknowledge, explain and justify its reversal, and such explanation must take into account the strong reliance interests of the regulated community concerning the original regulation. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016) (vacating DOL's reversal of policy with regard to the

26

"service advisors" exemption from the FLSA's overtime requirements); *see also Nat'l Fed'n of Indep. Bus. v. Perez,* No. 16-cv-66, 2016 U.S. Dist. LEXIS 89694 (N.D. Tex. June 27, 2016), appeal pending (5th Cir.) (preliminarily enjoining as arbitrary and capricious a new DOL rule that reversed longstanding enforcement policy under the Labor Management Reporting and Disclosure Act without adequate explanation and for the reasons listed in *Encino Motorcars*). As described in detail above, the Rule disregards decades of regulatory and judicial precedent holding that the white collar exemption turned on the job functions defined in the FLSA. Yet DOL failed to meaningfully address this shift. Furthermore, it is apparent from the preamble to the Rule that DOL relied on factors that Congress did not intend for it to consider, specifically by excluding far more than the "obviously non-exempt employees" and instead excluding millions of employees who are performing bona fide exempt job duties on the basis of their salary alone. 81 Fed. Reg. at 32,419-20.

*Second*, and relatedly, the new Overtime Rule fails to consider the strong reliance interests of the regulated community—consisting of millions of employers across the country— whose business models have been built on the salary levels for exempt status established over the past 75 years. *Encino Motorcars, LLC*, 136 S. Ct. at 2125-26 ("In explaining its changed position, an agency must ... be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account .... [A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy.").

Many comments filed by the Plaintiffs and their members discussed the disruptive aspects of the proposed Rule. For example, a member company of Plaintiff NAM explained that they have multiple facilities in different states with approximately 400 exempt employees located in each facility. *See* Exh. 4, at APP 326. Though the employees are performing similar duties as

first line supervisors or managers, they are paid different salaries based on the location of the facility. *Id.* "Due to regional differences, an unnecessary rift and inequality among [previously exempt] employees will be created, where none currently exists, simply because of where an employee happens to live. *Id.* (noting further serious consequences of the loss of exempt status for front line supervisors in an increasingly competitive global marketplace).

Similarly, Plaintiff NAW submitted comments explaining that its wholesaler-distributor members have branches spread across the country whose salary structures do not fit DOL's "one size fits all" Rule. Exh. 5, at APP. 338. NAW members are deeply concerned about the impact of the salary thresholds on middle management positions in their branches, whose regional salary differences are as high as 65 percent. *Id.* (noting that the compelled increases in middle manager salaries or reduced work hours would slow business growth and lead to reductions in employment).

Plaintiff NFIB further observed in its comments that "the smaller the business, the longer and more expensive it is to comply," citing a 2014 study that found businesses with fewer than 50 employees spent 30 percent more per employee per year than their larger counterparts. Exh. 13, at APP. 461. NFIB's comments challenge DOL's assumption that employees will be paid more as opposed to business controlling their costs by reducing work hours and thereby reducing productivity. *Id.* at APP. 462. NFIB gives the example of an owner of five Dairy Queens in Austin, Texas who employs exempt managers earning about $30,000 per year while working 40-50 hours per week. *Id* at APP. 464. The managers receive bonuses, more flexible work arrangements, paid vacation and sick time, training opportunities, and promotions that hourly employees do not receive. *Id* at APP. 464. Eliminating their exempt status will reduce productivity and employee investment in the company without increasing employee incomes.

Plaintiff NRF cited concerns that the salary threshold changes would hollow out middle management ranks and negatively impact employee morale. *See* Exh. 6, at APP. 347. Likewise, the indexing of the 40 percent threshold creates a mechanism that will unreasonably shrink further the available exempt workforce. *Id.* at APP. 355. In addition, NRF cited concerns over the constant threat of overtime litigation that will inexorably flow from the Rule." *Id.* at APP. 356.

