# EXHIBIT F

UNITED STATES DEPARTMENT OF LABOR
Wage and Hour and Public Contracts Divisions

REPORT AND RECOMMENDATIONS
ON PROPOSED REVISION OF REGULATIONS, PART 541
under the Fair Labor Standards Act

Defining the Terms

"Executive"  "Administrative"

"Professional"

"Local Retailing Capacity"

"Outside Salesman"

March 1958

U. S. DEPARTMENT OF LABOR
Wage and Hour and Public Contracts Divisions
Washington 25, D. C.

---

Proposed revision of :
Regulations, Part 541, : Report and Recommendations
under the Fair Labor : March 3, 1958
Standards Act :

---

This report deals with the hearings held to determine what changes, if any, should be made in the salary tests contained in Regulations, Part 541.

Section 13(a)(1) of the Fair Labor Standards Act provides an exemption from its minimum wage and overtime requirements for any employee employed in a bona fide executive, administrative, or professional capacity, as such terms are defined and delimited by regulations of the Administrator. Pursuant to this authority, Regulations, Part 541, were last amended effective January 25, 1950. Among other requirements, these regulations require that executive employees be paid not less than $55 a week on a salary basis in order to qualify for exemption. Administrative and professional employees must be paid not less than $75 a week on a salary or fee basis for the exemption to apply. The regulations also contain special provisos modifying certain sections of the regulations for such employees who are paid $100 a week or more.

In Puerto Rico and the Virgin Islands, the salary test for executive employees is $30 a week and for administrative and professional employees, $200 a month on a salary or fee basis. These basic salary tests for Puerto Rico and the Virgin Islands were established in 1940, and were not changed when the regulations were amended in 1950. At that time, however, the special provisos for employees paid $100 a week or more were made applicable to the Islands.

Experience in administering these regulations, in light of the widespread increases in wages and salaries which have taken place since these salary levels were established, indicated that consideration must be given

to amendment of the regulations. Pursuant to notices published in the Federal Register (20 F.R. 8388: 21 F.R. 323), separate hearings were held in Washington, D. C., beginning on December 12, 1955, and in Santurce, Puerto Rico, beginning on February 15, 1956, before representatives of the Administrator, at which interested persons submitted evidence on the following question:

> What, if any, changes should be made in the provisions contained in subsections 541.1(f), 541.2(e), and 541.3(e) of the Regulations with respect to the level of the salaries required for exemption as executive, administrative, and professional employees?

Representatives of industry and labor organizations and other interested persons testified at the hearings and presented exhibits. In addition, many statements in lieu of personal appearance were filed. The record was held open for 30 days beyond the close of each of the hearings for the filing of additional statements.

## Function of the Salary Requirement

The salary tests in the definitions of executive, administrative and professional employees have been an integral part of the regulations since 1940. The terms bona fide executive, administrative and professional imply a certain prestige, status and importance, and the employee's salary serves as one mark of his status in management or the professions. It is an index of the status that sets off the bona fide executive from the working squad-leader, and distinguishes the clerk or sub-professional from one who is performing administrative or professional work. Generally speaking, salary is a good indicator of the degree of importance attached to a particular employee's job.

Essentially, the salary tests are guides to assist in distinguishing bona fide executive, administrative, and professional employees from those who were not intended by the Congress to come within these categories. They furnish a practical guide to the investigator as well as to employers and employees in borderline cases,

and simplify enforcement by providing a ready method of screening out the obviously nonexempt employees. Employees who do not meet the salary test are generally also found not to meet the other requirements of the regulations.

## Proposals to Eliminate the Salary Requirement

Several witnesses at the hearing and a number of persons who filed statements in lieu of personal appearance proposed that the salary tests be eliminated from the regulations. These proponents contended that the salary tests were unnecessary and that the exemption should be based solely on the employee's duties. Some persons contended that the salary test was illegal.

These same arguments were given careful consideration before the adoption of the regulations in 1940 and before their amendment in 1950. There appear to be no more valid reasons for eliminating these tests from the regulations at this time than there were after previous hearings on the question.

The arguments that the salary tests are unnecessary or that they do not assist in drawing a line between exempt and nonexempt employees are not supported by the Divisions' experience. In the years of experience in administering the regulations, the Divisions have found no satisfactory substitute for the salary tests. Throughout this period, moreover, there have been no indications that the salary tests have resulted in defeating the exemption for any substantial number of individuals who could reasonably be classified for purposes of the Act as bona fide executive, administrative, or professional employees. There appears to be no substantial basis for questioning the legal validity of the salary requirement, since this test has been sustained in a number of circuit court decisions.

