## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

STATE OF NEVADA, *et al.*,

        Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR,
    *et al.*,

        Defendants.

No. 4:16-CV-731-ALM
LEAD

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

   I.   The State Plaintiffs Cannot Show a Tenth Amendment Violation ..................................... 2

   II.  The Salary Level Test Must be Upheld ............................................................................ 4

   III.   Automatic Updating is Entitled to *Chevron* Deference .................................................. 12

   IV.   Automatic Updating is Procedurally Proper .................................................................. 14

   V.  The Remaining Factors Show That A Preliminary Injunction is Not Warranted.............. 17

   VI.   Any Injunction Must Be Carefully Tailored to Address the Harm Shown .................... 18

CONCLUSION.......................................................................................................................... 22

# TABLE OF AUTHORTIES

<u>**Cases**</u>

*10 Ring Precision v. Jones*,
   722 F.3d 711 (5th Cir. 2013) .................................................................. 10

*Am. Tel. & Tel. Co. v. United States*,
   299 U.S. 232 (1936) ............................................................................ 11

*Associated Builders and Contractors of Texas, Inc. v. Nat. Labor Relations Bd.*,
   826 F.3d 215 (5th Cir. 2016) ................................................................ 11

*Auer v. Robbins*,
   519 U.S. 452 (1997) ............................................................................ 13

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ............................................................................ 20

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ...................................................................... 18, 21

*Chevron v. Nat. Res. Def. Council*,
   467 U.S 837 (1984). ........................................................................ 5, 11

*City of Arlington, Tex. v. F.C.C.*,
   133 S. Ct. 1863 (2013) .......................................................................... 5

*Dep't of Defense v. Meinhold*,
   510 U.S. 939 (1993)....................................................................... 20, 21

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
   92 F.3d 1486 (9th Cir. 1996) ................................................................ 18

*Fanelli v. U.S. Gypsum Co.*,
   141 F.2d 216 (2d Cir. 1944) ................................................................ 11

*Friends of the Earth v. Laidlaw Envt'l Servs.*,
   528 U.S. 167 (2000) ............................................................................ 20

*Garcia v. San Antonio Metro Trans. Auth.*,
   469 U.S. 528 (1985) .............................................................................. 3

*Gearhart Indus. v. Smith Int'l, Inc.*,
   741 F.2d 707 (5th Cir. 1984) .......................................................... 18, 19

*Harris v. United States*,
   19 F.3d 1090 (5th Cir. 1994) ............................................................................. 11

*Hernandez v. Reno*,
   91 F.3d 776 (5th Cir. 1996) .......................................................................... 19, 21

*Hollon v. Mathis Indep. Sch. Dist.*,
   491 F.2d 92 (5th Cir. 1974) ............................................................................... 19

*L.A. Haven Hospice v. Sebelius*,
   638 F.3d. 644 (9th Cir. 2011) ............................................................................ 21

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..................................................................................... 19, 20

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ........................................................................................... 16

*Lion Health Servs., Inc. v. Sebelius*,
   635 F.3d 693 (5th Cir. 2011) ........................................................................ 18, 19

*Long Island Care at Home v. Coke*,
   551 U.S. 158 (2007) ............................................................................................. 6

*Madsen v. Women's Health Center, Inc.*,
   512 U.S. 753 (1994) ........................................................................................... 18

*Mayo Found. for Med. Educ. & Research v. United States*,
   131 S. Ct. 704 (2011) ........................................................................................ 10

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
   760 F.2d 618 (5th Cir. 1985) ............................................................................. 17

*Navarez v. Wilshire Credit Corp.*,
   757 F. Supp.2d 621 (N.D. Tex. 2010) ............................................................... 14

*Prof'ls & Patients for Customized Care v. Shalala*,
   56 F.3d 592 (1995) ............................................................................................. 16

*Smiley v. Citibank (S. D.), N.A.*,
   517 U.S. 735 (1996) ............................................................................................. 6

*Solid Waste Agency of Northern Cook County v. U.S. Army Corp of Engineers*,
   531 U.S. 159 (2001) ......................................................................................... 3, 4

iii

*Texas Clinical Labs., Inc. v. Sebelius,*
    612 F.3d 771 (5th Cir. 2010) ................................................................................... 4

*Texas v. United States,*
    No. 16-54, 2016 WL 4426495 (N.D. Tex. 2016) .................................................. 21

*United States v. Johnson,*
    632 F.3d 912 (5th Cir. 2011) ................................................................................. 20

*United States v. Mendoza,*
    464 U.S. 154 (1984) ............................................................................................... 22

*United States v. Texas,*
    809 F.3d 134 (5th Cir. 2015) ................................................................................. 19

*Va. Soc'y for Human Life,*
    263 F.3d 379 (4th Cir. 2001) ................................................................................. 21

*Villas at Parkside Partners v. City of Farmers Branch,*
    577 F.Supp. 2d 858 (N.D. Tex. 2008) ................................................................... 17

*Walling v. Morris,*
    155 F.2d 832 (6th Cir. 1946) ................................................................................. 11

*Walling v. Yeakley,*
    140 F.2d 830 (10th Cir. 1944) ............................................................................... 11

*Watchguard Techs., Inc. v. Valentine,*
    433 F. Supp. 2d 792 (N.D. Tex. 2006) ........................................................... 17, 18

*Wirtz v. Mississippi Publishers Corp.,*
    364 F.2d 603 (5th Cir. 1966) ........................................................................... 10, 11

*Zepeda v. I.N.S.,*
    753 F.2d 719 (9th Cir. 1983) ................................................................................. 22

**<u>Statutes</u>**

5 U.S.C. § 551(4) ........................................................................................................ 15

5 U.S.C. § 705 ............................................................................................................. 21

