IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| PLANO CHAMBER OF COMMERCE, et al., <br><br> PLAINTIFFS, <br><br> v. <br><br> THOMAS E. PEREZ, et al., <br><br> DEFENDANTS. | Civil Action No. 16-cv-732 |

**BUSINESS PLAINTIFFS' REPLY
IN SUPPORT OF MOTION FOR EXPEDITED SUMMARY JUDGMENT**

i

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT……………………………………………………………………………..1

    I.       Under Settled Law, Plaintiffs' Standing Is Self-Evident From The Administrative Record ........................................................................................................3

    II.      Contrary To Defendants' Opposition, The New Minimum Salary Threshold Exceeds The Authority Congress Vested In DOL Under The FLSA…………….4

    III.     The New Overtime Rule Remains Arbitrary And Capricious…………………...11

    III.     The Automatic Escalator Provision Exceeds DOL's Statutory Authority Under The FLSA……………………………………………………………………..12

CONCLUSION .................................................................................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Chevron U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984) ............................................................................................... passim

*Contender Farms, L.L.P. v. Dep't of Agric.*,
   779 F.3d 258 (5th Cir. 2015) .................................................................................... 2, 4, 9

*Encino Motorcars v. Navarro*,
   136 S.Ct. 2117 (June 20, 2016) ................................................................................ 7, 8, 10

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. .................................................................................................................... 3, 5

*Motor Vehicles Manufacturers Ass'n v. State Farm Mutual Insurance*,
   463 U.S. 29 (1983) ........................................................................................................ 7

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
   416 U.S. 267 (U.S. 1974) ............................................................................................. 5

*Ragsdale v. Wolverine World Wide, Inc.*,
   535 U.S. 81 (2002) ....................................................................................................... 3

*Texas v. U.S. Dept. of Interior*,
   497 F. 3d 491 (5th Cir. 2007) ....................................................................................... 9

**STATUTES**

5 U.S.C. § 706 .................................................................................................................... 10

29 U.S.C. 213(a)(1) ......................................................................................................... passim

**OTHER AUTHORITIES**

5 Fed. Reg. 4,077 (Oct. 10, 1940) ........................................................................................ 3

14 Fed. Reg. 7,705 (Dec. 24, 1949) ..................................................................................... 4

23 Fed. Reg. 8,962 (Nov. 18, 1958) ..................................................................................... 4

29 Fed. Reg. 9,505 (Aug. 30, 1963) ..................................................................................... 4

69 Fed. Reg. at 22,167 ......................................................................................................... 9

81 Fed. Reg. at 32392 .......................................................................................................... 9

**SUMMARY OF ARGUMENT**

Defendants make a critical (and unavoidable) concession in their Opposition: They admit that Congress did not authorize them to "tie the exemption" to criteria that "lack[] any reasonable relationship to the language of the exemption." Defendants' Opposition, Dkt. No. 56 ("Opp.") at 14. Rather, Congress only gave Defendants the task of defining which employees are in fact "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). For "*any*" such employee, the overtime requirements of the Fair Labor Standards Act ("FLSA") "*shall not* apply." *Id.* (emphases added). Congress did not authorize Defendants to set a minimum salary for white-collar employees at such a high level as to exclude millions of employees who otherwise are employed in a bona fide EAP capacity. And Congress certainly did not authorize DOL to increase the pay of white collar employees as a class through the device of improperly elevating the minimum salary thresholds.

