# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STATE OF NEVADA, *et al.*, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00731 |
| | § | Judge Mazzant |
| UNITED STATES DEPARTMENT OF | § | |
| LABOR, *et al.*, | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Non-Party Chipotle Mexican Grill, Inc. and Non-Party Chipotle Services, LLC's (collectively "Chipotle") Motion for Contempt (Dkt. #89). After reviewing the relevant pleadings and motion, the Court finds that the motion should be granted.

## BACKGROUND

Congress passed the Fair Labor Standards Act ("FLSA") in 1938. The FLSA mandates that employees earn no less than the federal minimum wage for every hour worked. Employees must also earn one and one-half times their regular pay for each hour worked beyond a forty-hour week. When enacted, the FLSA had several exemptions to the overtime requirement. Specifically, anyone employed in a bona fide executive, administrative, or professional capacity was exempt from the minimum wage and overtime requirements. 29 U.S.C. § 213. This is often referred to as the "white collar" or "EAP" exemption.

At passage, Congress did not define "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213. Rather, the FLSA empowered the Secretary of Labor to define these terms through regulations. The Secretary of Labor further permitted the Department of Labor (the "DOL") to issue regulations interpreting the EAP exemption.

In March 2014, President Obama directed the DOL to revise the FLSA's overtime exemption for "executive, administrative, and professional employees." Memorandum on

Updating and Modernizing Overtime Regulations, 2014 DAILY COMP. PRES. DOC. 201400165 (Mar. 13, 2014). The DOL announced its plan to revise Code of Federal Regulations Title 29 Part 541 to increase exempt employees' salaries from $455 per week ($23,660 annually) to $921 per week ($47,892 annually) (the "Final Rule"). Soon after, a collection of states ("State Plaintiffs") filed suit against the DOL, the DOL's Wage and Hour Division, and their agents, challenging the validity of the Final Rule. On October 12, 2016, the State Plaintiffs moved for emergency preliminary injunctive relief. The Court issued a preliminary injunction against the Final Rule on November 22, 2016, holding the DOL likely lacked statutory authority to enact the Final Rule and the Final Rule would cause irreparable harm if implemented on December 1, 2016 (the "Court's Order" or the "Injunction"). The Court's Order read as follows:

> [T]he Court has authority to enjoin the Final Rule on a nationwide basis and decides that it is appropriate in this case, and therefore **GRANTS** the State Plaintiffs' Emergency Motion for Preliminary Injunction (Dkt. #10).
> Therefore, the Department's Final Rule described at 81 Fed. Reg. 32,391 is hereby enjoined. Specifically, Defendants are enjoined from implementing and enforcing the following regulations as amended by 81 Fed. Reg. 32,391; 29 C.F.R. §§ 541.100, 541.200, 541.204, 541.300, 541.400, 541.600, 541.602, 541.604, 541.605, and 541.607 pending further order of this Court.

(Dkt. #60 at pp. 19–20) (emphasis in original).[1] Six months later, Carmen Alvarez ("Alvarez") sued Chipotle under the FLSA and New Jersey State Wage and Hour Law, alleging Chipotle ignored the Final Rule by not paying her proper overtime wages. Alvarez claimed to bring suit on behalf of herself and others "similarly situated" so as to certify an FLSA collective action and class

---

[1] On December 1, 2016, the DOL and others filed a notice of appeal with the Fifth Circuit regarding the Court's Order. The Court granted Plaintiffs' Motion for Expedited Summary Judgment (Dkt. #35) on August 31, 2017, invalidating the Final Rule. On September 6, 2017, the Fifth Circuit Court of Appeals denied as moot a joint motion to continue oral argument and a joint motion to stay further proceedings. The Fifth Circuit granted the DOL's and others' motion to dismiss the appeal of the Injunction per Federal Rule of Appellate Procedure 42 on September 6, 2017. The DOL and others filed an appeal of the Court's Summary Judgment Order with the Fifth Circuit on November 2, 2017, and the Fifth Circuit granted the DOL's and others' unopposed motion to stay the case pending the outcome of the new rulemaking on November 6, 2017.

action under Federal Rules of Civil Procedure 23(a) and (b)(3). Alvarez's counsel—Joseph Sellers ("Sellers") and Miriam Nemeth ("Nemeth") of Cohen Milstein Sellers & Toll PLLC, Justin Swartz ("Swartz") and Melissa Stewart ("Stewart") of Outten & Golden LLP, and local counsel Glen Savits ("Savits") (the "Lawyers")—acknowledged the Injunction in Alvarez's complaint but stated it did not apply to them or to their client:

> 32. Although it preliminarily enjoined the Department of Labor from implementing and enforcing the Overtime Rule, the Eastern District of Texas did not stay the effective date of the Rule or otherwise prevent the Rule from going into effect. Therefore, as a rule duly promulgated pursuant to the requirements of the APA, the Rule went into effect on December 1, 2016.

> 33. Because the Eastern District of Texas's preliminary injunction was limited to implementation and enforcement of the Overtime Rule by the Department of Labor and its officials, it did not affect the ability of persons not party to the *Nevada* case, including Plaintiff and similarly situated employees, to bring private lawsuits pursuant to the FLSA's private cause of action, 29 U.S.C. § 216(b), to enforce their right to overtime pay under the Rule, nor did it prevent non-parties from bringing lawsuits under state law.

