**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| STATE OF NEVADA, *et al*., | |
| Plaintiffs, | |
| v. | Civil Action No. 4:16-CV-731-ALM |
| UNITED STATES DEPARTMENT OF LABOR, *et al*., | |
| Defendants. | |

**<u>EMERGENCY MOTION OF RESPONDENTS CARMEN ALVAREZ
AND HER COUNSEL FOR STAY PENDING APPEAL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ...................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.      This Case Involves "Serious" Legal Questions. ................................................... 3

II.     Respondents Have Presented A "Substantial Case" On The Merits ................... 5

        A.      There Is A Substantial Argument That Respondents Were Not Bound By
                This Court's Preliminary Injunction. ....................................................... 5

        B.      There Is A Substantial Argument That The Preliminary Injunction Did Not
                Clearly Bar The Filing Of Private Lawsuits. ........................................ 11

        C.      There Is A Substantial Argument That This Court Lacks Personal Jurisdic-
                tion Over Respondents. ........................................................................... 12

III.    The Balance Of Equities Heavily Favors A Stay Pending Appeal. ................... 13

        A.      Respondents Face Significant Irreparable Harm. .................................. 13

        B.      Chipotle Will Suffer No Meaningful Harm From A Stay. ..................... 15

        C.      The Public Interest Also Favors A Stay ................................................. 15

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

CASES

*Alvarez v. Chipotle*, No. 2:17-cv-4095 (D.N.J. 2017) .................................................6, 15

*Asarco LLC v. Americas Mining Corp.*, 419 B.R. 737 (S.D. Tex. 2009) .......................4

*Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172 (5th Cir. 1987) ...........9

*Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979) .........................................................13

*Campaign for Southern Equality v. Bryant*, 773 F.3d 55 (5th Cir. 2014) .....................2

*City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958)....................................10

*In re Contempt Finding*, 663 F.3d 1270 (D.C. Cir. 2011) ..............................................5

*Gibson v. Credit Suisse AG*, No. 10-CV-1, 2015 WL 105999 (D. Idaho Jan. 7, 2015) ...............14

*Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973)..............................................7

*International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*,
    389 U.S. 64 (1967)....................................................................................................4

*Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971) ....................11

*Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995) .............................................................14

*National Football Players Ass'n ex rel. Elliott v. NFL*, No. 4:17-CV-615, 2017 WL
    4124105 (E.D. Tex. Sept. 18, 2017) ....................................................................2, 5

*National Spiritual Assembly of Baha'is of United States Under Hereditary Guardianship,
    Inc. v. National Spiritual Assembly of Baha'is of United States, Inc.*, 628 F.3d 837
    (7th Cir. 2010)........................................................................................................7, 8

*Nevada v. United States Department of Labor*, 227 F. Supp. 3d 696 (E.D. Tex. 2017) ............2, 5

*NLRB v. Schill Steel Products, Inc.*, 480 F.2d 586 (5th Cir. 1973) ................................3

*Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271 (5th Cir. 1994) ........3, 13

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945) .......................................................5, 7

*Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981)............................................................3, 13

*Sam Fox Publishing Co. v. United States*, 366 U.S. 683 (1961) ..................................10

*Smith v. Bayer Corp.*, 564 U.S. 299 (2011) ............................................................9, 10

*Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84 (5th Cir. 1977).8, 10, 11

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...................................................................................9, 10

*United States v. Baylor University Medical Center*, 711 F.2d 38 (5th Cir. 1983)..........................4

*Viveros v. VPP Group, LLC*, No. 12-CV-129, 2013 WL 3733388 (W.D. Wis. July 15, 2013) ..............................................................................................................................14

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) ........................................................9, 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969).......................................6, 7

STATUTES

29 U.S.C. § 216(b) .....................................................................................................................10

LEGISLATIVE MATERIALS

*The Role and Impact of* Nationwide *Injunctions by District Courts: Hearing Before the H. Subcomm. on Courts*, 115th Cong. (2017), https://goo.gl/XQjGTf.....................................4

OTHER AUTHORITIES

*Restatement (Second) of Judgments* § 63, cmt. c (1982) ............................................................7, 9

*Sessions Criticizes Nationwide Injunctions*, Wash. Post (Mar. 10, 2018), https://goo.gl/hUdyGN..................................................................................................................4

11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2956 (3d ed. database updated April 2017) .....................................................................................................................7

Respondents, Carmen Alvarez and her Counsel, move for a stay of this Court's March, 19, 2018 order (Dkt. No. 129) ("Contempt Order") pending the disposition of their appeal to the U.S. Court of Appeals for the Fifth Circuit.[1]

## INTRODUCTION

Respondents respectfully ask this Court to exercise its discretion to stay the Contempt Order while the Fifth Circuit considers their appeal.[2]  That relief is justified by the complex and unusual circumstances of this case.  As this Court knows, it held Respondents in contempt because of the legal claims they advanced in a separate lawsuit in New Jersey.  Whether that ruling was correct or not, it raises serious and debatable issues.  Those issues concern the lawful scope of injunctive relief, whether a nonparty can be held in contempt for pursuing a legal argument inconsistent with the reasoning underlying an injunctive order, and the extent of personal jurisdiction in contempt proceedings.  The novelty and complexity of these issues alone means that there is a significant likelihood that the court of appeals may resolve them differently than this Court did. Absent a stay, however, Respondents will suffer concrete and significant harm that cannot be undone even if they are vindicated on appeal.  Conversely, Chipotle will suffer no meaningful harm if the Contempt Order is stayed and then affirmed: Respondents have already agreed to desist from pursuing the New Jersey litigation during that period.  Respondents therefore ask the Court to stay its hand and spare them the consequences of a contempt finding while their appeal proceeds.

## LEGAL STANDARD

To determine whether to grant a stay pending appeal, this Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

---

[1] Respondents continue to explicitly reserve, and do not waive, their challenges to personal jurisdiction and insufficient process.  *See* Dkt. No. 107, at 1 n.1.

[2] Respondents have today filed a notice of appeal from the Contempt Order.  *See* Dkt. No. 130.

(2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." *Nevada v. U.S. Dep't of Labor*, 227 F. Supp. 3d 696, 698 (E.D. Tex. 2017) (Mazzant, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).  But because the stay inquiry is equitable in nature, these factors are not applied "in a rigid or mechanical fashion." *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (quotation marks and alterations omitted).  Rather, as this Court recently explained, a "'movant need not always show a probability of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay.'" *Nevada*, 227 F. Supp. 3d at 698 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).

In applying this latter formulation of the stay standard ("the *Ruiz* test"), this Court has identified three distinct elements.  *See Nat'l Football Players Ass'n ex rel. Elliott v. NFL*, No. 4:17-CV-615, 2017 WL 4124105, at *4 n.3 (E.D. Tex. Sept. 18, 2017) (Mazzant, J.).  First, the Court considers whether "the legal questions presented" meet "[t]he serious question standard." *Id.*  Second, if so, the Court considers whether the movant has "show[n] a substantial case on the merits with respect to those serious legal questions." *Id.*  Finally, the Court considers the balance of the equities—including the risk of irreparable harm to the movant, the prospect of injury to the non-movant from a stay, and the public interest. *Id.* at *5; *see Nevada*, 227 F. Supp. 3d at 698.

## ARGUMENT

The Court should grant a stay pending appeal because each of the three elements of the *Ruiz* test is satisfied here.  As explained below, the questions presented are serious; Respondents have made a substantial case on the merits; and the balance of equities heavily favors a stay.[3]

### I.     This Case Involves "Serious" Legal Questions.

This case involves several inter-related questions of law, including whether Respondents, as nonparties, were subject to this Court's injunction; whether, if so, the injunction unambiguously barred them from pursuing a lawsuit based on the Overtime Rule; and whether this Court validly exercised personal jurisdiction over Respondents in holding them in contempt.  Considered together, these questions rank as "serious" under *Ruiz* for three reasons.

*First*, a finding of contempt is "a very serious matter," *NLRB v. Schill Steel Products, Inc.*, 480 F.2d 586, 596 (5th Cir. 1973), and the question whether such a finding was correct is therefore inherently serious as well.  Indeed, in the case most closely resembling this one, the Fifth Circuit "had no trouble whatsoever" concluding that a "serious legal question" was presented when a District Court held an attorney in contempt based on his refusal to dismiss a suit that the court believed to be barred by its earlier injunction.  *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994) (per curiam).  The Supreme Court, too, has characterized the exercise of the contempt power as a "serious" matter, explaining that contempt "is a potent weapon" whose

---

[3] In the alternative, the Court may grant a stay simply by applying the generic four-factor test set forth above.  *See supra*, at 2.  Respondents appreciate, however, that the Court is (for obvious reasons) unlikely to hold that they will likely or probably prevail on appeal.  *See Ruiz*, 650 F.2d at 565.  For that reason, Respondents rely principally on the *Ruiz* standard, which contemplates the granting of stays even when a court believes the "chance of prevailing … is only fifty percent or less."  *Id.* (quotation marks omitted).

potential misapplication threatens "[t]he most fundamental postulates of our legal order." *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).

*Second*, the questions at stake here are also "serious" in that they have "broad impact" beyond the case at hand. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983). There is a robust national debate underway regarding the proper use of nationwide injunctions.[4] The Contempt Order adds a significant new dimension to that debate: It holds that when a court enters a nationwide injunction in a case against the Federal Government, that injunction will often be binding in personam against the millions of Americans whom the relevant federal agency purports to serve. *See* Contempt Order at 17-20. The Contempt Order further holds that an injunctive order imposes definite and specific obligations on each of those individuals, sufficient to trigger contempt sanctions for noncompliance, even if the text of that prior order did not mention private actors or private enforcement. *See id.* at 20-21. Right or wrong, these holdings are undeniably significant. Furthermore, the parties have not cited any case addressing these issues in an analogous context, and the Contempt Order notes "the dearth of precedent that factually paralleled this proceeding." *Id.* at 20; *see id.* (explaining that "[t]his scarcity of precedent complicated the Court's contempt analysis," even though it "did not change the result"). That, too, confirms the seriousness of the questions at issue. *See Asarco LLC v. Americas Mining Corp.*, 419 B.R. 737, 741 (S.D. Tex. 2009) ("serious legal questions" were presented because the case "turn[ed] on matters of law heretofore undecided by the Fifth Circuit" and "implicate[d] a wide range of important … issues").

*Third*, the practical seriousness of the contempt finding for Respondents is borne out by their showing of irreparable harm. This Court has previously indicated that the consequences for

---

[4] *See, e.g.*, *Sessions Criticizes Nationwide Injunctions*, Wash. Post (Mar. 10, 2018), https://goo.gl/hUdyGN; *The Role and Impact of Nationwide Injunctions by District Courts: Hearing Before the H. Subcomm. on Courts*, 115th Cong. (2017), https://goo.gl/XQjGTf.

the litigants weigh in the "seriousness" determination under *Ruiz*. *See Nevada*, 227 F. Supp. 3d at 698 (holding that the questions raised by this Court's preliminary injunction were "serious to … the litigants," as well as to the public); *see also Nat'l Football League Players Ass'n*, 2017 WL 4124105, at *2 (holding that a case concerning an NFL player's suspension raised "serious legal questions"). As detailed below, the Contempt Order will have immediate professional consequences that any attorney would describe as "serious." *See infra*, at 13-14; *see also In re Contempt Finding*, 663 F.3d 1270, 1278 (D.C. Cir. 2011) (Edwards, J., concurring) ("concerns over the possible stigmatizing effects of … civil contempt citations are undoubtedly serious"). The Contempt Order also requires Respondents to withdraw a theory on which to predicate liability in another court that they wish to pursue, which is itself a serious consequence. *See infra*, at 13. In sum, because the issues presented here are of both legal and practical importance, they should be treated as "serious" under *Ruiz*.

## II.     Respondents Have Presented A "Substantial Case" On The Merits.

Respondents have also "show[n] a substantial case on the merits with respect to [the] serious legal questions" at issue here. *Nat'l Football Players Ass'n*, 2017 WL 4124105, at *4 n.3. Although Respondents appreciate that this Court does not agree with their position on those questions, they respectfully submit that the questions are close enough, and Respondents' arguments are "substantial" enough, to warrant a stay pending appeal under the circumstances.

### A.     There Is A Substantial Argument That Respondents Were Not Bound By This Court's Preliminary Injunction.

Rule 65(d)(2) of the Federal Rules of Civil Procedure, entitled "*Persons Bound*," determines who is bound by an injunctive order. Fed. R. Civ. P. 65(d)(2); *see Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13-14 (1945) (explaining that language in a court's order "of course may not enlarge its scope beyond that defined by the Federal Rules of Civil Procedure"). According to that

rule, an injunction "binds *only* the following" enumerated persons: (A) the parties to the case; (B) their "officers, agents, servants, employees, and attorneys"; and (C) "other persons who are in active concert or participation with anyone" in one of the prior two categories.  Fed. R. Civ. P. 65(d)(2) (emphasis added).  Unless Respondents fall in one of those three sets, they cannot be in contempt of this Court's injunction, because the order did not "bind[]" them in the first place.  *Id.*

None of these criteria is met here.  Respondents were not parties to the *Nevada* case, under subparagraph (A).  They are not "agents" of a party to that case, under subparagraph (B).  And they have not acted "in active concert or participation with" a party to that case, under subparagraph (C).  *See* Sellers Decl. ¶ 6, Dkt. No. 125-4; Swartz Decl. ¶ 5, Dkt. No. 125-5.  Thus, there is at least a substantial argument that t injunction did not bind Respondents under any provision of Rule 65(d)(2), and accordingly that they could not possibly have violated it.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) (under Rule 65(d), "a nonparty with notice cannot be held in contempt until shown to be in concert or participation" with a party).[5]

The Contempt Order reasons that Respondents are nonetheless bound by the Court's injunction because, in the Court's view, they are in "privity" with the Department of Labor.  It is true that the Supreme Court once described Rule 65(d) as "deriv[ing] from" the common-law doctrine that an injunction binds "those identified with [the defendants] in interest, in 'privity' with them, represented by them or subject to their control."  *Regal Knitwear*, 324 U.S. at 14.  But in the

---

[5] To be clear, Respondents' position that the Court's order did not bind them does not mean that the order had no effect on their lawsuit in New Jersey.  To the contrary, Chipotle has argued that Respondents' legal claims are meritless because the Overtime Rule never took effect.  *See* Chipotle's Answer (Dkt. No. 5), ¶¶ 22-23, *Alvarez v. Chipotle*, No. 2:17-cv-4095 (D.N.J. 2017) (taking that position).  But whatever effect the Court's order had on the Overtime Rule itself—and hence, derivatively, on the merits of Respondents' claims—is beside the point in this proceeding.  Regardless of the merit of Respondents' New Jersey suit, it would not follow that Respondents were bound by this Court's injunctive order (or that they violated it).

very next sentence, *Regal Knitwear* explained that "[i]n essence," Rule 65(d) holds "that defend-ants may not nullify a decree by *carrying out prohibited acts through aiders and abettors*, although they were not parties to the original proceeding." *Id.* (emphasis added).  The point of the rule, in other words, is to bar an enjoined defendant (here the Department of Labor) from circumventing a court's order by enlisting the help of nonparties—a scenario nobody alleges transpired here.  And the Supreme Court's later gloss on *Regal Knitwear* confirms that a "relationship of dependence" is "requisite" for binding a nonparty under Rule 65(d).  *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 180 (1973); *see Zenith Radio Corp.*, 395 U.S. at 112.  In fact, Rule 65(d) was enacted—with its specific, enumerated categories of bound parties—precisely in order to put an end to "all persons" injunctions that "imposed direct obligations on third persons without affording them a day in court." *Restatement (Second) of Judgments* § 63, cmt. c (1982) ("*Restatement*").

Moreover, insofar as "privity" is sometimes described as a basis for being bound by an injunction under Rule 65(d), it is nothing more than a label or catch-all term for the kinds of rela-tionships actually described in the rule.  *See* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2956 (3d ed. database updated April 2017) (noting that "privity" is "used by the fed-eral courts as synonymous with the enumeration in Rule 65(d)(2) of nonparties who may be bound").  Indeed, the Seventh Circuit's discussion in *National Spiritual Assembly*, on which the Contempt Order relies (at 12-13), demonstrates the very limited scope of "privity" in this area.  *See Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spir-itual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 849 (7th Cir. 2010).  As the Seventh Circuit explained, setting aside special rules for corporate successors-in-interest, a nonparty may be bound under Rule 65(d)(2) only if it is an "aider[] and abettor[]" or is "legally identified with the enjoined party." *Id.* at 853.  As to the latter category, the court "emphasiz[ed] that due process requires an

*extremely close identification* and will be satisfied only when the nonparty 'key employee' against whom contempt sanctions are sought *had substantial discretion, control, and influence over the enjoined organization*—both in general and with respect to its participation in the underlying litigation." *Id.* at 854 (emphasis added).   Under this test, even a *high-ranking official of the Department of Labor* would not be bound by this Court's injunctive order under Rule 65(d) unless he was personally involved in the litigation over the Overtime Rule.  So there is surely at least a substantial argument that Respondents—who exercised no control over the Department of Labor for any purpose and have had no association with the agency—cannot be bound under Rule 65(d) consistent with the terms of the rule and the limits of due process.

The Contempt Order rests its contrary conclusion about privity on the proposition that Respondent Alvarez was "represented adequately by a party in the original suit."  Contempt Order at 13 (quoting *Benson & Ford, Inc. v. Wanda Petrol. Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987)).  Respondents respectfully disagree with this reasoning for two reasons.

*First*, the Contempt Order cites no case (and Chipotle has cited no case) in which adequate representation has been accepted as a basis for finding a party bound by or in contempt of an injunction under Rule 65(d).  Instead, the Contempt Order relies on cases concerning the preclusive effect of a judgment under the law of res judicata, most notably *Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977).  Chipotle is free to assert res judicata as a defense in the New Jersey action—that is, to argue that because Respondents' interests aligned with those of the Department of Labor, Respondents should not be permitted to relitigate issues decided by this Court.  Conceivably, Chipotle could also have sought a new injunction barring Respondents from pursuing the New Jersey action (as Southwest sought an injunction in *Southwest Airlines*) in order to protect the preclusive effect of this Court's judgment.  But it is entirely another matter to

hold that Respondents were *already* bound by (and are now in contempt of) the existing injunctive order entered in the *Nevada* case. Unlike the scope of res judicata, the scope of an injunctive order is specifically addressed in Rule 65(d)—and Rule 65(d) makes no mention of any theory of adequate representation or "'congruence of … legal interests.'" Contempt Order at 17; *see also Restatement* § 63, cmt c. (explaining that it would be "plainly incorrect" to conflate Rule 65(d)'s use of the word "binding" with the way "that term is used in the law of res judicata"); *Waffenschmidt v. MacKay*, 763 F.2d 711, 718 (5th Cir. 1985) ("if a nonparty … *is not merely acting on behalf of the defendant*, then Rule 65(d) does not authorize jurisdiction over the party" (emphasis added)). Respondents are aware of no authority for the proposition that Rule 65(d) extends the scope of an injunctive order to all whose interests were "adequately represented" in a prior proceeding.

*Second*, even if the law of res judicata furnished the relevant standards here, there is at least a substantial argument that Respondents were not bound by this Court's prior order under those standards. As earlier noted, the Contempt Order (at 13) relies on the third form of privity identified in *Benson*, concerning adequate representation. But *Benson* made clear that its use of this term "'refers to the concept of virtual representation'"—a doctrine that, even then, was to be "kept within 'strict confines.'" 833 F.2d at 1175. Since *Benson*, the Supreme Court has "rejected … unanimously" the "theory of 'virtual representation,'" explaining that "'identity of interests and some kind of relationship between parties and nonparties'" is simply not sufficient. *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008)).[6]

---

[6] The Contempt Order notes *Taylor*'s statement that preclusion may apply when a nonparty was "'adequately represented'" in the prior suit. Contempt Order at 13. But that is so only "in certain limited circumstances," including a "properly conducted class action" or a suit brought by a trustee. 553 U.S. at 894. The Court stressed this point again in *Smith*, explaining that nothing less than a certified class action would have the effect described in *Taylor*. *See* 564 U.S. at 312-16.

Even if some form of virtual representation could sometimes justify preclusion, moreover, it could not do so here.  To be sure, "governments may represent private interests in litigation, precluding relitigation," where only common public rights are involved.  *Southwest Airlines*, 546 F.2d at 98; *see City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 341 (1958).  But *Southwest Airlines* expressly *grants* "permission to relitigate" to "the private plaintiff who would vindicate a breach of duty owed specifically to the plaintiff or who would recover under a statutory system of remedies that may contemplate enforcement of private interests both by a public agency and the affected private parties."  546 F.2d at 100 (quotation marks and alteration omitted).  That is this case: Respondent Alvarez seeks personal money damages for an alleged breach of a duty Chipotle owed specifically to her, *see* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected"), and she does so pursuant to a statutory scheme that contemplates enforcement by private parties, *see id.* (affording private right of action).  Respondents are aware of no precedent for extending the preclusion theory of *Southwest Airlines* to a private-enforcement scheme of the kind at issue here.[7]

For all of these reasons, there are at least substantial arguments that Respondents were not bound under Rule 65(d) and so cannot be in contempt.

**B.      There Is A Substantial Argument That The Preliminary Injunction Did Not Clearly Bar The Filing Of Private Lawsuits.**

In the alternative, even if this Court's order "binds" Respondents under Rule 65(d)(2), Respondents are still not in contempt of that order unless they "violate[d] a definite and specific"

---

[7] *Cf. Taylor,* 553 U.S. at 902-903 (holding that broad nonparty preclusion rules do not apply to FOIA claims because "a successful FOIA action results in a grant of relief *to the individual plaintiff, not a decree benefiting the public at large*" (emphasis added)); *Sam Fox Publ'g Co. v. United States*, 366 U.S. 683, 689 (1961) ("a person whose private interests coincide with the public interest in government antitrust litigation is nonetheless not bound by the eventuality of such litigation," because antitrust laws permit "private suits for injunctive relief or for treble damages").

instruction embodied in it.  Contempt Order at 21 (citation omitted).  This requirement flows from Rule 65(d)(1), which requires "[e]very order granting an injunction" to "state its terms specifically" and "describe in reasonable detail … the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  There are substantial arguments that the Court's order did not definitely and specifically bar Respondents from advancing legal claims based on the Overtime Rule in separate litigation.

Although the Contempt Order describes the injunctive order as "wholly unambiguous" (at 22), Respondents respectfully note that the order nowhere mentioned private parties or the possibility of private lawsuits that invoke the Overtime Rule.  Even if it is unambiguous that the order deprived the Overtime Rule of *legal effect*, that is not the same thing as unambiguously restraining would-be litigants, in personam, from making filings or pursuing claims in other courts.  Such "antisuit" injunctions are sometimes entered to manage parallel litigation involving the same parties, but they are a special species of injunction, subject to special standards, and so would not naturally be implied.  *See, e.g.*, *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 405 (5th Cir. 1971) (addressing the standards for an antisuit injunction).  The preliminary injunction ultimately entered in *Southwest Airlines* and quoted in the Fifth Circuit's opinion is a good example.  *See* 546 F.2d at 89.  Here, by contrast, the plain text of the order did not "specifically" address private FLSA lawsuits, Fed. R. Civ. P. 65(d)(1), and a nonparty could therefore reasonably fail to grasp that he was personally restrained from pursuing a private lawsuit (be it meritorious or not) in another court.

Finally, as the Contempt Order recognizes, the record evidence demonstrates that three experts in civil procedure did not understand the Court's order to proscribe the filing of private lawsuits.  Contempt Order at 21 n.8.  The views of these scholars certainly do not determine the order's meaning.  But their views do confirm that there is at least a *substantial* argument that the order did not *definitely and specifically* cover Respondents' filing of a private suit in New Jersey.

If the order's meaning were entirely plain, it is unlikely that three experts in the field would have failed to grasp it.  Thus, even if the Court concludes that there is no substantial debate about whether its order bound Respondents under Rule 65(d)(2), Respondents have still made a substantial argument that the contempt finding is unwarranted under Rule 65(d)(1).

### C.   There Is A Substantial Argument That This Court Lacks Personal Jurisdiction Over Respondents.

Finally, there are substantial grounds for doubting this Court's personal jurisdiction over Respondents.  Respondents do not dispute that "[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, *they actively aid and abet a party in violating that order*."  *Waffenschmidt*, 763 F.2d at 714 (emphasis added).  As explained above, however, Respondents did not aid or abet the Department of Labor in violating any order.  *See supra*, at 6.

Importantly, even if the Court is fully persuaded that "privity" suffices as a substitute for a textual hook in Rule 65(d), that concept has no place in personal-jurisdiction analysis.  When the Fifth Circuit authorized the exercise of personal jurisdiction over nonparties in *Waffenschmidt*, it did not rely on any concept of "privity."  Rather, it stressed that the nonparties "participated in [a party's] scheme to dissipate the funds" at issue, and thereby "subjected themselves to the jurisdiction" of the district court.  763 F.2d at 717.  The court of appeals explained that this single "contact" with Mississippi—i.e., intentionally "dissipating assets subject to marshalling in that forum"— suffered to "satisfy the due process requirements as announced in *International Shoe* and its progeny."  *Id.* at 722-23.  But unlike the contemnors in *Waffenschmidt*, Respondents have taken no action with any effect on any person or asset in this forum.  As a matter of due process, therefore, they may not be haled before this Court at all.  At a minimum, this Court's extension of

*Waffenschmidt* to the present circumstances is subject to reasonable disagreement, and Respondents have marshaled substantial arguments for their narrower reading of that precedent.

### III.    The Balance Of Equities Heavily Favors A Stay Pending Appeal.

The final element of the *Ruiz* test requires that the equities be "heavily tilted in [Respondents'] favor." *Ruiz*, 650 F.2d at 566.  They are.  Respondents will suffer weighty harm if the Contempt Order remains in effect, and Chipotle will suffer no meaningful harm if it is stayed.

### A.    Respondents Face Significant Irreparable Harm.

*First*, Respondents face irreparable harm of the same kind identified in *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271 (5th Cir. 1994).  In *Musslewhite*, the District Court held an attorney in contempt for failing to dismiss a related state-court suit. *Id.* at 272.  The Fifth Circuit explained that the attorney faced irreparable harm, sufficient to warrant a stay under *Ruiz*, because the court's order placed him "between a rock and a hard place." *Id.*  He could either comply and dismiss the state-court suit—"thereby rendering moot his contention that the [prior injunction] did not require him to dismiss such suit"—or he could persist in defiance of the District Court during the appeal and suffer mounting sanctions. *Id.*  Respondents here are in the same predicament.  Withdrawing their relevant allegations in the New Jersey litigation now, as the Order requires, would constitute irreparable harm to both Ms. Alvarez and her Counsel. *See id.*; *see also Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979) ("If a stay is denied, Braddick will be irreparably harmed because he will be forced to choose between complying with the discovery order … and continuing his refusal to comply with exposure to possible sanctions for contempt").

*Second*, Ms. Alvarez's Counsel also face the prospect of serious and immediate injury to their professional interests as a result of the contempt order.  Sanctions imposed against attorneys have a "stigmatic effect" and "act[] as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have tangible effect upon the attorney's career." *Martin*

*v. Brown*, 63 F.3d 1252, 1260 (3d Cir. 1995) (quotation marks omitted).  Courts have therefore recognized "the professional stigma" imposed on sanctioned attorneys as a form of irreparable harm warranting a stay pending appeal.  *E.g.*, *Gibson v. Credit Suisse AG*, No. 10-CV-1, 2015 WL 105999, at *2 (D. Idaho Jan. 7, 2015).  Here, the Respondent attorneys have specifically identified several professional harms they will likely suffer as a consequence of this Court's contempt order:

- Respondent attorneys regularly appear *pro hac vice*, but their ability to do so will be threatened. *See* Ex. B (Sellers Decl.) ¶ 5; Ex. C (Swartz Decl.) ¶ 5; Ex. D (Savits Decl.) ¶ 6.

- Respondent attorneys often represent parties who bring claims collectively as class actions, but Respondents' adequacy for that purpose under Rule 23(g) may now be questioned.  *See* Ex. B (Sellers Decl.) ¶ 7; Ex. C (Swartz Decl.) ¶ 6; Ex. D (Savits Decl.) ¶ 7; *cf. Viveros v. VPP Grp., LLC*, No. 12-CV-129, 2013 WL 3733388, at *11 (W.D. Wis. July 15, 2013) (citing an attorney's "disciplinary history" as a factor weighing against the adequacy of class counsel).

- Some of the Respondent attorneys frequently represent state and local governments, which require disclosure of disciplinary actions during bidding.  Their ability to compete successfully for this work will therefore be impaired.  *See* Ex. B (Sellers Decl.) ¶ 6.

- Respondent Savits will suffer an additional form of injury because he is in the midst of relocating his practice to North Carolina, and the contempt finding may jeopardize his pending application for admission to the North Carolina bar.  *See* Ex. D (Savits Decl.) ¶ 5.

Furthermore, once Respondent attorneys are not selected for a matter, they are very unlikely to be able to compete for the same project later or obtain any compensation, even if the contempt finding has been reversed.  *See* Ex. B (Sellers Decl.) ¶ 8; Ex. C (Swartz Decl.) ¶ 7; Ex. D (Savits Decl.) ¶ 8.  Accordingly, each of these forms of injury is a textbook example of irreparable harm.

**B.      Chipotle Will Suffer No Meaningful Harm From A Stay.**

By contrast, Chipotle will suffer no significant harm if the Contempt Order is stayed pend-
ing appeal.  As Chipotle has explained, it initiated this proceeding to avoid incurring "fees and
expenses in defending against a rule that never became effective."  Mot. for Contempt, Dkt. No.
89, at 2; *see id.* at 20 ("[A]bsent additional formal restraint, [Respondents] will continue pursuing
enforcement of the Final Rule against Chipotle.").  But since that time, Respondents have proposed
that the New Jersey litigation be stayed while orders in this case are on appeal.  *See Alvarez v.
Chipotle*, No. 2:17-cv-4095 (D.N.J. Nov. 9, 2017), Dkt. No. 26.  In a letter to the U.S. District
Court for the District of New Jersey, dated today, Respondents have again proposed to stay that
litigation while the Contempt Order is on appeal—ensuring that Chipotle will suffer no harm if
the Contempt Order does not take effect until the Fifth Circuit's review is complete.  *See* Ex. A.

**C.      The Public Interest Also Favors A Stay.**

Finally, to the extent the public interest is implicated here, it weighs in favor of a stay as
well.  Because the questions presented are difficult and consequential, *see supra*, at 4, the public
interest is best served by preserving the status quo until the Fifth Circuit can consider and resolve
them.  And the public interest will not suffer from any further noncompliance with this Court's
order in the interim because, as explained above, Respondents will not pursue the New Jersey
litigation during that period regardless.  The public interest is not served by exposing litigants who
acted in good faith to immediate, serious harm based on reasonably debatable legal conclusions.

## CONCLUSION

For the foregoing reasons, this case presents serious legal questions, Respondents have
made a substantial case on the merits of those questions, and the balance of equities heavily favors
a stay pending appeal.  The Court should therefore exercise its discretion to grant such a stay.

Dated:  March 20, 2018                    Respectfully submitted,

                                          SIEBMAN, BURG, PHILLIPS & SMITH, LLP

                                          By: */s/ Clyde M. Siebman*

                                          Clyde M. Siebman
                                          Texas Bar No. 18341600
                                          clydesiebman@siebman.com
                                          Elizabeth S. Forrest
                                          Texas Bar No. 24086207
                                          elizabethforrest@siebman.com
                                          SIEBMAN, BURG, PHILLIPS & SMITH LLP
                                          300 North Travis
                                          Sherman, Texas 75090
                                          (903) 870-0070 – Telephone
                                          (903) 870-0066 – Fax

                                          COUNSEL FOR RESPONDENTS,
                                          Ms. Carmen Alvarez and her counsel

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 20th day of March, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

SIEBMAN, BURG, PHILLIPS & SMITH, LLP

By: */s/ Clyde M. Siebman*

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h).  I certify that on March 20, 2018 Counsel for Respondents Carmen Alvarez and her Counsel, Stephanie Barnes, had a telephone conference with Counsel for Chipotle Mexican Grill, Inc., Kendra Beckwith, discussing the relief requested in this motion. Counsel for Chipotle Mexican Grill, Inc. indicated that the relief requested herein is opposed by Chipotle Mexican Grill, Inc.  Thus, discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

SIEBMAN, BURG, PHILLIPS & SMITH, LLP

By: _/s/ Clyde M. Siebman_