# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STATE OF NEVADA, *et al.*, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00731 |
| | § | Judge Mazzant |
| UNITED STATES DEPARTMENT OF LABOR, *et al.*, | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Emergency Motion of Respondents Carmen Alvarez and her Counsel ("Respondents") for Stay Pending Appeal (Dkt. #131). After reviewing the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

On November 22, 2016, the Court issued an injunction (the "Court's Injunction") against the Department of Labor's ("DOL") "regulations as amended by 81 Fed. Reg. 32,391" (the "Final Rule") and against the DOL's enforcement of the Final Rule (Dkt. #60 at p. 19). Respondents[1] later sued to recover overtime compensation based on criteria in the Final Rule in the United States District Court for the District of New Jersey (the "New Jersey Lawsuit") (Dkt. #89). Based on Respondents' conduct, on August 1, 2017, Petitioners Chipotle Mexican Grill, Inc. and Chipotle Services, LLC (collectively, "Chipotle") filed a motion with the Court to hold Respondents in contempt for violating the Court's Injunction (Dkt. #89). On March 19, 2018, the Court entered a Memorandum Opinion and Order, holding Respondents in contempt of the Court's Injunction (the "Contempt Order") (Dkt. #129). On March 20, 2018, Respondents filed a notice of appeal with

---

[1] "Respondents" collectively refers to Carmen Alvarez ("Alvarez"), the plaintiff in the New Jersey Lawsuit, and her lawyers Joseph Sellers ("Sellers") and Miriam Nemeth ("Nemeth") of Cohen Milstein Sellers & Toll PLLC, Justin Swartz ("Swartz") and Melissa Stewart ("Stewart") of Outten & Golden LLP, and Glen Savits ("Savits") of Green Savits LLC.

the Fifth Circuit regarding the Contempt Order (Dkt. #130) and filed the Emergency Motion of Respondents Carmen Alvarez and Her Counsel for Stay Pending Appeal with the Court (Dkt. #131). On March 23, 2018, Chipotle filed Petitioners Chipotle Mexican Grill, Inc.'s and Chipotle Services, LLC's Opposition to Emergency Motion of Respondents Carmen Alvarez and Her Counsel for Stay Pending Appeal (Dkt. #134). On March 27, 2018, Respondents filed their reply (Dkt. #139).

**LEGAL STANDARD**

District courts have the inherent power to stay proceedings pending before them, but this power is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re M.J. Beebe*, No. 95-20244, 1995 WL 337666, at *2 (5th Cir. May 15, 1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts determining whether to issue a stay pending appeal may consider factors such as (1) whether the movant is likely to succeed on the merits; (2) whether the movant would suffer irreparable harm absent a stay; (3) whether granting the stay would substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *In re First S. Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987). Where "there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *see Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (citation omitted) ("'[A] stay is not a matter of right, even if irreparable injury might result otherwise.' It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'").

**ANALYSIS**

Respondents ask the Court to enter a stay of the Contempt Order pending their appeal because they can establish all four elements required by law. Chipotle contends that the Court should deny the stay because Chipotle will suffer substantial harm. Further, Chipotle contends that Respondents cannot satisfy the remaining elements necessary to justify the Court issuing a stay.

In order to stay the Contempt Order, the movant must first demonstrate a likelihood of success on the merits on appeal. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). The Fifth Circuit has stated that "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. Unit A June 1981) (citing *Providence Journal v. Fed. Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979); *Hous. Insulation Contractors Ass'n v. Nat'l Labor Relations Bd.*, 339 F.2d 868, 870 (5th Cir. 1964)). The Fifth Circuit further explained that "if the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits." *Id.* The Court acknowledges that there are serious legal questions involved in the case, and as such, if Respondents demonstrate a substantial case on the merits, then this element is met.

Respondents argue that there are "substantial arguments" that (1) they were not bound by the Court's Injunction and cannot be held in contempt, (2) the Court's Injunction did not clearly forbid the filing of a private lawsuit by Respondents, and (3) the Court had no personal jurisdiction over Respondents (Dkt. #131 at pp. 9, 14, 16). Chipotle counters that "Respondents' case is

meritless" and no precedent exists to bulwark Respondents' interpretation of the Court's Injunction (Dkt. #134 at p. 13). Chipotle claims that Respondents' arguments "amount to nothing more than a complaint that this Court should have reached a different conclusion." (Dkt. #134 at p. 13). Chipotle asserts that the Court properly applied the facts to the law and the Fifth Circuit will "likely review the Order solely for an abuse of discretion. . . ." (Dkt. #134 at p. 13).

The Fifth Circuit recognizes that a party presents a substantial case on the merits when there is a lack of precedent to clarify the issues at bar.[2] Given the novelty of this matter, there is a dearth of precedent that factually parallels it. Accordingly, Respondents have made a substantial case on the merits. Since Respondents have established that this proceeding involves a serious legal question presenting a substantial case on the merits, the Court asks whether the balance of equities favors granting a stay. *Ruiz*, 650 F.2d at 565–66.

Respondents claim that if Alvarez withdraws her allegations in the New Jersey Lawsuit based on the Final Rule, she will very likely not be able to pursue those same allegations again if the Contempt Order is overturned. Respondents contend that the DOL stayed its appeal of the Court's Injunction pending "new rule-making" and might entirely do away with the Final Rule during the "new rule-making" process. (Dkt. #139 at p. 2). Alvarez's lawyers contend that absent a stay, the Contempt Order will harm their professional opportunities and reputations. Chipotle counters that "Respondents may amend their complaint accordingly" if the Fifth Circuit overturns the Court's Injunction (Dkt. #134 at p. 3). Chipotle asserts that Alvarez's lawyers cannot claim any reputational damage since they continue to comment about the Contempt Order in the press

---

[2] In *Ruiz*, the Fifth Circuit looked to case law to find a constitutional mandate for the disputed legal issue. 650 F.2d at 568. The court found that there was no "constitutionally mandated square footage requirement" for prison cells based on its reading of *Rhodes v. Chapman*, 101 S. Ct. 2392, 2395–2396 (1981), *Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977), *William v. Edwards*, 547 F.2d 1206, 1215 (5th Cir. 1977). The Fifth Circuit subsequently found that "we know of no constitutional mandate for correctional units to be situated within 50 miles of a major metropolitan area in order to ensure adequate staffing. Therefore, we conclude that the State has made a substantial case on the merits. . . ." *Id.* at 574.

4

(Dkt. #134 at p. 6). Finally, Chipotle avers that Alvarez's lawyers' claimed professional harm is "speculative, at most." (Dkt. #134 at p. 8).

"[A]n 'injury is "irreparable" only if it cannot be undone through monetary remedies.'" *Burgess v. Fed. Deposit Ins. Corp.,* 871 F.3d 297, 304 (5th Cir. 2017) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 F.2d 464, 472 (5th Cir. 1985)) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981)). "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.3d 921, 925 (D.C. Cir. 1958)).

Alvarez's lawyers' prospective professional harm due to the Contempt Order qualifies as irreparable harm for purposes of this stay analysis. In their supporting affidavits, Alvarez's lawyers explained that citation for contempt will cause "immediate and irreparable harm" to them. (Dkt. #131, Exhibit B at p. 2; Dkt. #131, Exhibit C at p. 3; Dkt. #131, Exhibit D at p. 2).

In his affidavit, Sellers avers that his firm practices before many courts *pro hac vice*, a citation for contempt "must be disclosed in the applications for [*pro hac vice*] admission, and [such disclosure] may provide a ground on which admission may be denied." (Dkt. #131, Exhibit B at p. 3). Sellers also asserts that his firm often represents state and local governments and other public entities. (Dkt. #131, Exhibit B at p. 3). Sellers testifies that "[i]n [his] experience," citation for contempt "is weighed as one factor in a public entity's decision to award a contract to outside legal counsel." (Dkt. #131, Exhibit B at p. 3). Sellers next testifies that his firm represents class actions and "[c]itation of contempt may affect [his] firm's ability to qualify as counsel for the class pursuant to Rule 23, Fed.R.Civ.P." (Dkt. #131, Exhibit B at p. 3).

5

In his affidavit, Swartz testifies that he practices *pro hac vice* before many courts and that a "contempt order must be disclosed in the applications for admission and provides a ground on which admission may be denied." (Dkt. #131, Exhibit C at p. 3). Swartz also asserts that his firm represents parties in class actions and "[t]he contempt order may affect [his] firm's ability to qualify as counsel for the class pursuant to Fed. R. Civ. P. 23." (Dkt. #131, Exhibit C at p. 3).

In his affidavit, Savits testifies that he must "report any sanction" he receives to the North Carolina Board of Law Examiners—from whom he is seeking admission to the North Carolina Bar. Savits avers that the citation for contempt "could place [his] comity admission in jeopardy." (Dkt. #131, Exhibit D at p. 3). Savits also contends that a citation for contempt is considered for *pro hac vice* admissions, which are important to his employment law practice. Savits testifies that a "citation of contempt may affect [his] firm's ability to qualify as counsel for the class pursuant to Rule 23, Fed.R.Civ.P." (Dkt. #131, Exhibit D at p. 3). Savits's affidavit concludes, "[e]ven if the citation of contempt is ultimately reversed, its effect on these decisions would generally be irreversible, as the opportunities for which my firm was considered will have passed and will have been offered to other firms instead." (Dkt. #131, Exhibit D at p. 3). Accordingly, though Alvarez's claimed risk is too speculative to qualify as irreparable harm[3], Alvarez's lawyers have adequately demonstrated that they face irreparable harm absent a stay.

Respondents argue that Chipotle will suffer no substantial harm if a stay is granted since Respondents asked to stay the New Jersey Lawsuit pending the outcome of their appeal of the

---

[3] When evaluating claimed irreparable harm for a motion to stay proceedings, the Fifth Circuit applies criteria that is very similar to that it uses to assess irreparable harm in a motion for preliminary injunction. *Burgess*, 871 F.3d at 304 (applying the criteria for irreparable harm from *Enterprise International, Inc.*, 762 F.2d at 472—a case involving a preliminary injunction—to assess claimed irreparable harm in a motion to stay proceedings). Under such criteria, alleged irreparable harm cannot be speculative. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008) (emphasis added) (finding that a movant must show that "he is *likely* to suffer irreparable harm. . . ."); *See also United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (emphasis in original) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant . . . *A presently existing actual threat must be shown*.").

Contempt Order (Dkt. #131 at p. 19; Dkt. #131, Exhibit A). Chipotle counters that it will suffer substantial harm if a stay is granted as it will have to continue defending a lawsuit based on a law that does not exist. Chipotle further claims that if the stay is granted, the class of plaintiffs for the New Jersey Lawsuit could grow, augmenting that action's pretrial litigation and discovery costs.[4] Chipotle asserts that this harm outweighs Respondents' claimed irreparable harm.

If the Court were not to stay the Contempt Order pending appeal, the New Jersey Lawsuit would still be stayed, barring any possibility that Chipotle might shoulder pretrial or discovery expenses regardless of whether the class of plaintiffs grows or not. Thus, Chipotle has not demonstrated that it will suffer substantial harm due to a stay.

Respondents maintain that public interest supports issuing a stay of the Contempt Order until the Fifth Circuit can resolve the complex and important issues in this case. Chipotle counters that a stay will not serve the public interest as there is a compelling public interest in the efficient resolution of the New Jersey Lawsuit and in enforcing court orders. Here, the primary issue presented on appeal—whether the third-party Respondents are subject to contempt for violating the Court's Injunction against the enactment and enforcement of a federal agency's rule—is serious to both the litigants and to the public at large. *See Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23–24 (5th Cir. 1992) (deciding a serious legal question exists when there are legal issues that involve significant public concerns and impact federal and/or state relations). Neither

---

[4] Courts have recognized that the cost of pretrial litigation and discovery for defending a class action lawsuit with numerous plaintiffs can amount to irreparable hardship. *Pena v. Taylor Farms Pacific, Inc.*, 2015 WL 5103157 at *5 (E.D. Cal. Aug. 31, 2015) (class size: "several thousand" members); *Risinger v. SOC LLC*, 2015 WL 7573191 at *2–3 (D. Nev. Nov. 24, 2015) (class size: 4,000 plaintiffs); *Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) (class size: 22,000 plaintiffs). The prospective class in this matter numbers, at most, in the hundreds, rather than the thousands or tens of thousands (Dkt. #134 at p. 4). Nevertheless, the Court appreciates the pretrial burdens that accompany a large class of plaintiffs. Respondents, however, asked the New Jersey District Court to stay the New Jersey Lawsuit pending the outcome of their appeal of the Court's Contempt Order. Consequently, no pretrial litigation or discovery will occur and Chipotle will shoulder no pretrial litigation costs if the Court grants a stay.

Respondents nor Chipotle offered precedent concerning this primary issue and the Contempt Order's privity analysis has real consequences for real people: if other citizens sue to enforce a federal agency's rule, which has been enjoined, they and their lawyers may also be held in contempt. This bears consequences for the relationship between the federal government and the American people and for the welfare of anyone seeking to enforce a federal agency's rule under similar circumstances. Thus, a stay to permit the resolution of this legal question will serve the public interest.

Respondents present a serious legal question and substantial arguments on the merits. Respondents demonstrated that they would suffer irreparable harm absent a stay, that Chipotle would suffer no substantial harm due to a stay, and that a stay would serve the public interest. Thus, the balance of equities supports granting a stay pending appeal.

## CONCLUSION

It is therefore **ORDERED** that the Emergency Motion of Respondents Carmen Alvarez and her Counsel for Stay Pending Appeal (Dkt. #131) is hereby **GRANTED**.

**SIGNED this 1st day of May, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE