# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 18-40246

———————

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2019

Lyle W. Cayce
Clerk

STATE OF TEXAS

      Plaintiff - Appellee

CHIPOTLE MEXICAN GRILL, INCORPORATED; CHIPOTLE SERVICES, L.L.C.,

      Petitioners - Appellees

v.

UNITED STATES DEPARTMENT OF LABOR

      Defendant

CARMEN ALVAREZ, and her Counsel,

      Respondent - Appellant

———————

Appeal from the United States District Court
for the Eastern District of Texas

———————

Before JOLLY, DENNIS, and HIGGINSON, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

      In November 2016, the United States District Court for the Eastern District of Texas (the Texas federal court) enjoined the Department of Labor's

No. 18-40246

(DOL) proposed Fair Labor Standards Act (FLSA) Overtime Rule[1] and specifically enjoined the DOL from implementing and enforcing that proposed rule, pending further order of that court. The proposed Overtime Rule raised the salary threshold of executive, administrative, or professional employees exempted from the FLSA's requirement that employers provide overtime pay. In June 2017, Carmen Alvarez, a restaurant worker in New Jersey, sued her former employer, Chipotle Mexican Grill, Inc. and Chipotle Services, L.L.C. (Chipotle), in the United States District Court for the District of New Jersey (the New Jersey federal court) for unpaid overtime pay, relying on the proposed Overtime Rule. In her suit, Alvarez contended that, because Texas federal court's injunction did not stay the effective date of the proposed Overtime Rule, the rule and its higher salary level for exempt employees became effective and Alvarez, whose salary was below that level, was entitled to overtime pay as a non-exempt employee.

One week after filing its answer in the New Jersey federal court, Chipotle moved in the Texas federal court to hold Alvarez and her attorneys in contempt.[2] After a hearing, the Texas federal court held Alvarez and her counsel in contempt, reasoning that they were bound by the November 2016 injunction because they had acted in privity with the DOL and therefore their lawsuit and allegations against Chipotle in the New Jersey federal court were in violation of the injunction. The court also assessed attorneys' fees against them. Alvarez and her attorneys appealed.

The issue is whether the Texas federal court may hold Carmen Alvarez and her lawyers in contempt for filing the FLSA lawsuit against Chipotle in

---

[1] The Overtime Rule is also referred to as the Final Rule by the parties, and was published in the Federal Register as follows: Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32,391-01, 32,393 (May 23, 2016) (to be codified at 29 C.F.R. pt. 541).

[2] Chipotle filed its answer in the New Jersey federal court on July 26, 2017 and its motion for contempt in the Texas federal court on August 1, 2017.

No. 18-40246

the New Jersey federal court and contending that she was entitled to overtime pay according to the proposed Overtime Rule.  We conclude that Texas federal court did not have the authority under Rule 65(d) of the Federal Rules of Civil Procedure to hold Alvarez and her attorneys in contempt, because Alvarez and her attorneys did not act in privity with, and she was not adequately represented by, the DOL in the injunction case; hence, the Texas federal court lacked personal jurisdiction over Alvarez and her attorneys.  Accordingly, we reverse the judgment of the District Court, including the award of attorneys' fees against Alvarez and her lawyers, and we render judgment in their favor.

## I.     BACKGROUND

### A.     The *Nevada v. DOL* Injunction

On November 22, 2016, in *Nevada v. United States Dep't of Labor*, 218 F. Supp. 3d 520, 524–25 (E.D. Tex. 2016), the Texas federal court entered a preliminary injunction against the DOL and its agents in favor of Nevada and twenty other states,[3] enjoining the Overtime Rule and the DOL from enforcing or implementing the rule.  Specifically, the Overtime Rule proposed to substantially expand the class of employees entitled to overtime pay by raising the salary threshold by which executive, administrative, and professional employees are exempted from the right to overtime pay under the FLSA.

### B.     The *Alvarez v. Chipotle* Action (The New Jersey Action)

In June 2017, six months after the district court's preliminary injunction in *Nevada v. DOL*, Carmen Alvarez, through her lawyers (together with Alvarez, Respondents), filed a lawsuit against Chipotle, her former employer,

---

[3] The injunction, in relevant part, read as follows:

> [T]he Department's Final Rule described at 81 Fed. Reg. 32,391 is hereby enjoined. Specifically, Defendants are enjoined from implementing and enforcing the following regulations as amended by 81 Fed. Reg. 32,391; 29 C.F.R. §§ 541.100, 541.200, 541.204, 541.300, 541.400, 541.600, 541.602, 541.604, 541.605, and 541.607 pending further order of this Court.

No. 18-40246

in New Jersey federal court alleging Chipotle violated the Overtime Rule by classifying Alvarez as exempt despite her weekly salary falling below the revised higher threshold.  Alvarez's pleadings acknowledged that the DOL had been enjoined from enforcing or implementing the Overtime Rule, but contended that, because the district court in *Nevada v. DOL* had not stayed the Overtime Rule's effective date under the Administrative Procedure Act, the rule itself had taken effect on December 1, 2016.  Chipotle answered that, in its view, the *Nevada v. DOL* order prevented the Overtime Rule from ever becoming effective in any way.[4]  The New Jersey action has been stayed pending disposition of this appeal.[5]

### C.   The Present Contempt Proceeding by Chipotle Against Alvarez and Her Counsel

On August 1, 2017, Chipotle filed a motion against Respondents in the Texas federal court in the *Nevada v. DOL* action, asking that court to hold them in contempt for violating the injunction issued in that case.[6]  Other than filing an answer in the New Jersey action, Chipotle did not further engage in that litigation.[7]  Chipotle contended in its contempt motion that Alvarez was bound by the injunction because the DOL had adequately represented her interests in that litigation, making her its privy, and that the court should hold her and her lawyers in contempt for alleging and invoking the Overtime Rule in the New Jersey action.  Respondents argued that the Texas federal court lacked personal jurisdiction over them; that the *Nevada v. DOL* injunction did not bind them under Rule 65(d) of the Federal Rules of Civil Procedure because

---

[4] Answer and Affirmative and Other Defenses, *Alvarez v. Chipotle Mex. Grill, Inc., et al.*, No. 2:17-cv-4095 (D.N.J. July 26, 2017), ECF No. 5.

[5] Order Granting Stay, No. 2:17-cv-4095 (D.N.J. May 8, 2018), ECF No. 37.

[6] At the time of Alvarez's New Jersey action and Chipotle's contempt motion, the Texas federal court had not yet entered a final judgment in the *Nevada v. DOL* litigation.  It did so later in August 2017, declaring the Overtime Rule "invalid."

[7] *See* Answer ¶¶ 22-23, *Alvarez v. Chipotle*, No. 2:17-cv-4095 (D.N.J. July 26, 2017), ECF No. 5.

No. 18-40246

they were not in privity with the DOL or otherwise subject to the terms of Rule 65(d); and that the terms of the injunction did not foreclose the filing of private FLSA lawsuits.  Respondents submitted uncontradicted declarations attesting that they had not in any way participated, coordinated, or acted in concert with the federal defendants in the *Nevada v. DOL* case.

On March 19, 2018, the district court granted Chipotle's motion and held Respondents in contempt.  In its opinion, the district court rejected Respondents' argument that it lacked personal jurisdiction over them.  It concluded that Alvarez was bound by the injunction in privity with the DOL because the DOL represents the interests of employees like Alvarez; that its injunction was "wholly unambiguous" in proscribing the filing of private lawsuits alleging or invoking the Overtime Rule; and that, although Chipotle's service of process on Respondents was imperfect, Respondents had not proven they were prejudiced thereby.  The court ordered that Respondents pay Chipotle's attorneys' fees for the contempt proceeding.[8]  Respondents timely appealed,[9] contending that the Texas federal court's injunction did not bind them in any way.

## II.   STANDARD OF REVIEW

We review a district court's contempt determination for abuse of discretion.  *See Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999).  Thus, "[t]he district court's underlying findings of fact are reviewed for clear error and its underlying conclusions of law reviewed de novo." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000).  The district court's ultimate finding that privity existed

---

[8] The district court refused to limit the contempt finding to senior attorneys with decisionmaking authority but imposed it on junior attorneys and local counsel as well.

[9] As to nonparties, a contempt order constitutes a final order for purposes of appellate jurisdiction.  *See S. Ry. Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968) ("[A]n adjudication of civil contempt is final and appealable as to a non-party who would be unable to appeal from the final decision on the merits").

No. 18-40246

between Respondents and the DOL is a legal conclusion that we review de novo. *See Drummond Co. v. Dist. 20, United Mine Workers of Am.*, 598 F.2d 381, 385 (5th Cir. 1979) ("While the district court's findings of facts . . . will be reviewed under the clearly erroneous standard, the interpretation of the scope of the injunctive orders is a question of law to be determined by the independent judgment of this Court."). Similarly, we review legal conclusions surrounding a determination of personal jurisdiction de novo, while reviewing underlying factual findings for clear error. *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 528–29 (5th Cir. 2014).

## III.   DISCUSSION

### A.   The District Court Erred in Concluding that Respondents Acted in Privity with the DOL

We consider here the proper reach of an injunction—specifically, the extent to which an injunction can bind individuals who are not parties to the action in which the injunction is entered. "'It is a principle of general application . . . that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *see also Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 865–66 (5th Cir. 1985) ("An underlying principle is that '[i]t is a violation of due process for a judgment [in a prior suit] to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.'" (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979))). This principle derives from the "'deep-rooted historic tradition that everyone

6

should have his own day in court.'" *Taylor*, 553 U.S. at 892–93 (quoting *Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996)). The central exception to this principle limiting the effect of judgments to parties is where nonparties have actual notice of an injunction and aid and abet or act in concert with a named defendant or as the defendant's privy in violating the injunction. *See* WRIGHT, MILLER & KANE, 11A FED. PRAC. & PROC. CIV. § 2956, at 384–85 (3d ed. 2013); *see also Richards*, 517 U.S. at 798 ("Of course, these principles do not always require one to have been a party to a judgment in order to be bound by it. Most notably, there is an exception when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment."); *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 847 (7th Cir. 2010).

"Rule 65(d) of the Federal Rules of Civil Procedure, which governs injunctions and temporary restraining orders, codifies both the general principle and its exceptions." *Nat'l Spiritual Assembly of Baha'is*, 628 F.3d at 847; *see Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) (noting that Rule 65(d) "is derived from the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in privity with them, represented by them or subject to their control" (internal quotation omitted)); 11A FED. PRAC. & PROC. CIV. § 2956, at 382 ("Rule 65(d)(2) does not really add or detract from the range of persons that were bound by a decree under basic equity practice and due-process principles applied on the equity side of the federal courts prior to 1938.").

Rule 65(d)(2) provides that an injunction "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in

Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2). The portion of the rule stating its only significant exception, subpart (C), contemplates two categories of persons who may be bound by an injunction. *See* 11A FED. PRAC. & PROC. CIV. § 2956, at 384–85. First, "a nonparty may be held in contempt if he aids or abets an enjoined party in violating an injunction"; second, "an injunction may be enforced against a nonparty in 'privity' with an enjoined party." *Nat'l Spiritual Assembly of Baha'is*, 628 F.3d at 848–49; 11A FED. PRAC. & PROC. CIV. § 2956, at 384–85 (citing, *inter alia*, *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909 (N.D. Tex. 1999), *aff'd*, 228 F.3d 574 (5th Cir. 2000)).

For privity, "[f]ederal courts have deemed" three "types of relationships 'sufficiently close' to justify preclusion": (1) "a non-party who has succeeded to a party's interest in property," (2) "a non-party who controlled the original suit," and (3) "a non-party whose interests were represented adequately by a party in the original suit." *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977). As to the third type, adequate representation does not exist where a nonparty is merely interested in the same issue or same set of facts, "or because the issue being litigated is one that might affect their interests by providing a judicial precedent that would be applied in a subsequent action." 11A FED. PRAC. & PROC. CIV. § 2956, at 390 (citing *Int'l Bhd. of Teamsters v. Keystone Freight Lines*, 123 F.2d 326 (10th Cir. 1941); *Baltz v. The Fair*, 178 F. Supp. 691, 693 (N.D. Ill. 1959), *aff'd*, 279 F.2d 899 (7th Cir. 1960)). "Similarly, the mere fact that a person has committed the enjoined act does not necessarily mean that the injunction should be enforced against that person." 11A FED. PRAC. & PROC. CIV. § 2956, at 390. Ultimately, a determination that privity exists "represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close." *Sw. Airlines*, 546 F.2d at 95; *Freeman*, 771 F.2d at 864; *see*

*also Nat'l Spiritual Assembly of Baha'is*, 628 F.3d at 849 (noting same in the context of enforcing an injunction).

Here, the first two subparts of Rule 65(d)(2), as well as the "aiding and abetting" theory, are undisputedly inapplicable.  Respondents are clearly not parties to the *Nevada v. DOL* case; nor are they any "parties' officers, agents, servants, employees, and attorneys."   FED. R. CIV. P. 65(d)(2)(A)–(B).  Furthermore, although they had notice of the injunction, as demonstrated by the references in the complaint in the New Jersey action, it is uncontested that Respondents did not aid and abet, or otherwise assist or act in concert with, the DOL or any of the its agents to violate the injunction.  In holding Respondents in contempt, the district court relied on the concept of adequate representation, holding that the DOL adequately represented Alvarez's interests in the *Nevada v. DOL* litigation.  However, the district court's assessment that the DOL adequately represented Alvarez's interests was mistaken.  We have held that privity by virtue of adequate representation requires "the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues," *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978), and that "a showing of parallel interests" alone is insufficient, *Freeman*, 771 F.2d at 864; *see also Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1175 (5th Cir. 1987).  There is no evidence of such an express or implied legal relationship between Alvarez and the DOL here.

In erroneously finding Respondents in privity with the DOL, the district court relied exclusively on this court's preclusion decision in *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84 (5th Cir. 1977).  However, the holding of preclusion in *Southwest Airlines* is inapposite here.  The *Southwest Airlines* litigation began when the Cities of Dallas and Fort Worth and the Dallas/Fort Worth Regional Airport Board (the DFW Airport Board)

No. 18-40246

filed a federal declaratory judgment action to exclude Southwest, an intrastate airline carrier, from using Love Field in Dallas, under a bond ordinance calling for the phase-out of commercial air service at that airport. *See Southwest Airlines*, 546 F.2d at 87. Southwest counterclaimed for a declaratory judgment of its right to remain at Love Field. *Id.* The district court declared that the cities and the DFW Airport Board could not lawfully exclude Southwest from using Love Field. *Id.* at 88. The Fifth Circuit affirmed. *Id.* (citing *City of Dallas v. Sw. Airlines Co.*, 494 F.2d 773, 776–77 (5th Cir. 1974)). Several interstate airlines next filed claims in Texas state court seeking to compel Southwest to cease using Love Field. *Id.* At Southwest's behest, the federal district court then preliminarily enjoined the state suit, thereby precluding the cities, the DFW Airport Board and the interstate airlines from relitigating in state court or in any other court, Southwest's right of access to Love Field. *Id.* at 89.

In affirming the district court's order enjoining the state suit, this court held that the interstate airline plaintiffs were in privity with the governmental entities—the cities of Dallas and Fort Worth, and the DFW Airport Board—in the prior federal suit for preclusion purposes because the "legal interests of the carriers do not differ from those of [the government entities] in [the earlier lawsuit]" and thus "they received adequate representation in the earlier litigation and should be bound by the judgment." *Id.* at 100. This court was careful to note that the government entities adequately represented the plaintiff carriers' interests in this later litigation only because of certain specific facts: (1) the carriers "d[id] not claim a breach of legal duty by Southwest, apart from the alleged violation of the general duty to obey valid ordinances," (2) "the carriers request[ed] the same remedy denied the [government entities], namely the enforcement of the phase-out provision of the ordinance to exclude Southwest from Love Field," and (3) "the ordinance

10

No. 18-40246

does not establish a statutory scheme looking toward private enforcement of its requirements." *Id.* at 100; *see also* WRIGHT, MILLER & COOPER, 18A FED. PRAC. & PROC. JURIS. § 4458.1 (3d ed. 2017), at 573–74 (in discussing *Southwest*, identifying these three considerations as the support for the basic conclusion of no private legal wrong, and therefore preclusion through privity).

The district court was in error in concluding that *Southwest* supports a finding of privity between Respondents and the DOL.  Alvarez's FLSA action in New Jersey relies on far more than a "general duty to obey valid ordinances" as those at issue in the interstate airlines' lawsuit in *Southwest*, *see* 546 F.2d at 100.  The FLSA imposes a legal duty on every employer to pay overtime to non-exempt employees and, unlike the phase-out ordinance at issue in *Southwest*, explicitly establishes a private right of action to enforce that duty. *See* 29 U.S.C. §§ 207, 216(b); *see also Benson & Ford, Inc.*, 833 F.2d at 1175–76 (distinguishing *Southwest* by noting that "[o]ur holding rested on the proposition that private parties cannot relitigate to enforce an ordinance after the public body fails in its attempt to enforce the same ordinance," whereas the plaintiff in *Benson & Ford* "[did] not seek to relitigate [another party's] rights").

Importantly, in *Southwest*, this court expressly endorsed the proposition that government actors would not be in privity with private litigants under Title VII, a federal employment statute that, similar to the FLSA, authorizes both government litigation and private actions.  *See* 546 F.2d at 98 (citing *Rodriguez v. E. Tex. Motor Freight*, 505 F.2d 40 (5th Cir. 1977), *vacated on other grounds sub nom. E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977); *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201 (2d Cir. 1972)). In doing so, this court noted that "litigation by a government agency will not preclude a private party from vindicating a wrong that arises from related facts but generates a distinct, individual cause of action." *Southwest*, 546 F.2d at 98.  Such actions, like Alvarez's FLSA lawsuit, are "for violation of distinct

11

No. 18-40246

legal duties owed individual employees," rather than "for violation of legal duties owed the public." *Id.*

More generally, Chipotle's theory that the DOL represents every worker's legal interests through its enforcement of the FLSA so as to bind every worker in the United States to an injunction where the DOL is the only bound party lacks authoritative support. Although, as the district court noted, the FLSA concerns itself with "the general welfare of employees employed in certain industries engaged in American commerce," Congress's statement of such a policy does not create a legal nexus or the kind of close identity of interests between a party to litigation and a nonparty required to amount to privity. Instead, as in Title VII discrimination suits, Alvarez's New Jersey action "claim[s] remedies distinct from the relief imposed in the government litigation" and complains of a "violation of distinct legal duties owed individual employees." *Southwest*, 546 F.2d at 98–99 (citing *Rodriguez*, 505 F.2d 40; *Williamson*, 468 F.2d 1201).[10]

Because Respondents were not in privity with the DOL and not otherwise bound by the injunction, the district court erred in granting Chipotle's motion for contempt.[11]

---

[10] We intimate no view whatever on the merits of Alvarez's contentions in the New Jersey action, as those contentions are before the New Jersey federal court rather than this court.

[11] As the district court correctly noted, this court has held that "[t]he movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir. 1987). However, because we disagree with the district court's conclusion that the Alvarez and her lawyers acted in privity with the DOL or were represented by the DOL so as to be bound by the district court's injunction, application of that standard is pretermitted here. Likewise, the district court's ruling on whether process was properly served on Respondents is pretermitted.

No. 18-40246

## B.    The District Court Lacked Personal Jurisdiction Over Respondents

Because the district court's contempt order exceeded the bounds of Rule 65(d), its exercise of jurisdiction over Respondents was also improper.[12]  The district court did not find that minimum contacts supported its exercise of jurisdiction over Respondents, and instead relied exclusively on the principle expressed in *Waffenschmidt v. McKay*, 763 F.2d 711, 714 (5th Cir. 1985), that "[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order."  As we have concluded, Respondents did not aid and abet the DOL or participate in the *Nevada v. DOL* injunction litigation in any manner.  Thus, there was no basis for the district court's exercise of personal jurisdiction over Respondents.

**\*\*\***

For these reasons, the judgment of the district court is REVERSED, and judgment is RENDERED in favor of Respondents.

---

[12] Because we reverse the district court's contempt order on the basis of Rule 65(d) and lack of personal jurisdiction, we also reverse the district court's award of attorneys' fees to Chipotle.