And Plaintiff AH&LA noted that in order to offset the increased labor costs that will result, AH&LA members would feel compelled to increase automation and outsourcing of previously exempt office positions. *See* Exh. 7, at APP. 363. The majority of AHLA members providing feedback on the new Overtime Rule stated that they will respond to the increased salary level by reclassifying half of their management-level employees to non-exempt status, with reduced hours to avoid increasing wage costs. *Id.*

Finally, Plaintiff ASAE's comments highlight that non-profit employers employing 10 percent of the nation's workforce are less able to absorb the increased costs of expanding the pool of overtime-eligible employees. *See* Exh.8, at APP. 375. Whereas DOL speaks of employers transferring income from employers to employees, "nonprofits have no profits to transfer." *Id.* at APP. 375. Nonprofits depend primarily on dues, sponsorships, and donations, and there is no expectation that nonprofits can increase any of their sources of income to absorb the increased costs imposed by the Rule. *Id* at App. 375-376. Non-exempt employees of non-profits are typically excluded from participation in after-hours conferences with association volunteer members, where the greatest opportunities for advancement can be found. *Id.* at APP. 376.

DOL's preamble to the Rule fails to meaningfully address these and many other comments describing the chaotic conditions that are already being felt in the business community before the Rule goes into effect, and which will greatly expand once the effective date arrives, absent injunctive relief. DOL failed to adequately address and respond to the serious reliance interests of the many industries represented by the Plaintiffs in this case.

*Third,* the arbitrary and capricious nature of the Rule is further exposed by DOL's treatment of bonuses, incentives, and commissions. The Rule allows employers to satisfy only up to ten percent of the minimum salary level with nondiscretionary bonuses, incentives, and commissions, and only if such payments are made quarterly or more frequently. And the Rule further excludes nondiscretionary bonuses, incentives and commissions paid less frequently than quarterly and other types of compensation (e.g., discretionary bonuses, profit-sharing, stock options, employer-funded retirement benefit, deferred compensation).

Yet such distinctions bear no rational relationship to the statutory task of defining exempt job functions. Non-discretionary bonuses and incentive pay are all part of an employee's compensation package and do not demonstrated that the functions performed by the employee are any less compatible with the job functions defined by the statute. An employee who is earning in excess of the new salary threshold including a 20 percent non-discretionary bonus is no less likely to be performing non-exempt tasks than an employee earning only a 10 percent bonus. For these reasons as well, the new Overtime Rule should be held unlawful and set aside.

## CONCLUSION

For each of the reasons set forth above, the Business Plaintiffs respectfully request that the Court grant this motion for expedited summary judgment, hold the new Overtime Rule unlawful, and vacate and set aside the new Overtime Rule under 5 U.S.C. § 706.

30

Dated: October 14, 2016                         Respectfully submitted,

/s/ Robert F. Friedman
Robert F. Friedman
Texas Bar No. 24007207
**LITTLER MENDELSON, PC**
2001 Ross Avenue, Suite 1500
Dallas, Texas 75201-2931
Tel: (214) 880-8100
Fax: (214) 880-0181
rfriedman@littler.com

/s/ Maurice Baskin
Maurice Baskin, DC Bar No. 248898*
Tammy McCutchen, DC Bar No.591725*
**LITTLER MENDELSON, PC**
815 Connecticut Ave., NW
Washington, DC 20036
Tel: (202) 772-2526
mbaskin@littler.com
tmccutchen@littler.com

*pro hac vice movants
**ATTORNEYS FOR THE PLAINTIFFS**

Of Counsel:
Steven P. Lehotsky
Warren Postman
**U.S. CHAMBER LITIGATION CENTER**
1615 H Street, NW
Washington, DC 20062
Tel: (202) 463-4337
slehotsky@uschamber.com
wpostman@uschamber.com

Attorneys for Plaintiff Chamber of Commerce
of the United States of America

Linda E. Kelly
Patrick N. Forrest
Leland P. Frost
**MANUFACTURERS' CENTER FOR LEGAL ACTION**
733 10th Street, NW, Suite 700
Washington, DC 20001
(202) 637-3000

31

*Attorneys for Plaintiff the National
Association of Manufacturers*

Karen R. Harned
Elizabeth Milito
**NFIB SMALL BUSINESS LEGAL CENTER**
1201 F Street, NW, Suite 200
Washington, DC 20004
(202) 314-2048

*Attorneys for Plaintiff National Federation
of Independent Business*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2016, a copy of the foregoing Motion for Summary

Judgment was filed electronically via the Court's ECF system. The following persons have been

served via FedEx Overnight Delivery:

David Weil, Administrator,
Division of Wage and Hour,
U.S. Dept. of Labor
200 Constitution Avenue, N.W.
Washington, DC 20210

Thomas E. Perez, Secretary of Labor
U.S. Dept. of Labor
200 Constitution Avenue, N.W.
Washington, DC 20210

*/s/Robert Friedman*

Firmwide:143365889.2 090080.1002

32