It was also urged at the hearing that licensed engineers and certified public accountants be excepted from the salary requirement in the definition of professional. The regulations contain such an exception for holders of licenses or certificates to practice law or medicine who are actually practicing their professions.

4

This exception was based on the traditional standing of these professions, the recognition of doctors and lawyers as quasi-public officials, the universal requirement of licensing, and the relatively simple problems of classification in these professions. Similar proposals were considered in the 1949 report of the presiding officer on proposed revision of these regulations.

The reasons given in the 1949 report for not adopting these proposals appear to be valid at this time also. Engineers and accountants, unlike members of the medical and legal professions, may perform work in their fields without possessing licenses. Thus, the exception would be extended to only a portion of those engaged in these professions. Many engineers and accountants who do not possess licenses or certificates qualify for exemption on the basis of their duties and salaries. To provide an exception on the basis proposed would result in unequal treatment under the regulations. I therefore recommend that these proposals not be adopted.

## Salary Levels Proposed at the Hearings

Industry witnesses suggested salaries ranging from $60 to $85 a week for executives, and $80 to $100 a week for administrative and professional employees. Proposals for the special provisos ranged from $110 to $120 a week. Union proposals were considerably higher, ranging from $100 to $115 a week for executives, and $115 to $150 for administrative and professional employees. A salary test of $150 a week was suggested for the special provisos by some union representatives.

## Considerations in Setting Salary Levels

As indicated above, the primary objective of the salary test is the drawing of a line separating bona fide executive, administrative and professional employees from such employees as working foremen and production workers, technicians, clerical workers and sub-professional employees. That such a dividing line cannot be drawn with great precision, and can at best be only approximate, has been recognized in previous revisions of the regulations.

The salary tests have thus been set for the country as a whole (except for Puerto Rico and the Virgin Islands), with appropriate consideration given to the fact that the same salary cannot operate with equal effect as a test in high-wage and low-wage industries and regions, and in metropolitan and rural areas, in an economy as complex and diversified as that of the United States. Despite the variation in effect, however, it is clear that the objectives of the salary tests will be accomplished if the levels selected are set at points near the lower end of the current range of salaries for each of the categories. Such levels will assist in demarcating the "bona fide" executive, administrative and professional employees without disqualifying any substantial number of such employees.

Available information indicates clearly that there is considerable overlapping between salaries paid non-exempt employees and the salaries currently paid employees for whom exemption may be claimed under the present regulations. To be effective, therefore, new salary levels must be set above the absolute minimum salaries currently paid to employees now considered exempt. Inevitably, if the salary tests are to serve their purpose in a situation where salaries and wages have risen, some employees who have been classified as exempt under the present salary tests will no longer be within the exemption under any new tests adopted. Such employees include some whose status in management or the professions is questionable in view of their low salaries. Also included in the group who would not be exempt are employees whose exempt status, on the basis of their duties and responsibilities, is questionable. It is with respect to these borderline employees that the salary tests prove most useful in furnishing a practical guide which helps prevent misclassification. It has been the Divisions' experience that there is a tendency on the part of employers to misclassify employees, particularly in the administrative and professional categories, when the salary levels become outdated by a marked upward movement of wages and salaries.

6

Available Information on Salary Levels

Information on the actual salaries paid the employees in question is provided by the Divisions' investigations. For a period of eight months - January through August 1955 - investigators of the Divisions secured information, during the normal course of their investigations for compliance with the Act, on salaries paid to employees who qualified for exemption. This information was published prior to the hearing in a report entitled "Earnings Data Pertinent to a Review of the Salary Tests for Executive, Administrative and Professional Employees." The report contains tabulations of salaries grouped by major geographic regions, by number of employees in the establishment, by size of city, and by broad industry groups. In addition, the report contains data secured from published materials which indicate how wage and salary levels have changed from 1949, and information on starting salaries of college graduates. All this material, as well as all the other information in the record and data subsequently secured from official government sources, was used in arriving at the recommendations as to the appropriate salary levels.

The most direct evidence of actual salaries paid executives, administrative and professional employees is found in the Divisions' survey. This survey, which shows the range of salaries paid these employees, provides data for finding an appropriate demarcation line at the lower end of the range of salaries for each category. While the survey information was obtained as a by-product of the Divisions' regular investigation program rather than as a special statistical survey, I believe the information contained therein reflects the salary patterns with reasonable accuracy.

It is my conclusion, from all the evidence, that the lower portion of the range of prevailing salaries will be most nearly approximated if the tests are set at about the levels at which no more than about 10 percent of those in the lowest-wage region, or in the smallest size establishment group, or in the smallest-sized city group, or in the lowest-wage industry of

each of the categories would fail to meet the tests.
Although this may result in loss of exemption for a
few employees who might otherwise qualify for exemption, I believe that in the light of the objectives
discussed above, this is a reasonable exercise of the
Administrator's authority to "delimit" as well as to
define.

Summary of the Survey Data

### Executive employees

Ten percent of the employees found to be exempt
as executives in the lowest-wage region, the South,
were paid less than $75 a week during the period
covered by the survey. In establishments with 1 to 7
employees, 10 percent of the executives were also paid
under $75 a week. In those establishments with 8 to
19 employees, 6 percent received salaries of less than
$75 a week. Nine percent of the executive employees
were paid less than $75 a week, and 14 percent under
$80, in towns of less than 2,500 population. Six
percent were paid less than $75 a week in the lowest-wage industry group, the services, and 10 percent under
$80. For the United States as a whole, 4 percent of
the exempt executives were paid under $75 a week.

### Administrative and professional employees

In the lowest-wage area, the South, 10 percent of
the administrative employees found to be exempt were
paid less than $85 a week. The distribution by size
of establishment shows that 10 percent were paid under
$85 a week in the 8 to 19 employee group. In the 1 to
7 employee group, 7 percent were paid less than $80
and 14 percent less than $85.

In towns under 2,500 population, the proportion
paid less than $80 a week was 7 percent, and under
$85 a week, 11 percent. In the lowest-wage industry
group, finance and insurance, 10 percent of the
administrative employees were paid under $85 a week.
For the United States as a whole, 6 percent of the
administrative employees were paid less than $85 a
week.

Nine percent of the professional employees in the South were paid less than $90 a week and 14 percent under $95. In establishments with 1 to 7 employees, 8 percent were paid less than $85 a week and 13 percent under $90. In the 8 to 19 group, there were 7 percent under $85 and 13 percent under $90. For towns under 2,500 population, 8 percent were paid less than $90 a week.

In the lowest industry group, finance and insurance, which included only 122 of the more than 15,000 employees found to be exempt as professionals in the survey, four percent of the professional employees were paid less than $85 a week, and 15 percent less than $90. In all other industry groups, less than 10 percent were paid less than $90 a week. For the United States as a whole, 7 percent of the professional employees were paid under $95 a week.

## Levels Indicated by the Survey Data

It is my conclusion that the survey data indicated salary levels of approximately $75 a week for executives, and $85 to $90 a week for administrative and professional employees.

## Other Considerations

In reaching a conclusion as to the appropriate tests, however, consideration should be given to changes since the survey period and to factors that may tend to modify the survey data. Among the latter are the effect of groupings containing relatively small number of employees; the effect of the tendency on the part of many employers to classify as executives higher-level personnel who meet the tests both as executive and administrative employees under the regulations; the effect of various intervals in the groupings; the effect in terms of numbers of establishments affected; the effect on the many small establishments with only one executive, or very few executives; other information in the record as to wages and salaries paid; and, overall, the effectiveness of the resulting recommendations in carrying out the objectives of the salary tests.

It is common knowledge that wages and salaries are generally higher now than they were at the time of the survey. Adjustment is in order for this and the other factors mentioned above if the tests are to have the desired effectiveness.

While the extent of the rise in salary levels cannot be measured precisely, an approximation may be made through the use of data showing increases in earnings of production workers. There are no published statistical series on salaries of executive, administrative and professional employees. However, the Bureau of the Census publishes sample data on annual income of male employees in the categories "Professional, Technical, and Kindred Workers" and "Managers, Officials, and Proprietors", in its Current Population Reports, Consumer Income. The annual income of these groups showed marked variations from year to year, but over the whole period 1949 to 1955 the percentage increases were roughly equivalent to the percentage increase in manufacturing wages as shown by Bureau of Labor Statistics data in its Employment and Earnings series. It is reasonable to conclude that since manufacturing wages increased substantially since 1955, there were also some increase in salaries of exempt-type employees during this period. Some adjustment should, therefore, be made in the salary levels indicated by the survey data to reflect changes suggested by the increase of about 6 percent in weekly wages and about 12 percent in average hourly earnings in manufacturing between the survey period and January 1958, and the fact that increases in the low-wage industries were typically much less than the increase for all manufacturing, and to allow for the effects of the other factors mentioned above in relation to the problem of establishing appropriate salary tests.

Recommendation

It is my recommendation, based on the entire record, that the regulations be amended to provide a salary test of $80 a week for executives and $95 a week for administrative and professional employees.

### Special Proviso for High Salaried Employees

The provisos for high salaried employees were premised on the experience of the Divisions that in the categories of employees under consideration the higher the salaries paid the more likely the employees are to meet all the requirements for exemption. It was found that in the rare instances when employees receiving salaries of $100 a week or more did not meet all the other requirements of the regulations in every workweek, a determination that such employees are exempt would not defeat the objectives of the exemption. Any person paid a salary of $100 a week or more who has as his primary duty the performance of work which is characteristic of employment in a bona fide executive, administrative or professional capacity was deemed to meet all of the requirements of the pertinent definition.

It was recognized at the hearing that an adjustment of the salary level in these provisos would be required if the basic salary levels in the regulations were raised. Witnesses at the hearing suggested levels for the special proviso that would maintain the present differential of $25 a week over the level for administrative and professional employees. It is my conclusion, however, that maintaining approximately the percentage differential in relation to the highest salary requirement of the regulations is a more appropriate means of restoring the effectiveness of the provisos than a flat differential of $25. This percentage increase would result in salary requirement of about $125 a week for the special provisos.

### Recommendation

I therefore recommend, on the basis of the whole record, that the salary tests in the special provisos be increased to $125 a week.

### PUERTO RICO AND THE VIRGIN ISLANDS

At the hearing held in Puerto Rico to consider changes in the salary levels for Puerto Rico and the Virgin Islands, the AFL-CIO urged salary tests of $75

a week for executives, $350 a month ($81 a week) for administrative and professional employees, and $150 a week for the special provisos. Industry suggestions ranged from $50 a week for executives and $250 a month for administrative employees to increases on the same basis as those adopted for the mainland.

The Divisions' report, "Salaries in Puerto Rico and the Virgin Islands", contains data on salaries of exempt executive, administrative, and professional employees which were obtained by the Divisions' investigation staff in the course of normal investigations during the first 9 months of 1955. As on the mainland, the report provides direct evidence of the pertinent salary ranges for these employees.

Summary of the Survey Data

The survey shows that 9 percent of the executive employees on the Islands were paid less than $50 a week. In establishments with 1 to 19 employees, 13 percent of the executives were paid under $45 a week, and in towns under 10,000 population, 12 percent were paid less than $45 a week. The distribution by industry shows 10 percent of executives paid less than $50 a week in both trade and manufacturing.

The survey data do not permit detailed groupings by size of establishment, industry, and size of city for administrative and professional employees. For the Islands as a whole, 10 percent of the persons found exempt as administrative employees were paid less than $55 a week, and 11 percent of the professional group were paid under $60 a week.

It is my conclusion that, for the Islands, the survey data indicated salary levels of $45 to $50 a week for executives and $55 to $60 a week for administrative and professional employees.

Adjustment of Survey Data

Since the period of the survey, wages on the Islands have risen substantially. In view of the recent economic development of the Islands and the

intensive activity of the Industry Committees in raising wage rates, it would be appropriate to make a substantial upward adjustment in the salary level indicated by the survey data. Consideration should also be given, in reaching a conclusion on appropriate salary tests, to the factors enumerated in the discussion of the mainland levels that indicate a need for a modification of the conclusions indicated by the survey data.

### Recommendations

On the basis of all the available evidence, I therefore recommend that the regulations be amended to provide salary test of $55 a week for executives and $70 a week for administrative and professional employees in Puerto Rico and the Virgin Islands. I also recommend that the present pattern of identical mainland and Island salary levels in the special provisos for high salaried employees be continued.

### AMERICAN SAMOA

As in the case of Puerto Rico and the Virgin Islands, Congress has provided for the establishment in American Samoa of minimum wage rates below the statutory minimum of $1.00 an hour. Evidence obtained in the course of the Divisions' activities in Samoa, however, particularly evidence secured in connection with the industry committee procedure, shows that prevailing salaries of employees in Samoa who qualify for exemption are comparable to those of employees included in the general survey. It is therefore recommended that salary tests of $80 a week for executives and $95 a week for administrative and professional employees be adopted for American Samoa.

*Harry S. Kantor*

Harry S. Kantor
Assistant Administrator
Office of Regulations and Research

Signed at Washington, D. C.
This 3rd day of March 1958.