5 U.S.C. § 706(2) .......................................................................................................... 5

5 U.S.C. § 701 ............................................................................................................... 1

16 U.S.C. § 497c(b) ..................................................................................................... 13

29 U.S.C. § 213(a) ...................................................................................... passim

29 U.S.C. § 203(d) .............................................................................................. 3

29 U.S.C. § 203(s)......................................................................................... 1, 3, 4

29 U.S.C. § 203(x) ........................................................................................ 1, 3, 4

29 U.S.C. § 1083(c)…….………………………………………………………..13

43 U.S.C. §1337(a)......…………………………………………………………13

## **Other Authorities**

69 Fed. Reg. 22,173 (Apr. 23, 2004) ............................................................... 8

81 Fed. Reg. 32,291 (May 23, 2016) ......................................................... passim

The Oxford English Dictionary (2d ed. 1933)……..……………………...………………6

Webster's Dictionary (1st ed. 1942) ................................................................. 7

U.S. Cont. art. I, §8, cl. 4….........………………………………………………......19

## INTRODUCTION

The Department of Labor ("the Department") relied on its express statutory authority to "define and delimit" the tests for determining whether an employee is entitled to overtime compensation, 29 U.S.C. § 213(a)(1),  to issue a final rule entitled *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees*, 81 Fed. Reg. 32,391  (May 23, 2016) ("Final Rule" or "Rule"), which the Plaintiffs challenge.

The State Plaintiffs appear to largely abandon one of the central arguments on the merits of their case—their Tenth Amendment argument, which is squarely foreclosed by Supreme Court precedent.  That argument is also foreclosed by the plain text of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203(s)(1)(C),  203(x),  which is as clear a statement as can be that the states are subject to the overtime rules of that statute.  And they completely abandon their nondelegation argument.  Their arguments under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*., are likewise without basis.  *See* Defendants' Brief in Opposition to Motion for Preliminary Injunction ("Defs.' Br."), ECF No. 37, at 21-39.  In explicitly granting the Department the authority to define and delimit the terms of the Section 213(a)(1) exemption "through regulation," 29 U.S.C. § 213(a)(1),  Congress authorized the Department to issue the kind of rule that is entitled to controlling deference by a reviewing Court under the well-established *Chevron* framework.  The Plaintiffs in this case have identified no colorable basis on which this Court could vacate the Final Rule under this highly deferential standard.  And they underscore the weakness of their entire case by contending that this Court should decide on procedural grounds to strike down action that has not yet been taken, claiming that the Department of Labor might someday take that action, which would be no more than a purely

1

ministerial application of the Rule.  The convoluted nature of that argument and its clear deficiency in so many ways should lead the Court to reject it.

Because the State Plaintiffs cannot succeed on the merits of any of their claims, their request for a preliminary injunction must fail.  But their request must also be denied for their failure to meet their burden of demonstrating any irreparable harm, let alone any harm occurring within this judicial district or the Fifth Circuit.  Finally, the State Plaintiffs did not respond to the Defendants' showing that the balance of equities and the public interest weigh in favor of the States as employers complying with the FLSA's overtime protections for non-exempt executive, administrative, or professional employees.  Employers around the country—likely including Plaintiffs—have been preparing for the Rule since it was issued in final form nearly half a year ago, and probably since well before that. The Court should not reward the State Plaintiffs' failure to move for preliminary relief until the eve of the Rule's effective date by granting any such relief, particularly where, as here, the State Plaintiffs have failed to even respond to the Department's showing that the equities weigh in the public's favor.  The State Plaintiffs must meet all four factors to be eligible for injunctive relief which they have not done.  Their request for a preliminary injunction must be denied, but if the Court were to grant that relief (and it should not), it must be narrowly tailored to the States that have demonstrated harm, and only to those States as employers.  The Court lacks jurisdiction to issue an injunction that goes any further.

## ARGUMENT

### I.     The State Plaintiffs Cannot Show a Tenth Amendment Violation

The State Plaintiffs' Tenth Amendment argument is foreclosed by Supreme Court precedent, which holds that there is no Tenth Amendment violation where a government employer "faces

2

nothing more than the same minimum-wage and overtime obligations that hundreds of thousands of other employers, public as well as private, have to meet." *Garcia v. San Antonio Metro Trans. Auth.*, 469 U.S. 528, 554 (1985). Although the State Plaintiffs initially argued that *Garcia* "has been—or should be—overruled," State Pls.' Br. at 26, they wisely retreat from such a position, *compare* Defs.' Br. at 17-21 *with* State Pls.' Reply at 3-6, ECF No. 50. Instead, they now rely solely on the "clear statement" rule, arguing that it forbids the Department from applying the Rule to the States. Of course *Garcia*, holding that the FLSA's overtime requirements do not violate the Tenth Amendment, forecloses this argument.

Nevertheless, the State Plaintiffs insist that the Department made a "fatal concession" in acknowledging that the phrase "bona fide executive, professional, or administrative capacity" is ambiguous, because, they argue, it means there is no "clear" or "plain" statement from Congress that the statute applies to states. State Pls.' Reply at 3. But the FLSA and its overtime requirements unambiguously apply to the States, 29 U.S.C. § 203(s)(1)(C); *id.* § 203(x),[1] and the FLSA expressly delegates authority to the Department to "define[] and delimit[]" the scope of the EAP exemption, *id.* § 213(a)(1). Thus, Congress made plain that the Department's overtime rules apply to states. *See Garcia*, 469 U.S. at 533 (acknowledging that "Congress simultaneously brought the States and their subdivisions further within the ambit of the FLSA by extending FLSA coverage to virtually all state and local-government employees").

---

[1] The FLSA's overtime requirements apply to an "employer" if it is an "enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 207(a)(1), which includes an enterprise that "is an activity of a public agency," *id.* § 203(s)(1)(C). Similarly, an "employer" includes a "public agency," *id.* § 203(d), and public agency is defined to include a "State," *id.* § 203(x).

The State Plaintiffs argue that *Solid Waste Agency of Northern Cook County v. U.S. Army Corp of Engineers*, 531 U.S. 159 (2001), shows that the clear statement rule requires Defendants to show more here.  That case does no such thing and is inapposite.  There, the agency argued that a statutory provision granting jurisdiction to the agency over "navigable waters" was ambiguous and thus its interpretation of what such waters entail should prevail, which in that case meant that the agency would have federal authority over an abandoned gravel pit because it was used as a habitat for migratory birds.  *Id*. at 167, 172.  The Court found the statute "to be clear" in not extending this far, and rejected the agency's request for deference of its interpretation of this jurisdictional provision, explaining its concern in a situation "where the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power."  *Id*. at 173-175.  The Court found the agency's interpretation to "raise significant constitutional questions" about Congress's authority under the Commerce Clause, and thus read the statute "to avoid the significant constitutional and federalism questions raised." *Id*. at 173-74.  By contrast here, the FLSA applies to States because *Congress* made that outcome plain in the text of the statute, 29 U.S.C. § 203(s)(1)(C); *id*. § 203(x);  *Garcia*, 469 U.S. at 533, *not* because of an agency interpretation of an ambiguous statute.

## II.      The Salary Level Test Must be Upheld

The State Plaintiffs rely on a mischaracterization of the Rule and its regulatory history—not to mention a misapprehension of well-settled principles of administrative law, and several incorrect assumptions—in their effort "to overcome" the "presumption" that the salary level test decision "is valid . . . by showing that the decision was erroneous."  *Texas Clinical Labs., Inc. v.*

*Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010).  Because they cannot come close to meeting this burden, their claims fail.

1. The State Plaintiffs accuse the Department of obfuscating the Congressional delegation of authority.  *See* State Pls.' Reply at 6.  In fact, the Department has been perfectly clear: Congress purposefully left the terms "bona fide executive, administrative, or professional capacity" open-ended and delegated to the agency the authority to "define[] and delimit[]" them in the text of Section 213(a)(1).  If the terms were unambiguous, Congress would not have explicitly authorized the agency to interpret them through regulation.  In fact, this is a case where *Chevron* deference applies because the agency has received "congressional authority to determine the particular matter at issue in the particular manner adopted,", *i.e.*, through notice-and-comment rulemaking.  *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1874 (2013).

Of course "the exemption does not give DOL the authority to ascribe . . . any meaning it desires" to these terms.  State Pls.' Reply at 7.  However it is the APA and the principles of *Chevron* deference—not the cramped reading of Section 213(a)(1) that State Plaintiffs mistakenly believe to be the only interpretation—that confines the Department's authority; under the APA, the Department must interpretations that are reasonable, and are not arbitrary, capricious, or contrary to law.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984);  5 U.S.C. § 706(2)(a).  Compounding this confusion, the State Plaintiffs misapply the two-step analysis under *Chevron*, asserting that the Rule fails at step one as "manifestly contrary to the statute."  State Pls.' Reply at 8.  But the "manifestly contrary to statute" language is a limiting principle under the second step of the *Chevron* framework.  *See Chevron,* 467 U.S. at 843–44 (where "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the

5

statute by regulation," and "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute" under *Chevron* step two). And under the highly deferential standard in *Chevron* step two, the "question before [the Court] is not whether" the Rule "represents the best interpretation of the statute, but whether it represents a reasonable one." *Smiley v. Citibank (S. D.), N.A.*, 517 U.S. 735, 744–45 (1996). The Rule easily meets this standard.

Further, the State Plaintiffs assert that the Department's reliance on *Long Island Care at Home v. Coke*, 551 U.S. 158 (2007), is "inapposite" because, whereas in that case "'the text of the FLSA d[id] not expressly answer' the interpretative question—namely, whether 'companion services' included services provided by third-parties"—in the instant case Section 213(a)(1) purportedly establishes that any employee performing EAP *duties* is exempt. State Pls.' Reply at 7 n.4 (quoting *Long Island Care* at 168). However, contrary to the State Plaintiffs' assertions, and as previously explained, Section 213(a)(1) does not "expressly answer" how the Department must define and delimit who is employed in a "bona fide executive, administrative, or professional capacity," and so *Coke* remains instructive in applying the *Chevron* framework.

2. The State Plaintiffs also mischaracterize the plain language of Section 213(a)(1), by asserting that its terms "are defined in functional—not financial—terms." State Pls.' Reply at 7. The State Plaintiffs can identify no explicit statutory direction that the terms in Section 213(a)(1) "relate solely to the duties or tasks performed by an employee." *Id*. The Department has reasonably interpreted the phrase "bona fide executive, administrative, or professional capacity" for decades to connote status as well as function. The term "capacity" was understood in the 1930s, when the FLSA was enacted, to mean "position, condition, character, relation," "to be in, put into . . . a position which enables, or renders capable," or "legal competency or

6

qualification." *Capacity*, The Oxford English Dictionary (2d. ed. 1933). And the term "position" was understood to mean "relative place, situation, or standing; specif[ically], social or official rank or status," and "office; employment; situation." *Position*, Webster's Dictionary (1st ed. 1942). Likewise, as the Department explained in the 1940 Stein Report, the "term 'executive' implies a certain prestige, status, and importance." Stein Report at 19; *see also id.* at 33 (discussing the "status implied by the term 'administrative'"). While it is true that the text does not specifically reference salary (just as it does not specifically reference duties), status and income are tied as a matter of common sense.

As a matter of fact, during the 1940 hearings, employee and employer stakeholders widely agreed that that the language of Section 213(a)(1) implies a "status" not attained by workers whose pay is close to the minimum wage. *Id.* at 5. In addition to reflecting status, the salary level test also helps to implement the term "bona fide," statutory text which the State Plaintiffs entirely ignore. *See id.* (explaining that "the good faith specifically required by the act is best shown by the salary paid"); *id.* at 19 (explaining that the salary an employer pays an employee provides "a valuable and easily applied index to the 'bona fide' character of the employment for which exemption is claimed"). The Department has long taken the position that "if an employer states that a particular employee is of sufficient importance to be classified as an 'executive' employee," for example, "and thereby exempt from the protection of the act, the best single test of the employer's good faith in attributing importance to the employee's services is the amount he pays for them." *Id.*

3. In the Final Rule, the Department continues the well-established practice of relying on both a duties test and a salary test to define and delineate those employees who should qualify for the EAP exemption. For decades the Department has required that an employee must be paid

7

on a salary basis, must receive a minimum weekly salary, *and* must perform certain job duties in order to be exempt under Section 213(a)(1). The State Plaintiffs' bald assertion that "the DOL has established a 'salary only' test," *see* State Pls.' Reply at 8, is based on a logical fallacy regarding how the salary level test and duties test work together distinguish exempt employees. As a matter of common sense, when more than one test works in tandem with others, the failure to meet one test may be dispositive; this, however, does not render the other tests obsolete. For example, to receive a drivers license an individual often must pass a written test, a driving test, and a vision test. If an applicant were denied a license because he or she failed the vision test, it would be wrong to say that the DMV had established a "vision-only test" for drivers licenses. Yet it is this specious logic that leads to the State Plaintiffs' incorrect assertion that the Final Rule creates a "salary only" test.

Moreover, the Department has never suggested that it lacks authority to set a salary level test that some employees might fail even though they meet the duties test. Rather, the Department has said that it cannot establish a "salary only" test that would exempt from overtime protections employees who *do not* perform EAP duties—such as mechanics and carpenters—*merely* because they are well paid. *See, e.g.*, *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees*, 69 Fed. Reg. 22,122, 22,173 (Apr. 23, 2004) (rejecting requests from the Chamber of Commerce and other commenters that it eliminate the duties test entirely for employees earning above a certain salary); *see also id.* at 22,174 (noting that the "Administrator would undoubtedly be exceeding his authority if he included within the definition of these terms craftsmen, such as mechanics, carpenters, or linotype operators, no matter how highly paid they might be"). Under any definition, these workers are clearly not the "bona fide executive, administrative, and

8

professional" employees that Congress intended to exempt from the FLSA's minimum wage and overtime protections.

In promulgating the Final Rule, the Department adopted a salary level test that will be more effective than the current salary level test at identifying bona fide EAP employees when read in tandem with the duties test, which is unchanged from the 2004 rule. The Rule corrects a mismatch between the 2004 salary level test methodology (based on the old long test) that resulted in a low salary level and the less rigorous standard duties test (based on the old short test) adopted in 2004, which left employees who should not be exempt without overtime protections. *See* 81 Fed. Reg. 32,405. The State Plaintiffs discuss at length the Department's past methodology for setting what was historically referred to as the *long* salary test. *See* State Pls.' Reply at 10-12. It is true that the Department historically paired the long duties test—which limited the amount of nonexempt work an exempt employee could perform—with a lower (long test) salary level designed to minimize the number of employees satisfying the long duties test who would be overtime-eligible based on their salaries. *See* 81 Fed. Reg. 32, 413. At the same time, however, the Department set the short test salary level high enough so that those who earned above it would *likely* meet the requirements of the (more rigorous) long duties test—including the limit on performing nonexempt work—"with only minor or insignificant exceptions." *Id.* (citing Weiss Report at 23). The Final Rule salary level is at the "low end of the historical range of short test salary levels, based on the historical ratios between the short and long test salary levels ($889-$1231)." 81 FR 32405. As a result, it works appropriately with the current standard duties test, which like the old short duties test, does not contain a limit on the amount of non-exempt work an exempt employee may perform.

9

The State Plaintiffs further mischaracterize the Final Rule salary level test as providing overtime protection to "many" employees who would have passed the long duties test for exemption. *See* State Pls.' Reply at 9. In fact, the Department explains in the Final Rule that the opposite is true: the Department "believes that many of the workers who will no longer be exempt as a result of this rulemaking would have failed the long duties test and are currently inappropriately classified because of the mismatch between the current standard duties test and the standard salary level." 81 Fed. Reg. 32,413. In any event, to the extent the State Plaintiffs now challenge the methodology adopted in the Final Rule, such a claim was not raised in their opening brief, and moreover, it conflicts with the State Plaintiffs' argument that the Department lacked authority to adopt any salary level test methodology in the first place.[2]

The Department adopted the salary level test methodology in the Final Rule under an express delegation of statutory authority, and so the Final Rule is entitled to *Chevron* deference if reasonable. *See Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) ("We have found such express congressional authorizations to engage in the process of rulemaking to be a very good indicator of delegation meriting *Chevron* treatment.") (internal citation omitted). A reviewing court "will uphold an agency's actions if its reasons and policy choices satisfy minimum standards of rationality." *10 Ring Precision v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013) (citation and internal punctuation omitted). So long as the agency "gave at least minimal consideration to relevant facts contained in the record," and "articulate[d] a rational

---

[2] The State Plaintiffs' argument that the statute is unambiguous—and thus *any* salary level test is unlawful—is undercut by the Business Plaintiffs' argument that the *specific* salary level test should be rejected as unreasonable. Thus, the divergent readings of the statute presented by the two sets of plaintiffs demonstrate that the State Plaintiffs are wrong when they say that the statute is unambiguous, and therefore the Department lacks authority to even use and update the salary level test.

relationship between the facts found and the choice made, its decision is not arbitrary and capricious." *Harris v. United States,* 19 F.3d 1090, 1096 (5th Cir. 1994) (citations and footnotes omitted). Under this deferential standard, the Court cannot vacate the Rule on the grounds that some employees who pass the duties test will fail the salary level test. Since the inception of the salary test, there have inevitably been some employees who passed the duties test but failed the corresponding salary test. *See* 81 Fed. Reg. 32,409; Kantor Report at 5. Indeed this was precisely the issue before the Fifth Circuit in *Wirtz v. Mississippi Publishers,* 364 F.2d 603, 607 (5th Cir. 1966). The employees in that case passed the duties test, but earned below the long salary level. *See id.* The Court deferred to the Department's use of the salary level test, holding that it was "rationally related to the determination of whether an employee is employed in a 'bona fide executive [. . . ] capacity.'" *Id.* at 608.

Though *Mississippi Publishers* predated *Chevron*, the circuit court correctly recognized the broad grant of authority under which the Department had made its decision, and deferred to that decision because it was reasonable. *See Chevron*, 467 U.S. at 842-4; *see also Associated Builders and Contractors of Texas, Inc. v. Nat. Labor Relations Bd.*, 826 F.3d 215, 224-25 (5th Cir. 2016) ("To affirm an agency's action, we need only find a rational explanation for *how* the [agency] reached its decision."). In fact, although the issue presented in *Chevron* was Congress's *implicit* delegation of interpretive authority based on silence or ambiguity, the *Chevron* court cited a line of older cases for the proposition that if "Congress has *explicitly* left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," and such "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44 (emphasis added) (citing the Supreme Court's 1936 decision in

11

*American Telephone & Telegraph Co. v. United States*, 299 U.S. 232, 235–237 (1936)).

*Mississippi Publishers* hews closely to this precedent. The Fifth Circuit held that the FLSA "gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide executive [ . . .] capacity,'" and that the salary level test is not "arbitrary or capricious," and thus is entitled to controlling weight. *Mississippi Publishers Corp.*, 364 F.2d at 608. The Court must uphold the Final Rule under this same deferential standard.

Furthermore, the salary level test has not "always been . . . controversial" as the State Plaintiffs claim. *See* State Pls.' Reply at 12. During the 1940 hearings, "there was general agreement on the appropriateness of a salary test," and only "some parties" opposed it. Stein Report at 5-6. By the mid-1940s, moreover, several courts of appeals had weighed in, unanimously agreeing that the salary level test was a valid exercise of the Department's authority. *See Walling v. Morris*, 155 F.2d 832, 836 (6th Cir. 1946), *vacated sub nom. Morris v. McComb*, 332 U.S. 422, 68 S. Ct. 131 (1947); *Walling v. Yeakley*, 140 F.2d 830 (10th Cir. 1944); *Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216, 218 (2d Cir. 1944). [3] In other words, the State Plaintiffs ask the court to issue a preliminary injunction on the grounds that the salary level test,

---

[3] The State Plaintiffs mischaracterize the Tenth Circuit's decision in *Walling v. Yeakley*, which is entirely consistent with the Supreme Court's analysis in *Chevron*. The Tenth Circuit concluded that "Congress chose general phrases to describe the exempted classes of employees and delegated to the Administrator the power and duty, by regulation, to define and delimit those classifications by reasonable and rational specific criteria." *Walling v. Yeakley*, 140 F.2d at 831–32. "Congress obviously believed that it was better to have the exempted employments defined with precision and certainty, even though some persons, who might otherwise be regarded as falling within the general terms employed, should thereby be excluded," the court explained. *Id.* at 832. In other words, the court—closely tracking the *Chevron* step one analysis—held that Congress chose *ambiguous* terms (or general phrases) in crafting Section 213(a)(1) and "directed the Administrator to specifically define and delimit such phrases." *Id.* at 832. The court then went on to evaluate (under a similar analysis to *Chevron* step two) whether the salary level test is "unreasonable" or "arbitrary," and concluded that it was not. *Id.* at 832-33.

a regulatory tool the Department has used in tandem with the duties test for more than 75 years and which the Fifth Circuit has upheld, is likely to be unlawful. The State Plaintiffs' claim that the salary level test takes an "unprecedented approach" is belied by the regulatory history explained in detail in the Final Rule. The Final Rule is a reasonable interpretation of the statute and thus is entitled to *Chevron* deference. The State Plaintiffs' claim is therefore meritless.

## III.   Automatic Updating is Entitled to *Chevron* Deference

Under the broad grant of authority under 29 U.S.C. § 213(a)(1) which permits establishing the salary level test, the Department similarly has authority to adopt the updating mechanism to ensure that the salary level test remains effective as economic conditions change over time. To the extent that the State Plaintiffs are challenging the Department's authority to adopt an automatic updating mechanism, that claim must fail under APA and *Chevron* principles outlined above and in the Department's opening brief. And because the State Plaintiffs can show no imminent irreparable harm resulting from any update that will occur, if at all,[4] until three years from now, this argument certainly provides no basis for the extraordinary preliminary relief that they seek.

The State Plaintiffs' misapprehend the source of Department's authority to adopt this mechanism. It does not flow from "the absence of an express prohibition," State Pls.' Reply at 15, as they contend, but is instead grounded in Section 213(a)(1)'s express grant of authority to the Secretary to define and delimit the scope of the EAP exemption. Just as this express authorization grants the Department authority to establish a salary level test, it likewise provides authority to establish a mechanism—put in place through notice-and-comment rulemaking—to

---

[4] There may be no update; the need for an update under the automatic updating mechanism is dependent on data about salary levels in the future.

keep the salary level current by recalculating the level using current data and the same methodology adopted in the Final Rule.  The State Plaintiffs' reliance on statutes adopting automatic indexing—to argue that Congress must explicitly authorize such mechanisms—is inapposite; in each cited instance where Congress expressly provided for updating, it also established the underlying rate in the statutory provision.  *See* 29 U.S.C. § 1083(c)(7)(C)(i)(II)(setting amount of "excess employee compensation" that is indexed under 29 U.S.C. § 1083(c)(7)(D)(vii));  16 U.S.C. § 497c(a)-(b)(establishing "ski area permit rental charge" formula that is indexed in 16 U.S.C. § 497c(b)(3)); 43 U.S.C. § 1337(a)(3)(C)(v)-(vi)(establishing oil and natural gas prices that are indexed in 43 U.S.C. § 1337(a)(3)(C)(vii)).  By contrast, the salary level test was not set by Congress, but was developed over the course of the previous 75 years through regulation under an express grant of authority.  It therefore makes sense that Congress would not have addressed automatic updating in Section 213(a)(1), as it too falls within the scope of the Department's authority to define and delimit its terms.  *Cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation.") (internal quotation marks and citation omitted).

The State Plaintiffs' claims are based on a misunderstanding of the function of the updating mechanism.  They assert that it "ignores the duties of employees," but the salary level update (if any) that would go into effect in 2020 is based on the same salary level test methodology adopted through notice and comment rulemaking in the Final Rule using then-current data—and it is therefore one that is calibrated to work in tandem with the duties test to effectively distinguish EAP employees.  *See* 81 Fed. Reg. 32,440.  And the State Plaintiffs are

wrong to suggest that the Department has identified no limit on its ability to set a salary level or adopt an updating mechanism. Indeed, the Department has been quite clear that, under the APA and *Chevron*, the Final Rule cannot be arbitrary, capricious, or manifestly contrary to the statute. The State Plaintiffs have failed to show that the Final Rule exceeds these limitations on the Department's authority, nor can they. Their claim must fail.

## IV.   Automatic Updating is Procedurally Proper

The APA does not require that the Department follow notice-and-comment procedures each time the salary level automatically updates pursuant to the Final Rule. The State Plaintiffs argue—for the first time in their Reply brief[5]—that when the Department updates the salary level in 2020, the published notice of the updated salary level threshold constitutes a "substantive rule" subject to notice and comment. But this argument fails. First of all, because it challenges the future results of the updating mechanism, it is not ripe. Moreover, it is based on a misunderstanding of the automatic updating provision. The automatic updating mechanism contained in the Rule due to go into effect on December 1, 2016, was adopted through notice and comment as part of the Final Rule. It was adopted in compliance with Section 213(a)(1)'s requirement that the Department define and delimit the exemption "from time to time by regulations." The updating of the salary threshold does not trigger additional notice and comment requirements, because the determination affecting substantive rights—*i.e.*, the imposition of a salary level test that is set at the 40th percentile of salaried workers in the lowest earning Census region and the mechanism by which that level would be kept current—was done through notice and comment rulemaking.

---

[5] "The Court will not consider arguments or evidence raised for the first time in a reply brief." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 633 n.11 (N.D. Tex. 2010).

The Final Rule sets forth the salary level test methodology, and the automatic updates merely recalculate the threshold based on contemporaneous data (contemporaneous data as of a future date) so that it remains at the 40th percentile of salaried workers in the lowest wage Census region. The notice the agency intends to publish to advise the public of the updated salary level will not be a separate substantive rule, and therefore will not need to be promulgated through notice and comment.

Indeed, the State Plaintiffs' procedural challenge to future automatically updated salary levels—the first of which will not be published in the Federal Register until 2019—is unripe, and even more so, inappropriate for preliminary relief. The State Plaintiffs cannot show now that they or their members will be impacted by any future update. Notably, the State Plaintiffs ask for a preliminary injunction on this claim, despite the fact that they could not conceivably suffer any harm from an automatically updated salary level until, at the very earliest, its publication in the Federal Register in 2019. Plaintiffs cannot credibly argue that costs they may incur three years from now—i.e., well after the court rules on the merits of this case—provide a basis for granting a preliminary injunction. Put another way, Plaintiffs have made no showing that if the Final Rule takes effect on December 1 they will immediately suffer harm stemming from a new salary level (if any) that will take effect on January 1, 2020. Thus, the State Plaintiffs cannot meet their burden of showing they are entitled to preliminary injunctive relief regarding their automatic updating claims.

Their procedural challenge to the automatic updating provision is also meritless, because the State Plaintiffs have failed to point to any case law requiring notice-and-comment for what amounts to a merely ministerial update. The State Plaintiffs' reliance on *Lincoln v. Vigil*, 508 U.S. 182 (1993), is misplaced. In that case the Supreme Court held that a decision by the Indian

Health Service to discontinue a program providing medical assistance to disabled children was not subject to the APA's procedural requirements because it was an exercise of discretion, and thereby fell within the "general statement of policy" exception to the notice and comment requirements. The State Plaintiffs insist that the fact that the updated salary level that is set to go into effect in 2020 will affect participants in the labor market means it must be a "substantive rule," but *Lincoln* shows that this factor is not, in and of itself, dispositive. There, children who no longer had access to medical services were no doubt impacted by the challenged agency action, but the Supreme Court held that it was not a substantive rule subject to notice and comment requirements.[6] So too here—the fact that some employees may be classified differently after an automatic update does not alone trigger the full notice-and-comment requirements. The State Plaintiffs' failure to identify any basis on which the Court could subject an update to the salary level threshold that will take effect in 2020 to notice and comment rulemaking—let alone any irreparable harm resulting from an update that will not occur for over three years—compels denial of their request for preliminary relief.

## V.     The Remaining Factors Show That A Preliminary Injunction is Not Warranted

Even though a preliminary injunction is an "extraordinary remedy" that "should only be granted if the movant has clearly carried the burden of persuasion on *all four*" requirements, *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (emphasis added), the State Plaintiffs entirely fail to respond to the Department's explanation as

---

[6] Thus, *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592 (1995), is also inapposite. *See* State Pls.' Reply at 17. There, the Fifth Circuit considered whether internal agency guidelines regarding *discretionary enforcement decisions* created a "binding norm" upon the agency for purposes of determining whether the "general statement of policy" exception to the APA's procedural requirements applied to the guidelines. Here, there is no discretionary determination that will be limited by the Department's update (if any) in 2019, nor does the Department claim the update is a "general statement of policy."

to how the balance of equities and the public interest weigh heavily against an injunction. *See* Defs.' Br. at 46-47.

Instead, they focus on trying to carry their "heavy burden of clearly establishing to the Court irreparable harm." *Watchguard Techs., Inc. v. Valentine*, 433 F. Supp. 2d 792, 794 (N.D. Tex. 2006). The State Plaintiffs assert that their submitted declarations are "the only reliable attempt so far even to attempt to reckon the injury," and they show "that it will be both immense and imminent." State Pls.' Reply at 24-25. But according to the Departments' unrebutted economic analysis, total costs for state and local governments in the first year of the Rule will compose approximately .01 percent of state and local government payrolls and a mere .004 percent of state and local government revenues. *See* 81 Fed. Reg. 32,547. In assessing whether the States will suffer irreparable harm, it is important to place the Rule's costs in context, and the State Plaintiffs provide none. And even though the State Plaintiffs must show a "substantial threat of *immediate* and irreparable harm," *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 877 (N.D. Tex. 2008) (emphasis added), their estimates are largely measured on an annual basis and do not show what costs would be incurred while the Court reviewed the merits of the case.

The Department does not question the expertise of the State Plaintiffs' declarants, or doubt that these estimates were made in good faith. But, many of the estimates are based on an unrealistic application of the Final Rule and thus fail to establish the irreparable harm necessary to warrant a preliminary injunction. For example, several states estimate the cost of increasing the salaries of all affected workers to the new salary level. *See* Defs.' Br. at 43 (citing declarations from Kansas, Wisconsin, and Oklahoma). These estimates fail to take into account that in many instances States will have no financial incentive grounded in the Rule to raise

18

salaries of employees who do not work overtime or only work small amounts of irregular overtime.[7]

In sum, the States have failed to show an irreparable injury requiring injunctive relief, let alone that such an injury outweighs the harm to Defendants and the public.

## VI.    Any Injunction Must Be Carefully Tailored to Address the Harm Shown

Even though the State Plaintiffs failed to submit evidence on behalf of most of the plaintiffs (including any state in the Fifth Circuit), and have provided no basis for enjoining the rule as to private employers, they ask this Court to enjoin the Rule nationwide.[8]

The Supreme Court and Fifth Circuit have repeatedly affirmed the "general rule" that "'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (same); *Gearhart Indus. v. Smith Int'l, Inc.*, 741 F.2d 707, 715 (5th Cir. 1984) (same). "[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996). Thus, even if the Court finds an injunction

---

[7] The State Plaintiffs reference the automatic updating mechanism. *See* State Pls.' Reply at 22, 24. This mechanism is irrelevant for purposes of irreparable harm, however, as the salary level will not be recalculated for another three years.

[8] The State Plaintiffs apparently expect Defendants and the Court to search "through hundreds of judicially noticeable public records" to determine how the Rule operates for employers who did not submit affidavits. State Pls.' Reply at 20 n.13. Such a request falls far short of the State Plaintiffs' "heavy burden of clearly establishing to the Court irreparable harm." *Watchguard Techs., Inc.*, 433 F. Supp. 2d at 794.

appropriate, it should only apply beyond State Plaintiffs to the extent necessary to prevent the State Plaintiffs' own irreparable harm.[9]

The State Plaintiffs have no legitimate interest in the Rule's effect in non-plaintiff states, and indeed have not even tried to establish that they would be injured by the Rules enforcement against *other* employers beyond themselves.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").  The Court therefore should not grant injunctive relief to any additional employer.

The Fifth Circuit has not hesitated to correct injunctions whose scope was broader than necessary to prevent harm to plaintiffs. *See, e.g.*, *Lion Health*, 635 F.3d at 703 (holding abuse of discretion where injunction was "broader and more burdensome than necessary to afford Lion full relief"); *Hernandez v. Reno*, 91 F.3d 776, 781 (5th Cir. 1996) (modifying overbroad injunction to "apply to [plaintiff] only"); *Gearhart*, 741 F.2d at 715 (same); *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974) (same). Neither has the Supreme Court. *See, e.g.*, *Dept't of Defense v. Meinhold*, 510 U.S. 939, 939 (1993) (staying nationwide injunction except as to plaintiff); *Lewis*, 518 U.S. at 359 (reversing statewide injunction because the district court "imposed a systemwide remedy" "[i]nstead of tailoring a remedy commensurate" with plaintiffs' demonstrated harms).

---

[9] The Fifth Circuit reaffirmed this rule in *United States v. Texas*, 809 F.3d 134, 188 (5th Cir. 2015) (allowing preliminary injunction to apply to non-parties only in "appropriate circumstances"), where it affirmed a nationwide injunction for reasons that only apply to immigration.  It explained that a plaintiffs-only injunction "would be ineffective" in protecting the plaintiffs, "because DAPA beneficiaries would be free to move among states," carrying their beneficiary status with them. *Id*.  No corresponding concern exists here.  The court also noted that, in immigration law, a national uniformity imperative was written directly into the Constitution. *See id*. (quoting U.S. Const. art. I, § 8, cl. 4).  No such imperative exists here.

Moreover, because extending an injunction to non-plaintiff employers exceeds the scope of injury that State Plaintiffs allege, it raises Article III concerns.  Under Article III, the Court may order relief that redresses the injuries the State Plaintiffs establish, not redress injuries solely faced by *other* parties, unconnected to the State Plaintiffs.  The State Plaintiffs "must demonstrate standing *separately* for each form of relief sought." *Friends of the Earth v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 185 (2000) (emphasis added); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Thus, while the State Plaintiffs may seek to redress harm they face, that does not give them the right to prevent *others*' injuries, because "standing is not dispensed in gross." *Lewis*, 518 U.S. at 358 n.6; *id.* at 357 (plaintiffs cannot simply "demonstrate[] harm from one particular inadequacy" and then seek "to remedy *all* inadequacies"). And as a matter of prudential standing, even a plaintiff with Article III standing may only "assert his own legal rights and interests," not those "of third parties." *United States v. Johnson*, 632 F.3d 912, 919-20 (5th Cir. 2011).  In sum, only actions that would "harm[] a[] plaintiff in this lawsuit" can be a "proper object of this District Court's remediation." *Lewis*, 518 U.S. at 358.

The core principle, under both Article III and the principles of equity, is that a preliminary injunction should prevent irreparable harm to plaintiffs, and no more.  As the Supreme Court explained in *Yamasaki*, "the scope of injunctive relief is dictated by the extent of the violation established" by the plaintiffs—there, a properly certified nationwide class—"not by the geographical extent of the plaintiff class." 442 U.S. at 702.  Thus, even a nationwide class generally cannot seek relief as to non-class-members residing in the same places as class

members—that is, relief "more burdensome than necessary to redress *the complaining parties*." *Id*. (emphasis added).

The district courts in this Circuit that issued nationwide preliminary injunctions did not explain why non-party relief accorded with the necessity analysis required by *Yamasaki* and *Lion Health*. *See Assoc. Builders v. Rung*, No. 16-425, ECF No. 22, at 32 (E.D. Tex. 2016); Clarif. Order, *Texas v. U.S.*, No. 16-54, ECF No. 86, at 2-4 (N.D. Tex. 2016); *id.*, 2016 WL 4426495, at *17 (N.D. Tex. 2016). Those courts apparently assumed that enjoining a national policy as to *any* regulated party means that it should enjoin the policy as to *all* regulated parties. But that is emphatically not the law, and the Supreme Court and courts of appeals have rejected such relief in the context of national policies. *See Meinhold*, 510 U.S. at 939; *L.A. Haven Hospice*, 638 F.3d at 665; *Hernandez*, 91 F.3d at 781; *Va. Soc'y for Human Life v. F.E.C.*, 263 F.3d 379, 393 (4th Cir. 2001), *overruled on other grounds by The Real Truth About Abortion, Inc. v. F.E.C.*, 681 F.3d 544 (4th Cir. 2012).

Automatic non-party relief cannot be reconciled with the Supreme Court's and the Fifth Circuit's clear commands to ensure that equitable relief is no more burdensome than necessary to protect plaintiffs. In fact, the APA explicity provides that, in granting preliminary relief to preserve the status quo, courts should tailor injunctions ot the plaintiffs' showing of irreparable harm. *See* 5 U.S.C. § 705 ("On such conditions as may be required and *to the extent necessary to prevent irreparable injury*, the reviewing court . . . may issue all necessary and appropriate process . . . to preserve status and rights pending conclusion of the review proceedings.") (emphasis added). And, it would contravene other basic features of our judicial system. It would award the equivalent of class-wide relief, even though the State Plaintiffs have not tried to certify a class and absent a certified class, "a court cannot grant relief on a class-wide basis."

*Zepeda v. I.N.S.*, 753 F.2d 719, 729 n.1 (9th Cir. 1983) (collecting cases). And as a practical matter, it would also foreclose other circuits' review of the Rule's legality, an outcome the Supreme Court has strived to avoid. *See United States v. Mendoza*, 464 U.S. 154, 160-64 (1984) (holding non-mutual collateral estoppel does not apply to government because Supreme Court review relies on government's ability to litigate same issue against multiple parties in multiple fora).

Thus, any injunction that issues (and none should) should be tailored to only those State Plaintiffs that have carried their heavy burden of clearly showing irreparable harm, and no further.

## CONCLUSION

The Court should deny the State Plaintiffs' Motion for a Preliminary Injunction.

Dated: November 15, 2016

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

STEVEN W. GARDINER
Senior Attorney

ERIN M. MOHAN
Attorney
U.S. Department of Labor
200 Constitution Ave NW, N-2716
Washington, DC 20210

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

BRIT FEATHERSTON
Acting United States Attorney

JUDRY L. SUBAR
Assistant Branch Director
Federal Programs Branch

  /s/ Julie S. Saltman
JULIE S. SALTMAN
KEVIN SNELL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W., Room 7111
Washington, D.C. 20530
Tel: (202) 532-4252
Fax: (202) 616-8470
Email: Julie.saltman@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2016, I filed the foregoing electronically with the

Clerk of the United States District Court for the Eastern District of Texas through the CM/ECF

system, which caused the all counsel of record to be served by electronic means.

*/s/ Julie Saltman*
JULIE SALTMAN