But that is precisely what Defendants have done here. It is undeniable that under the new Overtime Rule, millions of employees who perform duties that qualify them for the executive, administrative, and professional ("EAP") exemption will now lose their exempt status solely on account of their salary. The day before this Rule would take effect, they are exempt. But the day after, although all of their duties remain the same, they will not be, solely because the Department of Labor ("DOL") has more than doubled the minimum salary threshold to an amount far beyond what Congress could possibly have intended. Indeed, in 1938, when DOL first set a salary threshold, it was $30 per week, which translates into $514.32 in 2016 dollars. In 1966, when the Fifth Circuit decided *Wirtz v. Mississippi Publishers Corp.*, the minimum salary threshold of $100 per week, which translates into $746.08 per week in 2016 dollars. In this Rule, the Department's metric has set the minimum salary threshold at $913 per week—40 percent of

1

the salaried workforce in a Census region that includes some of the highest paid states in the country - far higher than any previous salary level that the Department has ever set in the eight decades of the FLSA.

Though the Department has a broad grant of authority to issue regulations to define and delimit the terms in the EAP exemption, DOL must still act within the confines of the statute and Congressional intent. Contrary to Defendants' claims, the Department's new Rule has departed radically and significantly beyond using salary as a proxy to weed out obviously non-exempt employees, and has instead created a test that, in function, uses salary as the *defining criterion* for excluding millions of otherwise exempt employees from the EAP exemption. That departure renders the Rule invalid whether measured under step one or step two of *Chevron,* and is also arbitrary and capricious. Defendants failed to adequately consider and address the severe costs the Rule would impose on employers who have relied for decades upon the Defendants' previously settled approach to the EAP exemption, and DOL improperly relied on factors that Congress did not intend the Department to consider.

The Rule's escalator provision doubles down on Defendants' departure from their statutory mandate. Under that provision, this Rule's already improper salary threshold will be adjusted automatically without any assessment of whether the increase corresponds to performance of exempt duties. Moreover, this approach ignores the requirements of the FLSA and the APA, which together provide that DOL may update its regulation "from time to time" and that such updates must be undertaken through notice and comment. Defendants' contrary position—that they can use notice and comment rulemaking to do away with their obligation to provide notice and comment in the future—would allow Defendants to bootstrap rulemaking into an exemption from the APA.

ARGUMENT

I.  **UNDER SETTLED LAW, PLAINTIFFS' STANDING IS SELF-EVIDENT FROM THE ADMINISTRATIVE RECORD.**

Defendants' Opposition briefly (Opp. at 9-10) contests the Business Plaintiffs' standing to bring this challenge to the Overtime Rule. Although Defendants assert without explanation or argument that Plaintiffs have not established associational standing, DOL's own Administrative Record makes plain that Plaintiffs are business associations representing millions of employers across the country, and that those employers are directly and adversely affected by the regulations being challenged, as are the Plaintiff associations themselves. *See, e.g.*, App. to Pl.'s Motion 166-169, ECF No. 7-3 (Chamber Comments); App. to Pl.'s Motion 326-27, 330, ECF No. 7-5 (NAM Comments); App. to Pl.'s Motion 460, ECF No. 7-14 (NFIB Comments).[1] Under such circumstances, courts have repeatedly held that no affidavits are required to establish standing, where it is "self-evident" from the administrative record that Plaintiffs and their members will be directly injured by the challenged rule. *See, e.g.*, *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) ("[I]n many if not most cases the petitioners standing to seek review of administrative action is self-evident." (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002)); *Florida Bankers Ass'n v. U.S. Dept. of Treasury*, 19 F. Supp. 3d 111, 120 (D.D.C. 2014) ("Only when the petitioner's standing is not self-evident—generally, when the Plaintiff is an unregulated third-party—must it supplement the record with an affidavit." (quoting *Sierra Club*, 292 F.3d at 900)). The injury to the Business Plaintiffs and their members is readily apparent from the DOL's own Administrative Record, which is "competent

---

[1] *See also* Plaintiffs' previous Motion which included pin cites to their comments demonstrating severe harm in the Administrative Record. (Pl. Mot. pp. 27-29).

3

evidence" (Opp. at 9) more than sufficient to show standing.[2]

II.  **CONTRARY TO DEFENDANTS' OPPOSITION, THE NEW MINIMUM SALARY THRESHOLD EXCEEDS THE AUTHORITY CONGRESS VESTED IN THE DEPARTMENT UNDER THE FLSA.**

As explained in the Business Plaintiffs' Motion (11-21) and at the hearing on the State Plaintiffs' Motion, the Department's new minimum salary threshold no longer serves as a plausible proxy to screen out otherwise non-exempt employees from the EAP exemption, thereby departing from seventy-five years of consistent precedent. By more than doubling the minimum salary threshold, that threshold is now so high that it screens out millions of employees who otherwise serve in an EAP capacity. As a result, the exemption will be denied to entire categories of salaried executive, administrative, professional, and computer employees whose job duties unambiguously qualify them to be treated as exempt, in a manner that is inconsistent with the intent of Congress in the FLSA.

The Defendants' primary response (Opp. at 10-11) is to resort to *Chevron* deference, claiming that the statute is ambiguous and grants the Department sweeping discretion.  But the Department concedes (Opp. at 14), as it must, that its authority under the FLSA is not limitless. And even if the statutory terms are ambiguous, the Department cannot leverage that ambiguity into carte blanche authority to violate clear congressional intent. Here, the DOL's minimum salary threshold does not plausibly implement the congressional directive to identify "any" employee serving in a "executive, administrative, or professional" "capacity," who "shall not" be subject to the FLSA's overtime requirements. Instead, the DOL's new Rule effectively imposes an unauthorized minimum wage for salaried white-collar employees by specifying that an

---

[2] If the Court so requires, Plaintiffs stand ready to provide sworn affidavits demonstrating direct harm to themselves and their members from the new Rule, supplementing the Administrative Record which is already conclusive on this point.

4

employee—even if that employee unquestionably meets the duties test—is not exempt from overtime unless he or she earns more than $47,476 a year.

Regardless whether the Court views this as a "Step One" or "Step Two" case, or both, this new minimum salary threshold is contrary to congressional intent. *See Util. Air Reg. Grp. v. EPA*, 134 S. Ct. 2427, 2442 (2014) (henceforth "*UARG*") ("Even under *Chevron*'s deferential framework, agencies must operate within the bounds of reasonable interpretation. . . .[A]n agency interpretation that is inconsistent with the design and structure of the statute as a whole does not merit deference."). As the Fifth Circuit has stated, "Although *Chevron* makes clear that we must give deference to the agency's interpretation of a statute, 'courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with the statutory mandate or that frustrate the congressional policy underlying a statute.'" *National Pork Producers Council v. EPA*, 635 F.3d 738, 753 (5th Cir. 2011) (quoting *Tex. Power & Light Co. v. FCC*, 784 F.2d 1265, 1269 (5th Cir. 1986)); *see also Contender Farms*, 779 F.3d at 273 (even a "broad grant of general rulemaking authority does not allow [the] agency to make amendments to statutory provisions").

Numerous courts have overturned similarly unreasonable agency rules at *Chevron* Step Two, notwithstanding the requirement of deference to an agency's interpretation of a statute, where the courts have concluded the agency's proffered interpretation to be "unreasonable." *See, e.g., Michigan v. EPA*, 135 S. Ct. 2699, 2707-08 (2015) (EPA rule contrary to ambiguous term "appropriate" because "appropriate" certainly includes consideration of cost). Indeed, as the Supreme Court recently stated, "*Chevron* allows agencies to choose among competing reasonable interpretations of a statute; it does not license interpretive gerrymanders under which an agency keeps parts of statutory context it likes while throwing away parts it does not."

5

*Michigan*, 135 S. Ct. at 2708.[3]

Defendants' argue (Opp. at 11-13) that salary *in general* may be a relevant consideration in determining whether an employee is truly a bona fide EAP employee. But that point is entirely nonresponsive to Plaintiffs' argument. Whereas every previous salary level was deliberately set so low as to weed out only those individuals who were "obviously" not exempt, the new salary level set by the Department undeniably removes more than 4 million otherwise exempt EAP workers from eligibility for the exemption. DOL has not simply updated the salary level test to account for inflation or changes in compensation or job types, but has introduced a sea change in how its overtime rule seeks to use the salary level test. DOL turned its back on more than seventy-five years of purposefully setting the salary level as a "relatively low figure" so that "[i]n an overwhelming majority of cases … [employees] who did not meet the salary requirements would also not qualify under" a duties test. Weiss Report at 8, 12 (citing the Stein Report).

It is also clear from the Administration's public statements about the new Rule that its real objective is the impermissible goal of using the salary threshold as a tool to "improve the conditions" of white collar employees as a whole by forcing an increase in their wages. In other words Defendants are not merely attempting to "define" the class of white collar exempt employees, but to somehow increase the pay of the group as whole. As a White House Fact Sheet stated when the new Rule was announced: "Increasing overtime protections is another step in the President's effort to grow and strengthen the middle class by raising Americans'

---

[3] Many more such cases may be found. *See, e.g.*, *Council for Urological Interests v. Burwell*, 790 F.3d 212, 219 (D.C. Cir. 2015) (vacating HHS rule at Step Two); *ABA v. FTC*, 430 F.3d 457, 471 (D.C. Cir. 2005) (invalidating FTC regulation where it is "not sufficiently reasonable to survive that deference at Step Two); *Natural Resources Defense Council, Inc. v. Daley*, 209 F.3d 747, 755 (D.C. Cir. 2000) (invalidating fisheries quota at Step Two because it "diverges from any realistic meaning" of the Fishery Act).

wages." https://www.whitehouse.gov/the-press-office/2016/05/17/fact-sheet-growing-middle-class-paychecks-and-helping-working-families-0. Compare this statement with the Weiss Report of 1949, at 11, in which the Department declared that "improving the conditions of such employees is not the objective of the regulations."

There is no merit to Defendants' further arguments (Opp. at 14-25), that the executive practice and judicial decisions implementing and upholding the DOL's minimum salary threshold over the last seventy five years somehow support the Defendants' doubling of the minimum salary threshold. The executive practice—until now—has been consistent. The 1940 Stein Report[4] underscored that the duties performed by employees should be the overriding determinant of their status, stating that the minimum salary test should impact only "a few" otherwise exempt employees. *Id*. at 6.[5] This narrow purpose was reaffirmed in the 1949 Weiss Report, which again explained that the *sole* purpose of the salary level test is "screening out the obviously nonexempt employees." Weiss Report at 15. The DOL expressly disclaimed any intent to set "the required salary … [at] a figure so high as to disqualify for exemption individuals who … were intended by Congress to be exempt." *Id.* at 7. Instead, "the level selected must serve as a guide to the classification of bona fide executive employees and not as a barrier to their exemption." *Id.* at 15. Accordingly, the DOL continued to defend its salary level test as "a relatively low figure" deliberately set "near the lower end of the range of prevailing

---

[4] Executive, Administrative, Professional . . . Outside Salesman Redefined, Wage and Hour Division, U.S. Department of Labor, Report and Recommendations of the Presiding Officer (Harold Stein) at Hearings Preliminary to Redefinition (Oct.10, 1940) (''Stein Report'').

[5] Defendants' Opposition wrongly contends that Plaintiffs have taken this quotation "out of context." (Def. Opp. at 21, n.10). The additional text relied on by Defendants does not change the import of the quoted statement at all. It remains undeniable that the officials who acted contemporaneously with the Congress that enacted the FLSA understood congressional intent to prohibit a salary threshold that would screen out more than "a few" EAP employees.

7

salaries." *Id.* at 12. The 1958 Kantor Report reiterated the same principle, stating that the salary tests for the EAP exemption "furnish a practical guide to the investigator as well as to employers and employees in *borderline cases*, and simplify enforcement by providing a ready method of *screening out the obviously non-exempt employee*." Kantor Report at 2-3 (emphasis added). And more recently, in its 2004 rulemaking, DOL again recognized that Congress had expressly limited its power to use a salary basis for defining and delimiting who is a bona fide EAP employee. "[T]he law," DOL acknowledged, "does not give the Department authority to set minimum wages for executive, administrative, and professional employees." 69 Fed. Reg. at 22,165. DOL stated then—as it also must concede now—that it lacks authority to use a "salary only" test. *Id.* at 22,173.[6]

As the Business Plaintiffs argued in their Motion (and as DOL in effect conceded by making the same argument vis-à-vis the State Plaintiffs), this longstanding DOL interpretation of FLSA's mandate takes on special force because it has been left undisturbed by Congress over the course of many decades. *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 274-75 (1974) ("[C]ongressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."); *accord Sebelius v. Auburn Regional Med. Ctr.*, 133 S. Ct. 817, 827 (2013). The 40 percent threshold set by DOL is not "at the lower end" of what EAP employees are paid and is in direct conflict with congressional intent.

---

[6] As previously explained in Plaintiffs' Motion, the commonly understood 1938 meanings of the EAP terminology supports DOL's previous understanding that it lacked authority to impose a "salary only" test. *Contender Farms,* 779 F.3d at 269, 271–72. Dictionary definitions from that era describe the words "executive," "administrative," and "professional" in functional terms—not by how much each category earns in salary. (Pl. Mot. at 13). Defendants' response, to the effect that the definitions include reference to "status" in addition to "function," does not change the analysis, because "status" does not equate to "salary."

8

For similar reasons, the Defendants' reliance upon *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966), and *Walling v. Yeakley*, 140 F.2d 830 (10th Cir. 1944), is misplaced. As the States Plaintiffs have rightly noted, those pre-*Chevron* decisions did not address the particular statutory arguments raised by the Business and the State Plaintiffs here. But at most, they held that the low minimum salary thresholds employed by the DOL at those times were plausibly proxies for the statutory categories that DOL was authorized to define and delimit. In no fashion do they support the Department's unprecedented doubling of the minimum salary threshold was consistent with the intent of Congress.

Moreover, there is no merit to Defendants' arguments (Opp. at 18-25) that the doubling of the minimum salary threshold is in line with previous adjustments to the minimum salary threshold. It remains undisputed that the new salary threshold for the first time has been elevated far above the previous "floor" levels of 10-20 percent of the salaries in low paying industries and/or low paying parts of the country. The new 40 percent threshold is untethered to any job duties requirements and excludes more than four million otherwise exempt workers from access to the statutory exemption.[7] Based on the longstanding agency interpretation of Congress's mandate, as ratified by Congress, DOL's radical change in the salary threshold must be set aside.

At the hearing and again in its Opposition (Opp. at 5-6, 16-18, 21-22), DOL has claimed that the new minimum salary level has been set as high as it is in the new Rule in order to correct

---

[7] DOL asserts (Opp. at 24) that many of the 4.2 million employees who will no longer be exempt under the new salary threshold are currently "misclassified" already, because they do not meet the duties tests. This claim is entirely unsupported by record evidence, and DOL has no way of knowing whether individual employees in any job classification earning between $455 and $913 are misclassified. A 1999 report by the U.S. General Accounting Office ("GAO") making a similar claim was considered and rejected by DOL in 2004, at which time DOL found the GAO study to consist of nothing but guesstimates. *See* U. S. General Accounting Office, *White-Collar Exemptions in the Modern Work Place* (September 1999), Appendix I, available at http://www.gao.gov/archive/1999/he99164.pdf. There have been no updates or improvements in the GAO methodology in the last 12 years.

a "methodological" mistake made by DOL itself in 2004. The DOL claims (Opp. at 21) that it did not adequately account for the changes in the duties test at that time and "mistakenly" paired duties requirements equivalent to the pre-2004 "short" duties tests "with the kind of low salary level previously associated with the more rigorous long duties test." To the contrary, DOL in 2004 fully explained its rationale for setting the minimum salary at $455 per week, which was set at a higher rate than would have been true if the long duties test had continued to be enforced. 69 Fed. Reg. at 22,167. There was no methodological "mistake" in 2004. Rather, in setting the minimum salary level at that time, the Department used the same methodology that the agency had used to set the minimum salary level for exemption since 1940: that is, setting the minimum salary at a low level so as to screen out only "obviously nonexempt employees." DOL took into account the elimination of the long duties test by increasing the overall level of the minimum salary to a 20 percent threshold, which was itself higher than previous levels, but nowhere near the level of the new standard. Notably, the 2004 salary threshold was never legally challenged during the twelve years of its existence.

Defendants' Opposition nevertheless claims that the new salary threshold is somehow consistent with the "short test" salary level first adopted in 1949. (Def. Opp. at 17). To the contrary, the short test was never used as a cutoff excluding exempt individuals entirely from the EAP exemption regardless of their job duties; only the long duties test and lower matching salary played that role. Prior to 2004, the "short test" was a colloquial term for regulatory sections setting the salary level for "high salaried" employees. *See, e.g.,* 38 FR 883, 886-87 (Jan. 22, 1970) (§ 541.119, "Special Proviso for high salaried executives"; §541.214, "Special proviso for high salaried administrative employees"; §541.315, "Special proviso for high salaried professional employees). Employees were not excluded from the EAP exemptions for earning

below the "short test" salary level; and in any event, the salary level of the short test never came close to the 40 percent threshold established by the new Rule.[8] Thus, it is DOL today, not in 2004, that has made the "methodological" mistake: adopting a minimum salary level that the agency wrongly claims is historically equivalent to the pre-2004 special provisos for high salaried employees, while excluding millions of bona fide EAP employees from the exemption against the intent of Congress.

## III. THE NEW OVERTIME RULE REMAINS ARBITRARY AND CAPRICIOUS.

For substantially similar reasons to those noted in Part II, and as explained in Plaintiffs' Motion, the new Overtime Rule should be set aside as arbitrary and capricious under the tests set forth in *Encino Motorcars,* , *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In addition to the foregoing grounds, it must be noted that Defendants' Opposition, like the new Rule itself, fails one of the most important tests of the foregoing cases: the agency has changed a longstanding position as to the salary level, without "at least display[ing] awareness that it is changing position." *Encino Motorcars*, 136 S. Ct. at 2125 (quoting *Fox Television*, 556 U.S. at 515). Far from displaying such awareness that the new salary level constitutes a radical departure from the past seventy five years of agency policy, Defendants repeatedly (and incorrectly) deny that such a change has taken place. (Def. Opp. at 16, 21, 35). The record evidence overwhelmingly establishes that a drastic change in policy has occurred; and by failing to acknowledge such a change, Defendants cannot claim to have provided a rational

---

[8] DOL also claims (again) that the new salary threshold is somehow reflective of the "ratio" of short duties to long duties salary tests. (Def. Opp. at 17). But because there is no longer a "long duties" test and no salary level matching it, there is no longer a ratio between the new salary threshold and *any* other salary level. Thus, the imaginary ratio upon which DOL relies cannot be an adequate justification for the new salary level.

11

basis for it.

Also contrary to Defendants' Opposition, partly because they have failed to acknowledge the change itself, Defendants have further erred by failing to take cognizance of the longstanding reliance interests of the business community with regard to the previous policies. *Encino Motorcars*, 136 S. Ct. at 2126. Contrary to Defendants' Opposition, none of the concerns of the business community referenced in Plaintiffs' Motion have been meaningfully addressed by DOL in the new Rule. The business models of many employers, particularly non-profits, retail, and small businesses, will be severely disrupted if the new Rule is allowed to take effect. (Pl. Mot. at 27-29). Plaintiffs' assessment of the new Rule's harmful impact has been given new force by the recent report of the Congressional Budget Office: *The Economic Effects of Canceling Scheduled Changes to Overtime Regulations*, http://cbo.gov/publication/51925 (Nov. 14, 2016) (estimating a $1 billion loss to the businesses if the new Rule goes into effect).

Finally, as noted above, DOL's new Rule impermissibly seeks to increase the salaries of white collar employees as a whole through the improper device of inflating the minimum salary threshold. This violates the *State Farm* test for arbitrary and capricious agency action by relying on a factor that Congress did not intend the agency to consider. 463 U.S. at 43.

### III. THE AUTOMATIC ESCALATOR EXCEEDS DOL'S AUTHORITY UNDER THE FLSA AND THE APA.

Plaintiffs argued in their Motion (21-26) that DOL's automatic indexing provision in the New Overtime Rule exceeds DOL's authority under the Act, because the Department has no authority under the FLSA to put adjustments to the minimum salary threshold on automatic pilot, and because DOL may not adjust the minimum salary thresholds without complying with the notice-and-comment requirements of the Administrative Procedure Act.

In response, DOL argues (Opp. at 26-30) that its 2004 view on this issue was wrong and

12

that it may set adjustments to the salary threshold on autopilot because Congress has failed to expressly *prohibit* the use of an escalator in 29 U.S.C. § 213(a)(1). Construing the lack of an express prohibition as implicit authorization, *see* 81 Fed. Reg. at 32,431, the DOL remarkably asserts (Opp. at 27) that "it is of no moment" that there is no mention of automatic updating. But as the Fifth Circuit has repeatedly stated, the courts "do not merely presume that a power is delegated if Congress does not expressly withhold it, as then agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Contender Farms*, 779 F.3d at 269 (quoting *Texas v. U.S. Department of the Interior*, 497 F.3d at 502 and *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (*en banc*)).

Plaintiffs demonstrated that Congress clearly knows how to expressly authorize escalators when that is what it wants, including in the labor context. *See, e.g.*, 29 U.S.C. § 1083(c)(7)(D)(vii) (indexing amount of excess employee compensation related to "minimum funding standards for single-employer defined benefit pension plans"); *see also* 16 U.S.C. § 497c(b)(3) (indexing ski area permit rental charges); 43 U.S.C. § 1337(a)(3)(C)(vii) (indexing oil and gas leases). But neither 29 U.S.C. § 213(a)(1) specifically, nor the FLSA generally, provide indexing for wage rates. As previously noted, Congress has not indexed the minimum wage, 29 U.S.C. § 206, the hourly wage for computer employees, 29 U.S.C. § 213(a)(17), or the annual compensation for "nonprofit parents," 29 U.S.C. § 213(b)(24). Defendants' Opposition offers no response to these statutes, except to say tautologically that they do not specifically address the minimum salary threshold—which the Defendants concede may not be found anywhere in the FLSA—that they invented to implement Section 213(a)(1).

The Defendants remaining arguments (Opp. at 30-34) that they may forego notice-and-

comment rulemaking fare no better. Since the FLSA was enacted, each time that DOL has adjusted the overtime regulations, it has done so by notice-and-comment rulemaking. But in an unprecedented move, this Department purports to set in stone an automatic adjustment bereft of normal administrative procedure; because the DOL thinks (Opp. at 32) that it takes too much time to follow the APA. But the APA's notice and comment provisions must be followed regardless whether an agency finds them inconvenient. *See U.S. Steel Corp. v. EPA*, 595 F.2d 207, 214 (5th Cir. 1979) (discussing 5 U.S.C. § 553(b)(B)). Any increase in the salary level must be based upon the comments submitted and the actual facts and information at the time of the increase. *Id*. The DOL cannot lawfully put the salary level on autopilot and effectively immunize itself, in the absence of any authorization from the FLSA, from the procedural obligations of the APA. *See UARG*, 134 S. Ct. at 2446 ("[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.").

Finally, Defendants also miss the mark in suggesting (Opp. at 33) that Plaintiffs' challenge to the escalator provision is not ripe. By including the escalator provision in the Rule, Defendants have adopted a final agency position that future adjustments to the salary threshold will be conducted without notice and comment. That inability to comment on any future adjustments imposes a procedural injury that applies to Plaintiffs and their members now and every day in the future. And that current injury creates a ripe dispute. *See Texas v. United States*, 497 F. 3d 491, 499 (5th Circ. 2007) (finding ripeness where Texas claimed that an Interior Department regulations set up an inadequate process for issuing gaming licenses to Indian tribes because "Texas claims present injury from submission to an invalid agency process, regardless whether the Secretary ultimately allows gaming on [tribal] land").

In all events, even if one ignores the current procedural disability imposed on Plaintiffs

by the Rule, prudential reasons still warrant review now. Plaintiffs' challenge to the adjustment provision is purely legal and is closely related to the other, indisputably ripe, claims in this case. *Cf. Texas*, 497 F. 3d at 499 (finding prudential ripeness factors met where the challenged rules were "final agency action" "promulgated through a formal, notice-and-comment rulemaking process," where "[a]dditional fact-finding would not aid our inquiry into the purely legal question of their validity," and were "resolution of this issue now will give both the Secretary and Congress significant guidance into how [the provisions] may be administered").

## CONCLUSION

For each of the reasons set forth above and in Plaintiffs' Motion, the Business Plaintiffs respectfully request that the Court grant their motion for expedited summary judgment, hold the new Overtime Rule unlawful, and vacate and set aside the Rule under 5 U.S.C. § 706.

Dated: November 21, 2016

Respectfully submitted,

*/s/ Robert F. Friedman*
Robert F. Friedman
Texas Bar No. 24007207
**LITTLER MENDELSON, PC**
2001 Ross Avenue, Suite 1500
Dallas, Texas 75201-2931
Tel: (214) 880-8100
Fax: (214) 880-0181
rfriedman@littler.com

*/s/ Maurice Baskin*
Maurice Baskin, DC Bar No. 248898*
Tammy McCutchen, DC Bar No.591725
**LITTLER MENDELSON, PC**
815 Connecticut Ave., NW
Washington, DC 20036
Tel: (202) 772-2526

15

mbaskin@littler.com  
tmccutchen@littler.com

*pro hac vice*  
**ATTORNEYS FOR THE PLAINTIFFS**

Of Counsel:

Steven P. Lehotsky  
Warren Postman  
**U.S. CHAMBER LITIGATION CENTER**  
1615 H Street, NW  
Washington, DC 20062  
Tel: (202) 463-4337  
slehotsky@uschamber.com  
wpostman@uschamber.com

*Attorneys for Plaintiff Chamber of Commerce*  
*of the United States of America*

Linda E. Kelly  
Patrick N. Forrest  
Leland P. Frost  
**MANUFACTURERS' CENTER FOR LEGAL ACTION**  
733 10th Street, NW, Suite 700  
Washington, DC 20001  
(202) 637-3000

*Attorneys for Plaintiff the National*  
*Association of Manufacturers*

Karen R. Harned  
Elizabeth Milito  
**NFIB SMALL BUSINESS LEGAL CENTER**  
1201 F Street, NW, Suite 200  
Washington, DC 20004  
(202) 314-2048

*Attorneys for Plaintiff National Federation*  
*of Independent Business*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2016, a copy of the foregoing Motion for Summary Judgment was filed electronically via the Court's ECF system, which effects service upon counsel of record.

<u>/s/Robert Friedman</u>