(Dkt. #89, Exhibit 1 at pp. 13–14). This is the second lawsuit in which one of Alvarez's counsel—Swartz—has argued that this Court's Injunction of the Final Rule does not apply to him or to his client. In the United States District Court for the District of Massachusetts, Swartz also ignored this Court's Order[2]:

> 107. On November 22, 2016, the United States District Court for the Eastern District of Texas issued an injunction in *Nevada v. United States Dep't of Labor*, No. 16 Civ. 731, 2016 WL 6879615, at *9 (E.D. Tex. Nov. 22, 2016) that enjoined only the U.S. Department of Labor from "implementing and enforcing" the amended versions of, *inter alia*, 29 C.F.R. §§ 541.100 and 541.200.[3]

---

[2] The United States District Court for the District of Massachusetts entered an order to stay proceedings for mediation of the lawsuit on June 6, 2017. That Court issued subsequent orders continuing the stay of proceedings for the parties to finalize their proposed mediated resolution on September 1, 2017, November 2, 2017, December 18, 2017, January 4, 2018, January 22, 2018, January 25, 2018, and February 1, 2018. On February 5, 2018, the plaintiffs in that case filed Plaintiffs' Unopposed Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs.

[3] On May 22, 2017, Sellers and Nemeth filed Motions for Leave to Appear Pro Hac Vice in the Massachusetts matter (Dkt. #89, Exhibit 1 at p. 219). On May 23, 2017, the Massachusetts Court granted their motions (Dkt. #89, Exhibit 1 at p. 219).

(Dkt. #89, Exhibit 1 at p. 205).  On August 1, 2017, Chipotle filed its Motion for Contempt against Alvarez and the Lawyers (collectively "Respondents") (Dkt. #89).  On August 2, 2017, Chipotle filed a Motion for Judicial Notice regarding its Motion for Contempt (Dkt. #96).  On September 25, 2017, Chipotle filed its Addendum to Motion for Judicial Notice (Dkt. #112).  On September 18, 2017, Respondents filed their Response (Dkt. #107).  On September 25, 2017, Chipotle filed its Reply (Dkt. #113).  On October 9, 2017, Respondents filed their Sur-reply (Dkt. #118).  On November 6, 2017, the Court held a hearing on Chipotle's Motion for Contempt and Motion for Judicial Notice.  Respondents filed supplemental briefing on November 8, 2017 (Dkt. #122) and Chipotle responded to that supplemental briefing on November 10, 2017 (Dkt. #123).  On November 17, 2017, Respondents filed a Motion to Supplement the Record with several affidavits (Dkt. #125).  On November 22, 2017, Chipotle responded in opposition to the Motion to Supplement the Record (Dkt. #126).

## LEGAL STANDARD

To succeed on a motion for contempt, the movant must show by clear and convincing evidence that: (1) a court order was in effect; (2) the order required or prohibited certain conduct by the respondent; and (3) the respondent did not comply with the court's order.  *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004); *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999).  "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order."  *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).

## ANALYSIS

Chipotle moves for contempt, contending that Respondents sued to enforce the Final Rule in violation of the Court's Order.  Respondents counter that (I) the Court has no jurisdiction over

them, (II) Respondents did not violate the Court's Order as the Order did not apply to them, and (III) if the Court does hold Respondents in contempt, it should spare the junior Lawyers—Savits, Nemeth, and Stewart—from sanctions. The Court will address each argument in turn.

## I. The Court Has Jurisdiction over Respondents

Respondents were not parties to the original action giving rise to the Court's Order. Respondents claim that the Court has no jurisdiction over them since (A) they lacked notice of the Court's Order, (B) the first-filed doctrine precludes the Court's jurisdiction, and (C) they did not receive sufficient service and were prejudiced by insufficient process. Conversely, Chipotle claims that the Court has personal jurisdiction over any party with sufficient notice of the Court's Order who subsequently defies the Court's Order. The Court will address each of these arguments separately.

### A. Respondents Had Notice of the Order

"Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order." *Waffenschmidt v. McKay*, 763 F.2d 711, 714 (5th Cir. 1985).

Respondents had notice of the Court's Order. In actions before the District Court for the District of New Jersey and the District Court for the District of Massachusetts, some or all of Respondents recognized the Injunction. When filing suit in the United States District Court for the District of Massachusetts, one of the Respondents—Swartz—acknowledged the Court's Order:

> 107. On November 22, 2016, the United States District Court for the Eastern District of Texas issued an injunction in *Nevada v. United States Dep't of Labor*, No. 16 Civ. 731, 2016 WL 6879615, at *9 (E.D. Tex. Nov. 22, 2016) that enjoined only the U.S. Department of Labor from "implementing and enforcing" the amended versions of, *inter alia*, 29 C.F.R. §§ 541.100 and 541.200.

(Dkt. #89, Exhibit 1 at p. 205). Further, Respondents acknowledged the Court's Order when filing the following in the United States District Court for the District of New Jersey:

> 32. Although it preliminarily enjoined the Department of Labor from implementing and enforcing the Overtime Rule, the Eastern District of Texas did not stay the effective date of the Rule or otherwise prevent the Rule from going into effect. Therefore, as a rule duly promulgated pursuant to the requirements of the APA, the Rule went into effect on December 1, 2016.

(Dkt. #89, Exhibit 1 at p. 13). These pleadings prove that Respondents had notice of the Court's Order.

### B. The First-Filed Doctrine Does Not Apply

Respondents claim that the first-filed doctrine locks this litigation in the District of New Jersey. Chipotle counters that the first-filed doctrine does not apply since the contempt proceeding before the Court is distinct from the lawsuit in New Jersey.

A court must defer to the first-filed action when there is a substantial overlap between that action and the subsequently filed action before it. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997). Respondents sued to recover overtime wages based on the criteria in the Final Rule in New Jersey. Here, Chipotle asks the Court to punish Respondents for violating the Court's Order (Dkt. #89). The first lawsuit concerns employment law. The second lawsuit concerns contempt of the Court's Order. As the substantive issues of these cases do not overlap, the first-filed doctrine does not preclude the Court's jurisdiction in the instant action. *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (explaining that if two cases in different courts "overlap on the substantive issues, the cases [should] be . . . consolidated in . . . the jurisdiction first seized of the issues."); *accord Waffenschmidt*, 763 F.2d at 716.

## C. Chipotle Alerted Respondents of Its Contempt Motion Through Sufficient Process

Respondents argue that the Court has no jurisdiction over them because Chipotle did not alert them to the contempt proceeding through sufficient process. Chipotle counters that process was sufficient.

"[W]hen it is sought to charge a person with contempt who was not a party to the original action and thus not already within the jurisdiction of the court, that party must be served with process as in any other civil action." 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2960 at 589 (3d ed. 2017); *accord McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995) (vacating a sanction order where the district court never issued "a show cause [order] or similar order or process that would have put [the contemnor] on notice that sanctions were being considered against him personally"); *see also Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 340–41 (5th Cir. 2015); *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.,* 799 F.3d 437, 456 (5th Cir. 2015).

Under civil process requirements, the moving party must serve a summons on the alleged contemnor. The summons must:

    (A) name the court and the parties;

    (B) be directed to the defendant;

    (C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;

    (D) state the time within which the defendant must appear and defend;

    (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;

    (F) be signed by the clerk; and

    (G) bear the court's seal.

FED. R. CIV. P. 4(a).  To satisfy service requirements, the moving party must satisfy several criteria:

> (1) ***In General.***  A summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)[4] and must furnish the necessary copies to the person who makes service.
>
> (2) ***By Whom.***  Any person who is at least 18 years old and not a party may serve a summons and complaint.
>
> (3) ***By a Marshal or Someone Specially Appointed.***  At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.  The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.

FED. R. CIV. P. 4(c).  If a movant substantially complies with Rule 4, however, a defendant must show actual prejudice, or the defense of insufficient process is waived.  *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 901 (11th Cir. 1990); *Warfield v. Byron*, 137 F. App'x 651, 656 n.10 (5th Cir. 2005); *Pharmerica, Inc. v. DSJ Healthcare, Inc.*, No. 4:99-CV-242, 2010 WL 4962974, at *3 (E.D. Tex. Oct. 22, 2010), *report and recommendation adopted*, 2010 WL 4955724 (E.D. Tex. Dec. 1, 2010) ("Defects in the summonses 'are not fatal if they do not prejudice the defendant.'") (quoting *Warfield*, 137 F. App'x at 655).

Though Respondents rely heavily on *McGuire*, its holding does not fit the facts at bar.  In *McGuire*, the alleged contemnor—an in-house counsel sanctioned for destroying documents

---

[4]      Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

FED. R. CIV. P. 4(m).

allegedly responsive to a discovery request—was sanctioned without receiving any form of process. *McGuire*, 48 F.3d at 907. There, the alleged contemnor was not a party to the case, an alter ego of a party, an attorney in the case, or a member of the sanctioning district court's bar. *Id.* The district court also never issued a show cause order or similar order or process that would have put the alleged contemnor on notice that he personally faced sanctions. *Id.* Here, Chipotle's repeated efforts to serve Respondents starkly diverge from the facts in *McGuire*, rendering its holding wholly inapposite and utterly unavailing. The history of this proceeding shows that Chipotle substantially complied with process requirements and Respondents were not prejudiced by the imperfect process.

Chipotle filed its Motion for Contempt with the Court on August 1, 2017 (Dkt. #89). On August 21, 2017, Chipotle attempted to serve Swartz at his office (Dkt. #113, Exhibit 8 at p. 4). After Swartz allegedly refused to accept service, Chipotle's process server left a copy of the Proposed Order Granting Chipotle's Motion for Contempt, Motion for Judicial Notice, Proposed Order Granting Chipotle's Motion for Judicial Notice, Motion for Contempt, and Exhibits with a security guard of "suitable age and discretion" on the premises (Dkt. #113, Exhibit 8 at p. 4). Chipotle's process server inferred that Swartz was deliberately fleeing service:

> CALLED [SWARTZ] AT 212-245-1000. SPOKE TO A FEMALE WHO STATED THAT JUSTIN WILL NOT COME DOWNSTAIRS TO ACCEPT DOCUMENTS AND THAT NO ONE FROM THE OFFICE WILL COME DOWN TO ACCEPT SERVICE ON HIS BEHALF. I FEEL HE IS EVADING SERVICE.

(Dkt. #113, Exhibit 8 at p. 4). After Chipotle could not serve Respondents with process on August 21, 2017, it emailed Respondents to address the process issue. On August 24, 2017, Chipotle's counsel emailed Respondents informing them that "Chipotle is moving forward with service of the contempt motion, accompanying exhibits and proposed orders, and notice of hearing."

(Dkt. #113, Exhibit 7 at p. 4). Chipotle's counsel added that "I am confirming that none of you are willing to waive and accept service of these papers in your individual capacities or on behalf of Ms. Alvarez." (Dkt. #113, Exhibit 7 at p. 4). Thereafter, Chipotle's counsel informed Respondents that if Chipotle had to effect personal service, it would seek the fees and costs incurred in doing so pursuant to Federal Rule of Civil Procedure 4(d)(2) (Dkt. #113, Exhibit 7 at p. 4).

Chipotle also mailed to the Respondents notification of the Motion for Contempt, related filings, and notice of hearing set for August 17, 2017 (Dkt. #113, Exhibit 7 at pp. 346–48). This notification included a request to waive service of process (Dkt. #113, Exhibit 7 at pp. 346–48).

Chipotle's attempted notice was effective. Upon learning of the motion for contempt, Sellers deemed it "regrettable" that the company "has mounted a frivolous attack on [Alvarez] and her lawyers" rather than defending the New Jersey lawsuit. Sellers so elaborated in a Law360 article:

> Rather than defend against the FLSA claims in the New Jersey court in which they are pending, Chipotle has rushed to a forum of its choice to argue that a preliminary injunction issued in the [Eastern District of] Texas that applies solely to the Department of Labor has barred the plaintiffs from proceeding with a wholly independent private claim against the company. Chipotle should pay its workers for the overtime they've earned rather than engaging in these legal gymnastics.

(Dkt. #113, Exhibit 6 at p. 4). Respondents have not shown that they were actually prejudiced by the imperfect service of process. At each and every step of this contempt proceeding, Chipotle sent notice to Respondents of the ensuing developments in the litigation. This notice permitted Respondents to repeatedly contest Chipotle's contempt motion through briefs and in a contempt hearing before the Court. In turn, Respondents enjoyed substantially compliant service and suffered no prejudice. Thus, the Court has jurisdiction over Respondents.

## II.    Motion for Contempt

To succeed on a motion for contempt, the movant must show by clear and convincing evidence that: (A) a court order was in effect; (B) the order required or prohibited certain conduct by the respondent; and (C) the respondent did not comply with the court's order.  *City of Jackson*, 359 F.3d at 731; *Piggly Wiggly Clarksville, Inc.*, 177 F.3d at 382.

### A.  The Court Order Was in Effect

The Court must first determine whether the Injunction was in effect.  *City of Jackson*, 359 F.3d at 731.  It is undisputed that the Court's Order was in effect and forbade enforcement of the Final Rule when Alvarez filed suit in New Jersey.  Thus, the first element of the contempt test is met.

### B.  The Order Required or Prohibited Certain Conduct by Respondents

In this instance, because Respondents are non-parties to the original injunction proceeding, the Court must decide whether the Injunction applied to and prohibited Respondents' conduct.  *City of Jackson*, 359 F.3d at 731.  Respondents claim that since they were not acting in privity with the DOL, the Injunction against the Final Rule did not bind them, and, thus, they were not prohibited from bringing suit in New Jersey.  Respondents also claim that the Injunction was ambiguous and did not clearly enjoin the Final Rule's enforcement by non-parties.  Chipotle argues that Respondents identified in interest with the DOL by suing to enforce the Final Rule (Dkt. #113 at p. 8).[5]  Finally, Chipotle avers that the Injunction "could not be clearer."  (Dkt. #113 at p. 11).

---

[5] Chipotle initially claimed that Respondents acted in privity with the DOL because the DOL represented their interest to enforce the Final Rule in the original injunction proceeding before the Court (Dkt. #89 at p. 14).  Chipotle later withdrew this argument.  As will be explained, the privity analysis is similar to identifying in interest.  Accordingly, the Court will analyze whether Respondents acted in privity with the DOL.

### i. Respondents Acted in Privity with the DOL

An injunction binds not only "the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945).[6] "The concept of privity, however—both in preclusion doctrine *and* in the law of injunctions—is ultimately bounded by due process, which starts from a 'presumption that each person has a right to her day in court.'" *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 849 (7th Cir. 2010) (emphasis in original) (quoting Martin H. Redish & William J. Katt, *Taylor v. Sturgell, Procedural Due Process, and the Day-In-Court Ideal: Resolving the Virtual Representation Dilemma*, 84 Notre Dame L. Rev. 1877, 1881 (2009)).

> [Privity] represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to bind the nonparty to the injunction . . . An injunction may not extend to persons who act independently and whose rights have not been adjudged according to law. A similar requirement governs when res judicata may bind a nonparty to a prior judgment.

*ADT LLC v. Northstar Alarm Servs., LLC,* 853 F.3d 1348, 1352 (11th Cir. 2017) (quotations omitted). The similar privity requirements to bind a non-party to an injunction and non-party preclusion arise from similar policy concerns. "By preventing relitigation of issues, res judicata conserves judicial time and resources. It also supports several private interests, including avoidance of substantial litigation expenses, protection from harassment or coercion by lawsuit, and avoidance of conflicting rights and duties from inconsistent judgments." *Sw. Airlines Co. v. Tex. Int't Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977) (footnotes omitted). Indeed, "[i]f courts

---

[6] *See also Harris Cty. v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 313 (5th Cir. 1999); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995); *United States v. Jenkins*, 974 F.2d 32, 36 (5th Cir. 1992); *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992); *Waffenschmidt*, 763 F.2d at 717; *Prof'l Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cty. Cmty. Coll. Dist.*, 730 F.2d 258, 274 (5th Cir. 1984); *United States v. Hall*, 472 F.2d 261, 264 (5th Cir. 1972); *Power-One, Inc. v. Artesyn Tech., Inc.*, 2008 WL 1746636, at *2 (E.D. Tex. Apr. 11, 2008).

could second guess another court each time a new litigant, dissatisfied with the previous judgment, filed a new complaint, the respect of the previous parties or of the public toward the courts would inevitably decrease." *Id.* at 101.

A non-party achieves privity with a party in a prior lawsuit in three situations:

First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party . . . Second, a nonparty who controlled the original suit will be bound by the resulting judgment . . .Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit . . .

*Benson & Ford, Inc. v. Wanda Petrol. Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987) (quoting *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985)). The first and second situations are inapplicable to this case. However, Respondents "may be bound by a judgment because [they were] adequately represented by someone with the same interests who [wa]s a party to the suit." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2010) (quotations omitted). Thus, the Court must determine whether the DOL adequately represented Respondents.

"[T]he proposition that governments may represent private interests in litigation, precluding relitigation, is clear." *Sw. Airlines Co.*, 546 F.2d at 98 (finding res judicata applied to private actors seeking to enforce a previously enjoined ordinance because a government entity adequately represented the interests of those private actors to enforce the same ordinance). "'Privity' has come to be 'seen as a descriptive term for designating those with a sufficiently close identity of interests' to justify application of nonparty claim preclusion . . . or the enforcement of an injunction against a nonparty." *Nat'l Spiritual Assembly of Baha'is*, 628 F.3d at 849 (quoting *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998)); *Warren v. Mort. Elec. Registration Sys., Inc.* 616 Fed. Appx. 735, 737 (5th Cir. 2015) (finding privity and noting that "nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships

between the person to be bound and a party to the judgement.").  Thus, privity has "come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground," including being bound by an injunction.  *Taylor*, 553 U.S. at 894 n.8; *see also Sw. Airlines Co.*, 546 F.2d at 95.

This case presents facts similar to *Southwest Airlines Co. v. Texas International Airlines, Inc.* ("*Southwest Airlines*").  In *Southwest Airlines*, the Civil Aeronautics Board ("CAB") issued an Order in 1964, mandating that the City of Dallas and the City of Fort Worth (the "Cities") designate a single airport for CAB-approved commercial air service in their region.  *Id.* at 87.  The Cities agreed to build a new airport midway between them, now known as Dallas/Fort Worth International Airport ("DFW").  *Id.*  To execute this plan, the Cities adopted the 1968 Regional Airport Concurrent Bond Ordinance (the "1968 Ordinance").  *Id.*  The 1968 Ordinance provided for the phasing-out of commercial passenger air travel at Love Field Airport ("Love Field") and the relocation of airlines to DFW.  *Id.*

In 1971, Southwest Airlines ("Southwest") started offering intrastate commercial air service from Love Field under a certificate issued by the Texas Aeronautics Commission ("TAC").  *Sw. Airlines Co.*, 546 F.2d at 96.  In 1972, the City of Dallas, the City of Fort Worth, and the DFW Airport Board sought a declaratory judgment of their right to exclude Southwest from Love Field.  *Id.*; *see City of Dallas v. Sw. Airlines Co. (Southwest I)*, 371 F. Supp. 1015, 1019 (N.D. Tex. 1973).  Southwest counterclaimed, seeking a declaration of its right under federal and state law to stay at Love Field and an injunction to protect that right.  *Id.*  In *Southwest I*, "[t]he issue concerned the relative authority of the TAC and the City of Dallas to control access to Love Field."  *Sw. Airlines Co.*, 546 F. 2d at 92.

On May 11, 1973, the court entered an order, declaring that the Cities and the DFW Airport Board could "not lawfully exclude [Southwest] from the use of Love Field, Dallas, Texas, and its airport facilities so long as Love Field remains open." *Southwest I*, 371 F. Supp. at 1035. The court found that issuing an injunction was unnecessary because it was "confident that Plaintiffs will abide by its ruling in this case and not attempt to interfere with or burden Southwest's right to use Love Field." *Id*.

Next, the CAB-Carriers filed claims to enforce the 1968 Ordinance against Southwest in state court. *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 396 F. Supp. 678, 679 (N.D. Tex. 1975). Southwest filed another suit in federal court to enjoin the re-litigation in state court to enforce the 1968 Ordinance by the CAB-Carriers; the City of Fort Worth, Texas; the City of Dallas, Texas; and the DFW Airport Board. *Id*. The court enjoined the re-litigation in state court, holding that the CAB-Carriers were in privity with the Cities and the DFW Airport Board. *Id*. at 686. The court explained:

> This court is of the opinion that under the doctrines of 'virtual representation', 'res judicata', 'collateral estoppel', by whatever label we call it ('that which we call a rose—by any other name would smell as sweet'), and the facts of this case, plaintiff Southwest is entitled to an injunction enjoining and restraining defendants from relitigating in state court or in any other court action the validity, effect or enforceability of the [1968 Ordinance].

*Id*. On Appeal, the Fifth Circuit explained the issue:

> An injunction to protect a federal judgment can restrain only those bound by the judgment. Because [the CAB-Carriers] did not appear as parties in *Southwest I*, they now argue that the holding of that case cannot preclude them from relitigating issues there decided. They present the question whether the 1968 [O]rdinance can be enforced by private parties against Southwest after a federal court has held public enforcement of the ordinance invalid.

*Sw. Airlines Co.*, 546 F.2d at 94. In resolving the dispute, the Fifth Circuit relied upon Restatement of the Law Second–Judgments's system of preclusion, noting it "establishes a category of cases in

which 'an agency's authority to maintain or defend litigation . . . should be construed as preempting the otherwise available opportunity of the individual or members of the public to prosecute." *Id.* at 99. The Fifth Circuit noted that:

> [U]nder the Restatement Second system of preclusion, a private party must show more than a special pecuniary interest when attempting to vindicate the breach of a public duty already litigated by a government agency. Permission to relitigate appears reserved for the private plaintiff who would vindicate a breach of duty owed specifically to the plaintiff or who would recover under a "statutory system of remedies (that) may contemplate enforcement of private interests both by a public agency and the affected private parties."

*Id.* (quoting Restatement (Second) of Judgments § 85 (Am. Law. Inst. 1975)). The Fifth Circuit reasoned that the facts at bar fit the second category of the Restatement:

> First, [the CAB-Carriers] do not claim a breach of legal duty by Southwest, apart from the alleged violation of the general duty to obey valid ordinances. Second, [the CAB-Carriers] request the same remedy denied the City of Dallas, namely the enforcement of the phase-out provision of the [1968 Ordinance] to exclude Southwest from Love Field. Third, the [1968 Ordinance] does not establish a statutory scheme looking toward private enforcement of its requirements. Because legal interests of [the CAB-Carriers] do not differ from those of Dallas in *Southwest I*, we hold that they received adequate representation in the earlier litigation and should be bound by the judgment in that litigation.

*Id.* The Fifth Circuit found that privity existed because:

> Dallas, as a government, represented . . . the only legal interests [the CAB-Carriers] possess regarding enforcement of the . . . 1968 [O]rdinance against Southwest. In other words, the relationship between the city as public enforcer of the [1968 Ordinance] and the airlines as private enforcers [was] close enough to preclude relitigation.

*Id.* at 98. Thus, The Fifth Circuit found that "[i]n their attempt to apply the [1968 Ordinance] to Southwest, [the CAB-Carriers] assume[d] the role of private attorneys-general." *Id.* at 97.

Relevant to the facts at bar, the Fifth Circuit disagreed with the CAB-Carriers' argument that they were not in privity with the City of Dallas because "the interests of the cities in *Southwest I* differ[ed] from the pecuniary interests of [the CAB-Carriers]." *Id.* at 102. Nevertheless, the

Fifth Circuit found that the "pecuniary interest of the airlines [was] *legally immaterial* to the judgment of *Southwest I* as affirmed by this Court." *Id.* at 102 (emphasis added). The Fifth Circuit explained that disregarding the CAB-Carriers' pecuniary interest under the Restatement of Law Second–Judgments's approach promoted the policies of res judicata and, thus, of privity:

> To allow relitigation by any private litigant with a pecuniary interest in the success of the new airport would open the door to recurrent, burdensome litigation. Besides [the CAB-Carriers], all of the individuals and companies that provide goods and services at the new airport have a pecuniary interest, distinct from that of the general public, not only in the ultimate survival of the facility, but also in the volume of air traffic attracted to the airport. More planes means more passengers, more sales, more jobs, more profits for all of the businesses involved. Furthermore, a pecuniary interest could be claimed by investors, developers, hotels, restaurants, and other retail interests attracted to the vicinity by the new facility. Even the businesses at or near Love Field could claim a similar, although converse, interest.

*Id.* at 100–01. The Fifth Circuit explained that a court looks to "the congruence of the legal interests of the parties and non-parties not to their financial stake in the litigation." *Id* at 102.

The DOL declared that it represented the rights of employees like Alvarez in the original injunction proceeding before the Court. In opposing the Injunction, the DOL warned that enjoining the Final Rule would trample the public interest:

> [B]locking this particular regulation would have a profoundly harmful impact on the public. More than *four million workers* in Fiscal Year 2017 meet the duties test and have a weekly salary of more than $455 but earn below the 40th earnings percentile in the South; staying the Final Rule *would deprive these workers* of the protections that Congress intended they receive on the basis of an outdated and less effective salary level—one that has not been updated in over a decade.

(Dkt. #37 at p. 56) (emphasis added). The DOL adequately represented the interests of employees like Alvarez when advocating for the validity and enforceability of the Final Rule in the original injunction proceeding. That proceeding resulted in the Court enjoining the Final Rule on a nationwide basis and enjoining the DOL from enforcing the Final Rule (Dkt. #60 at pp. 19–20). In turn, the Injunction can be read to say, "the Court has authority to enjoin the Final Rule on

a nationwide basis and decides that it is appropriate in this case . . . . Specifically, [the DOL, which represented all employees regulated by federal minimum wage laws, is] enjoined from . . . enforcing [the Final Rule.]" (Dkt. #60 at pp. 19–20). If the DOL had prevailed in the original injunction proceeding, the Final Rule would have been deemed valid and enforced, and Alvarez's cause of action—the recovery of unpaid overtime wages based on the criteria in the Final Rule— would have been unwarranted.[7] Whether or not Chipotle ultimately complied with the Final Rule, the DOL advocated for legal interests congruent to those in Alvarez's lawsuit—the validity and enforceability of the Final Rule. *See Sw. Airlines Co.*, 546 F.2d at 102 (the Fifth Circuit looked to the "congruence of the legal interests of the parties and non-parties" when deciding that the Cities adequately represented the CAB-Carriers). Since the DOL adequately represented Alvarez's legal interests in the original injunction proceeding, Alvarez was in privity with the DOL when she asserted the validity and enforceability of the Final Rule via her lawsuit to recover overtime wages based on the criteria in the Final Rule. As such, the Injunction bound her.

The Fifth Circuit distinguished the facts in *Southwest Airlines* from another case where it found that the federal government did not adequately represent employees' interests in a racial discrimination action against an employer so as to preclude a class action lawsuit for racial discrimination by those employees against the same employer. *Rodriguez v. East Tex. Motor Freight*, 505 F.2d 40 (5th Cir. 1974) *vacated on other grounds,* 431 U.S. 395 (1974). In *Rodriguez*, employees, claiming to have suffered racial discrimination in the workplace, filed a class action lawsuit against their employer and others under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (the "Civil Rights Acts"). *Id.* at 45. Later, the government filed a "pattern and

---

[7] Alvarez's cause of action consisted entirely of her private enforcement of the Final Rule—i.e. suing to recover overtime compensation from Chipotle based on the criteria in the Final Rule (Dkt. #89, Exhibit 1 at pp. 6–11; Dkt. #89, Exhibit 1 at pp. 15–22).

practice" suit under the Civil Rights Act of 1964 against the employer and two unions based on alleged racial discrimination in the workplace. *Id.* at 65. The government and defendants entered into a consent decree, "setting some standards for hiring and establishing hiring ratios" and mandating that the employer furnish "back pay compensation for members of the affected class nationwide." *Id.* Finally, the consent decree gave individual employees who had suffered racial discrimination thirty days to seek individual workplace remedies based on the criteria in the consent decree. *Id.*

The Fifth Circuit found that the government's and employees' respective lawsuits protected different interests. *Id.* at 66. "[T]he Government['s] [suit] protect[ed] general economic interests in addition to the rights of minorities [while the] private plaintiffs represent[ed] only the interests of minority group members." *Id.* at 66. Thus, the consent decree did not preclude litigation of the employees' class action lawsuit. *Id.* at 65.

In *Southwest*, the Fifth Circuit found that the CAB-Carriers' situation:

> Differs from that of the job discrimination victims [in *Rodriguez*] who could claim that under the Civil Rights Acts the employers had breached legal duties owed specifically to them, not just to the general public. Furthermore, in *Rodriguez* and *Williamson* the workers claimed remedies distinct from the relief imposed in the government litigation. In the [suit to enforce the 1968 Ordinance against Southwest], however, [the CAB-Carriers] attempt only to exclude Southwest from Love Field, the remedy already denied the City of Dallas.

*Sw. Airlines Co.*, 546 F.2d at 99. Unlike the Civil Rights Acts, which concern individual welfare and remedies, the FLSA explicitly concerns the general welfare of employees employed in certain industries engaged in American commerce:

> (a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the *maintenance of the minimum standard of living* necessary for health, efficiency, and *general well-being of workers* (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and

19

the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce.

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C. § 202 (emphasis added). This legal axiom explains why Alvarez could cite to no other plaintiff who construed the Injunction in the same way that she did. Moreover, the common knowledge among citizens that the DOL and agencies like it represent the public at large explains the dearth of precedent that factually paralleled this proceeding. Indeed, common sense rather than complex legal analysis told other similarly situated, would-be plaintiffs that the DOL already represented their cause of action in the original injunction proceeding. This scarcity of precedent complicated the Court's contempt analysis but it did not change its result.

Finally, an Injunction binds "the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2)(A)(B)(C). The Injunction bound the Lawyers since they served as Alvarez's attorneys with actual notice of the Injunction. FED. R. CIV. P. 65(d)(2)(B). *See supra* Part I.A.: "Respondents Had Notice of the Order."

### ii. The Injunction Clearly Applied to Alvarez's Actions

Since the Injunction was binding on Alvarez, the Court must determine whether the Injunction clearly prohibited her actions. Alvarez claims that the Injunction did not clearly enjoin

the Final Rule's enforcement by non-parties. Chipotle avers that the Injunction "could not be clearer." (Dkt. #113 at p. 11).

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. First Fin. Grp. of Tex.*, 659 F.2d 660, 669 (5th Cir. 1981). Since there is little precedent on interpreting injunctions, the Court looks to bedrock canons of statutory interpretation when reading the Injunction. "Our precedents make clear that the starting point for our analysis is the statutory text. And where, as here, the words of the statute are unambiguous, the 'judicial inquiry is complete.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).

The Court's Order explained that it had "authority to enjoin the Final Rule on a nationwide basis and decides that it is appropriate in this case." (Dkt. #60 at p. 19). The Court's Order further stated:

> [T]he Department's Final Rule described at 81 Fed. Reg. 32,391 is hereby enjoined. Specifically, Defendants are enjoined from implementing and enforcing the following regulations as amended by 81 Fed. Reg. 32,391; 29 C.F.R. §§ 541.100, 541.200, 541.204, 541.300, 541.400, 541.600, 541.602, 541.604, 541.605, and 541.607 pending further order of this Court.

(Dkt. #60 at pp. 19–20). The Court's Order explained that it enjoined the Final Rule on a "nationwide basis." (Dkt. #60 at p. 19). Given the plain language of the Court's Order, its direct recognition of the Final Rule, and the sheer dearth of parties so confused by the Court's Order,[8]

---

[8] Respondents argue that the Injunction only enjoined the DOL's enforcement of the Final Rule rather than also enjoining the enforcement of the Final Rule itself. Respondents, however, could not name another party to construe the Injunction in the same way, either in their briefing or in the contempt hearing before the Court. Meanwhile, the Court's Order said "the Department's Final Rule described at 81 Fed. Reg. 32,391 is hereby enjoined." (Dkt. #60 at p. 19).

Initially, Respondents simply offered their own highly self-serving interpretation of the Court's Order when arguing that it did not enjoin the Final Rule's enforcement (Dkt. #107 at p. 6). Only in the late stages of this contempt proceeding, and after the contempt hearing itself, did Respondents offer affidavits from several professors, claiming

the Court finds that the Injunction was wholly unambiguous.  As such, the Court's Order clearly applied to Respondents.  Thus, the Injunction prohibited Respondents from suing to enforce the Final Rule.

### C.  Respondents Did Not Comply with the Court's Order

Finally, the Court must determine whether Respondents did not comply with the Court's Order.  Respondents argue that their lawsuit to enforce the Final Rule was not contemptable since it was based on a reasonable, good faith investigation of the Injunction.   Chipotle counters that Respondent's good faith is irrelevant to the Court's contempt analysis.

"Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order."  *Chao*, 276 F.3d at 728; *see also In re Lothian Oil, Inc.*, 531 F. App'x 428, 445 n.15 (5th Cir. 2013); *City of Jackson*, 359 F.3d at 735 n.25; *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980).

Respondents submitted affidavits to show that they relied on the advice of several academics before suing to enforce the Final Rule (Dkt. #125, Exhibits A–D).  These included Professors David C. Vladeck of Georgetown University Law Center (Dkt. #125, Exhibit A), Professor Alan B. Morrison of The George Washington University School of Law (Dkt. #125, Exhibit B), and Professor David Marcus of the University of Arizona Rogers College

---

that they told Respondents that the Court's Order only enjoined the DOL's enforcement of the Final Rule. *See* Section II.C. at pp. 14–15.  The professors' affidavits, however, do not explain how they reached this conclusion.  David C. Vladeck said his interpretation of the Injunction was "based on my legal expertise."  (Dkt. #125, Exhibit A at p. 3). Alan B. Morrison said his interpretation of the Injunction was "[b]ased on my knowledge of civil procedure and administrative and constitutional law, and my professional judgment."  (Dkt. #125, Exhibit B at p. 3).  Finally, David Marcus said his interpretation of the Injunction was "based on my extensive familiarity with the governing legal authorities."  (Dkt. #125, Exhibit C at p. 3).

Given their lack of supporting case law or even a clear explanation for so construing the Injunction, Respondents fail to show that the Court's Order did not enjoin the Final Rule's enforcement or even how it could be understood not to enjoin the Final Rule's enforcement.  Thus, the Court reasonably concludes that the Injunction was unambiguous and Respondents should have known that it applied to them.

of Law (Dkt. #125, Exhibit C) (collectively "the Professors").  In their respective affidavits, the Professors explained that they believed that the Court's Order did not prevent Respondents from suing to enforce the Final Rule (Dkt. #125, Exhibits A–C).  Sellers also submitted an affidavit explaining that he consulted with the Professors before filing suit in New Jersey (Dkt. #125, Exhibit D at p. 3).

Good faith is irrelevant.  *Chao*, 276 F.3d at 728.  The Court's Order enjoined the Final Rule on a nationwide basis (Dkt. #60 at p. 19).  Respondents sued Chipotle to recover overtime wages based on the Final Rule.  As previously discussed, the Injunction clearly prohibited Respondents' actions as their lawsuit necessarily required enforcing the Final Rule.  Since Respondents did not comply with the Court's Order, contempt is proper.

### III.     The Court Will Not Limit the Motion for Contempt to Senior Attorneys

Since contempt is proper, the Court will address Respondents' third argument—the Court should not hold junior attorneys Nemeth, Stewart, and Savits in contempt.  Respondents advance that these attorneys had no decision-making authority in bringing the New Jersey Action.  To that end, Sellers submitted an affidavit to the Court, explaining that Nemeth, an associate at his law firm, had no decision-making authority over bringing Alvarez's claim (Dkt. #125, Exhibit D).  Swartz also submitted an affidavit, claiming that Stewart, an associate at his law firm, had no decision-making authority over bringing Alvarez's claim (Dkt. #125, Exhibit E).  Chipotle counters that this argument is untimely, claiming that "Respondents cannot now, at the final hour, raise new arguments attempting to alleviate Nemeth, Stewart, and Savits from responsibility for their actions." (Dkt. #123 at p. 7).  Chipotle also argues that if the Court does not find these lawyers in contempt, it would allow their pursuit of the New Jersey action.  Further, Chipotle argues that the facts of this case do not support the notion that these lawyers were just following orders.

All five of the Lawyers—Sellers, Swartz, Nemeth, Stewart, and Savits—appeared on the New Jersey Class Action Complaint as "Attorneys for Plaintiff and the Putative Class and Collective." (Dkt. #89, Exhibit 1 at p. 5). At that time, Savits had practiced law for thirty-five years. Savits signed the complaint. Nemeth had practiced law for eight years. Nemeth featured the New Jersey Class Action on her firm biography and listed herself as the sole point of contact for parties looking to join the action. Stewart had also practiced law for eight years. One of Respondents' law firm websites advised the public to contact her with "any questions, concerns, or information about Chipotle or the overtime issues" in the New Jersey Class Action (Dkt. #123, Exhibit 12 at p. 3). After three years of law school and eight to thirty-five years of practice, a lawyer should know that signing his or her name to a document has consequences. Given their experience, avidity, and ownership of this case, it is difficult to accept that these seasoned professionals simply followed orders. Thus, the Court will not limit Chipotle's Motion for Contempt to the Respondents' senior attorneys.

## IV.    Chipotle's Relief

A district court has broad discretion to remedy civil contempt. *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). Civil contempt can compel compliance with a court's order and compensate an aggrieved party for losses or damages due to the contemnor's noncompliance. *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965). Compensation includes "'the cost of bringing the violation to the attention of the court' . . . and such damages may include an award of attorneys' fees" to the party doing so. *United States v. City of Jackson*, 318 F. Supp. 2d 395, 409 (S.D. Miss. 2002) (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)). These circumstances warrant both compliance and compensation.

The Court will exercise civil contempt to ensure compliance with the Court's Order. Respondents have amply showed that they are ready and willing to violate the Court's Order. In statements to the press, to a New Jersey District Court, to a Massachusetts District Court, and to this Court, Respondents have repeatedly and summarily dismissed the Injunction's bearing on them and on their clients. They have done so despite the Injunction's plain language, clear construction, and self-evident application to their causes of action. The Court's Order enjoined the enforcement of the Final Rule, Respondents were acutely aware of the Court's Order, and Respondents sued to recover wages based on the enforcement of the Final Rule in violation of the Court's Order. Such disobedience mandates coercive action to ensure compliance with the Court's Order. Thus, the Court orders Respondents to withdraw their allegations, both individual and representative, concerning the enforcement of the Final Rule against Chipotle within seven days of this order. Furthermore, the Court affirms that the Court's Order (1) applies to Alvarez and to all proposed plaintiffs similarly situated to her and (2) bars her from enforcing the Final Rule on behalf of herself and on behalf of all others similarly situated to her.

Compensation for Chipotle's fees and expenses in their pursuit of contempt is also appropriate. "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (explaining Counsel's liability for excessive costs). Unreasonable and vexatious behavior requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *see also In re Osborne*, 375 B.R. 216, 224–25 (M.D. La. 2007) (quotations omitted) ("Unreasonable and vexatious conduct is harassing or

annoying, or evinces the intentional or reckless pursuit of a claim, defense or position that is or should be known by the lawyer to be unwarranted in fact or law.").

Respondents sued to enforce the Final Rule in direct violation of the Court's Order. In doing so, they recklessly disregarded a duty owed to the Court—the long-standing and elementary duty to obey its orders, including a nationwide injunction. In doing so, they pursued a claim that they should have known was unwarranted in fact or law. As mentioned earlier, Respondents uniquely claim that the Court's Order only enjoined the DOL's enforcement of the Final Rule but not the enforcement of the Final Rule itself. When asked to support this claim with precedent, they could not. Novel readings of law arise from linguistic ambiguities, circuit court splits, and divergent canons of interpretation. *Bond v. United States*, 134 S. Ct. 2077, 2089–94 (2014). Respondents could find no precedent to support their reading of the Court's Order because none exists. Thus, Chipotle is entitled to compensation for fees and expenses tied to this contempt proceeding.

## CONCLUSION

It is hereby **ORDERED** that Chipotle's Motion for Contempt (Dkt. #89) is **GRANTED**. It is further **ORDERED** that Respondents withdraw their allegations, both individual and representative, concerning the Final Rule against Chipotle within seven days. It is also **ORDERED** that Respondents file a notice of compliance with the Court within eight days.

It is additionally **ORDERED** that Chipotle is entitled to compensation for fees and expenses tied to this contempt proceeding. To that end, it is finally **ORDERED** that Chipotle submit affidavits in support of all attorneys' fees related to this contempt proceeding within fourteen days of this Order.

**SIGNED this 19th day of March, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE